# Exhibit A

 

Search for Cases by:  Select Search Method...

Judicial Links  |  eFiling  |  Help  |  Contact Us  |  Print     GrantedPublicAccess  **Logoff JENNIFERBWIELAND**

## 19VE-CV00084 - LANE ALLMOND ET AL V DOREL JUVENILE GROUP, I ET AL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ◉ Descending    Display Options:  All Entries
                  ○ Ascending

---

**07/29/2019** ☐ **Judge/Clerk - Note**

Court dismisses all claims with prejudice against Defendant Trevor Pettibon only, after reviewing Plaintiffs' Notice of Dismissal of Claims. DRM/dh

**07/25/2019** ☐ **Notice of Dismissal**

Plaintiffs Notice of Dismissal of Claims; Electronic Filing Certificate of Service.
    **Filed By:** CHAD CAMERON LUCAS
    **On Behalf Of:** LANE T. ALLMOND, MISTY ALLMOND

**07/15/2019** ☐ **Motion Hearing Scheduled**

Plaintiff's Motion for Protective Order set for hearing on August 13, 2019 @ 9:00 a.m. dh
    **Scheduled For:** 08/13/2019;  9:00 AM ;  DAVID R. MUNTON;  Vernon

**07/12/2019** ☐ **Notice of Hearing Filed**

Notice of Hearing; Electronic Filing Certificate of Service.
    **Filed By:** CHAD CAMERON LUCAS
    **On Behalf Of:** LANE T. ALLMOND, MISTY ALLMOND

**06/19/2019** ☐ **Response Filed**

Plaintiffs Response to Motion of Dorel Juvenile Group, Inc for the Entry of a Protective Order and Opposition to Plaintiffs Motion for Entry; Exhibit A; Exhibit B; Exhibit C; Exhibit D; Exhibit E; Exhibit F; Exhibit G; Exhibit H; Electronic Filing Certificate of Service.
    **Filed By:** NICKOLAS ALLEN BRAND
    **On Behalf Of:** LANE T. ALLMOND, MISTY ALLMOND

**06/03/2019** ☐ **Suggestions in Support**

Suggestions in Support of Motion of Dorel for the Entry of a Protective Order and Opposition to Plaintiffs Motion for Entry of Protective Order; Exhibit A - Proposed Protective Order; Electronic Filing Certificate of Service.
    **Filed By:** THOMAS PETER SCHULT
    **On Behalf Of:** DOREL JUVENILE GROUP, INC.

☐ **Motion Filed**

Motion of Dorel Juvenile Group, Inc for the Entry of a Protective Order and Opposition to Plantiffs Motion for Entry of Protective Order; Electronic Filing Certificate of Service.
    **Filed By:** THOMAS PETER SCHULT

**On Behalf Of:** DOREL JUVENILE GROUP, INC.

04/30/2019   ☐   **Cert Serv Answers Interrog Fil**

Certificate of Service; Electronic Filing Certificate of Service.

    **Filed By:** NICKOLAS ALLEN BRAND
    **On Behalf Of:** LANE T. ALLMOND, MISTY ALLMOND

  ☐   **Certificate of Service**

Certificate of Service; Electronic Filing Certificate of Service.

    **Filed By:** THOMAS PETER SCHULT
    **On Behalf Of:** DOREL JUVENILE GROUP, INC.

04/23/2019   ☐   **Motion Filed**

Plaintiffs Motion for Protective Order; Exhibit A; Electronic Filing Certificate of Service.

    **Filed By:** NICKOLAS ALLEN BRAND
    **On Behalf Of:** LANE T. ALLMOND, MISTY ALLMOND

04/16/2019   ☐   **Entry of Appearance Filed**

ENTRY OF APPEARANCE; Electronic Filing Certificate of Service.

    **Filed By:** JOHN EDWARD FRANKE
    **On Behalf Of:** TREVOR LANE PETTIBON

03/22/2019   ☐   **Entry of Appearance Filed**

Entry of Appearance for Jennifer B Wieland; Electronic Filing Certificate of Service.

    **Filed By:** JENNIFER BOWEN WIELAND
    **On Behalf Of:** DOREL JUVENILE GROUP, INC.

  ☐   **Certificate of Service**

Certificate of Service of Defendant Dorel Juvenile Groups First Set of Interrogatories and First Requests for Production of Documents and Things to Plaintiffs; Electronic Filing Certificate of Service.

    **Filed By:** THOMAS PETER SCHULT
    **On Behalf Of:** DOREL JUVENILE GROUP, INC.

  ☐   **Answer Filed**

Answer of Dorel Juvenile Group, Inc to Plaintiffs Petition; Electronic Filing Certificate of Service.

    **Filed By:** THOMAS PETER SCHULT
    **On Behalf Of:** DOREL JUVENILE GROUP, INC.

03/13/2019   ☐   **Corporation Served**

Document ID - 19-SMOS-5; Served To - DOREL JUVENILE GROUP, INC.; Server - ; Served Date - 08-MAR-19; Served Time - 11:05:00; Service Type - Special Process Server; Reason Description - Served; Service Text - Served Adam James CSC Corporation

  ☐   **Notice of Service**

Proof of Service; Exhibit A; Electronic Filing Certificate of Service.

    **Filed By:** NICKOLAS ALLEN BRAND
    **On Behalf Of:** LANE T. ALLMOND, MISTY ALLMOND

03/12/2019   ☐   **Summons Personally Served**

Document ID - 19-SMCC-52; Served To - PETTIBON, TREVOR LANE; Server - SHERIFF OF VERNON COUNTY-NEVADA; Served Date - 07-MAR-19; Served Time - 16:45:00; Service Type - Sheriff Department; Reason Description - Served

| | | |
|---|---|---|
| 03/08/2019 | ☐ | **Notice of Service** |

Return of Summons on Defendant, Trevor Lane Pettibon. dh

| | | |
|---|---|---|
| 03/04/2019 | ☐ | **Entry of Appearance Filed** |

Entry of Appearance; Electronic Filing Certificate of Service.

　　**Filed By:** NICKOLAS ALLEN BRAND

　　**On Behalf Of:** LANE T. ALLMOND, MISTY ALLMOND

☐ **Order - Special Process Server**

ORDER APPOINTING SPECIAL PROCESS SERVER. DH

| | | |
|---|---|---|
| 03/01/2019 | ☐ | **Motion Special Process Server** |

Motion for Appointment of Private Process Server; Exhibit A; Electronic Filing Certificate of Service.

　　**Filed By:** CHAD CAMERON LUCAS

　　**On Behalf Of:** LANE T. ALLMOND, MISTY ALLMOND

| | | |
|---|---|---|
| 02/15/2019 | ☐ | **Summons Issued-Circuit** |

Document ID: 19-SMOS-5, for DOREL JUVENILE GROUP, INC. Summons attachd for attorney to forward to sheriff for service. dh

☐ **Summons Issued-Circuit**

Document ID: 19-SMCC-52, for PETTIBON, TREVOR LANE. Summons attached for attorney to forward to sheriff for service. dh

| | | |
|---|---|---|
| 02/14/2019 | ☐ | **Filing Info Sheet eFiling** |

　　**Filed By:** CHAD CAMERON LUCAS

☐ **Pet Filed in Circuit Ct**

Petition for Wrongful Death.

　　**On Behalf Of:** LANE T. ALLMOND, MISTY ALLMOND

☐ **Judge Assigned**

HONORABLE DAVID R. MUNTON

Electronically Filed - Vernon - February 14, 2019 - 02:20 PM

### IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

| | | |
|---|---|---|
| **LANE ALLMOND**<br>**10897 South 300 Road**<br>**Richards, Missouri 64778** | ) ) ) ) | |
| **And** | ) ) | |
| **MISTY ALLMOND**<br>**10897 South 300 Road**<br>**Richards, Missouri 64778** | ) ) ) ) | **JURY TRIAL DEMANDED** |
| **Plaintiffs,** | ) ) | **Case No.** _____ |
| **vs.** | ) ) | **Division No.** _____ |
| **DOREL JUVENILE GROUP, INC.**<br>**Serve Registered Agent:**<br>**Corporation Service Company**<br>**84 State Street**<br>**Boston, Massachusetts 02109** | ) ) ) ) ) ) | |
| **And** | ) ) | |
| **TREVOR PETTIBON**<br>**15945 South 1070 Road**<br>**Nevada, Missouri 64722** | ) ) ) ) | |
| **Defendants.** | ) | |

### PETITION FOR WRONGFUL DEATH

Plaintiffs Lane Allmond and Misty Allmond, for their causes of action for the wrongful death of M.A. against defendants Dorel Juvenile Group, Inc. and Trevor Pettibon, state and allege as follows:

### PARTIES, VENUE AND JURISDICTION

1. Plaintiff Lane Allmond is a citizen and resident of the State of Missouri, residing at 10897 South 300 Road, Richards, Missouri 64778. Lane Allmond is the surviving father of decedent M.A. .

Electronically Filed - Vernon - February 14, 2019 - 02:20 PM

2.    Plaintiff Misty Allmond is a citizen and resident of the State of Missouri, residing at 10897 South 300 Road, Richards, Missouri 64778.  Misty Allmond is the surviving mother of decedent M.A.            .

3.    As the surviving natural parents of their minor daughter M.A.          , plaintiffs are the proper parties to bring this action for her wrongful death under R.S.Mo § 537.080 for the class of persons identified therein.

4.    Defendant Dorel Juvenile Group, Inc. ("Dorel") is corporation organized and existing under the laws of Massachusetts and does business, for profit, in the state of Missouri. It can be served through its registered agent the Corporation Service Company, 84 State Street, Boston, Massachusetts 02109.

5.    Defendant Dorel maintains systematic, continuous and substantial connections with the State of Missouri and, as such, is subject to the jurisdiction of this Court.  Furthermore, pursuant to R.S.Mo. § 506.500, defendant Dorel is subject to this Court's jurisdiction in that it committed tortious acts and/or omissions within this State.

6.    At all relevant times, defendant Dorel has conducted business in the State of Missouri.  Defendant Dorel is and has been engaged in the business of designing, manufacturing, distributing, marketing and selling car seats in the State of Missouri.  Defendant Dorel has committed tortious acts in the State of Missouri in that it designed, manufactured, tested, distributed, marketed, advertised and sold the subject car seat identified as the Safety 1st Summit forward facing car seat (hereinafter the "subject car seat") for ultimate distribution, sale and use in the State of Missouri.  Here is a photo of the subject car seat:



7.     In addition to consent jurisdiction and general personal jurisdiction over defendant Dorel, this Court has specific personal jurisdiction over defendant Dorel for the following reasons:

a.     Dorel knowingly, intentionally and deliberately advertised and marketed the subject model car seat in all fifty states, including Missouri, and in other countries around the world;

b.     Dorel knows that the market for its car seats, including but not limited to the subject car seat, includes, but it not limited to, all fifty states, including Missouri;

c.     Dorel engages in daily activity in Missouri by interacting with retailers, selling car seats like the subject car seat, dealing with warranty claims, fielding consumer questions and complaints and effectuating recall and other remedial programs;

d.     Dorel routinely corresponds directly with Missouri residents with respect to recalls, warranty issues and technical service bulletins;

e.      Dorel maintains highly interactive websites on which Missouri residents can communicate directly with Dorel, locate car seats at Missouri stores, order parts, address warranty issues and/or otherwise interact with Dorel;

f.      Dorel has been a party in numerous cases where it has come into the courts of Missouri, without claiming a lack of personal jurisdiction, to answer claims about the failures of its products in Missouri;

g.      Dorel has a regular plan for the distribution of its products in Missouri with the goal of achieving a commercial benefit from the sale of products in Missouri;

h.      Dorel engages in national marketing of its products that intentionally pervade into the Missouri market;

i.      Dorel targets marketing specific to Missouri;

j.      Dorel has thousands or tens of thousands of customers in Missouri;

k.      Dorel derives millions of dollars a year from sales of products in Missouri;

l.      Dorel spends thousands of dollars annually marketing its products in Missouri;

m.      Dorel holds patents and trademarks which it demands must be honored in Missouri;

n.      Dorel has purposefully availed itself of the privilege and benefits of conducting business in Missouri; and/or

o.      Dorel's acts and omissions both inside and outside Missouri caused injury within Missouri to Missouri residents as described herein.

8.      Defendant Trevor Pettibon is a citizen and resident of the State of Missouri, residing at 15945 South 1070 Road, Nevada, Missouri 64722.

9.      This Court has personal jurisdiction over defendant Pettibon because he is a Missouri resident.

4

10.     Venue is proper in this Court pursuant to R.S.Mo. § 508.010 because M.A. was killed in Vernon County by the wrongful acts and/or negligent conduct of the defendants described herein.

11.     This Court has subject matter jurisdiction over this matter pursuant to R.S.Mo. § 478.070 and Mo. Const. Art. V § 14.

**THE INCIDENT**

12.     On June 8, 2018 at approximately 11:08 a.m, Misty Allmond was driving, Lane Allmond was the front seat passenger, B.A. was in the rear seat and M.A. was in the subject car seat in the rear seat of their 2002 Jeep Liberty southbound on CRD 300 Road when they were struck head on by a Peterbilt driven by defendant Pettibon.

13.     Although Misty, Lane and B.A. survived the crash, M.A. was killed despite being properly belted into the subject car seat.

14.     As a direct and proximate result of the negligence, acts and/or omissions of the defendants and/or the defects of the subject car seat described herein, M.A. was killed and plaintiffs have suffered damages for the pain and suffering M.A. endured between the time of her initial injury and the time of her death, pecuniary losses by reason of the death of M.A. , funeral expenses and the loss of the reasonable value of the services, consortium, companionship, comfort instruction, guidance, counsel, training and support, as well as all other damages allowed under R.S.Mo § 537.090 and/or Missouri law.

**COUNT I**
**NEGLIGENCE**
**DEFENDANT PETTIBON**

15.     Plaintiffs incorporate herein by reference each and every allegation set forth in paragraphs 1 through 14 as if fully set forth herein.

16.     Defendant Pettibon owed plaintiffs, B.A.          , M.A.          and all other vehicle operators he encountered on the road a duty to operate his Peterbilt with the highest degree of care.

17.     Defendant Pettibon failed to exercise the highest degree of care and was thereby negligent in his operation of the Peterbilt in one or more of the following respects:

a.     Failing to keep a careful lookout;

b.     Driving too fast for conditions;

c.     Failing to stop, swerve or slow after he knew, or by use of the highest degree of care could have known, that there was a reasonable likelihood of a collision; and/or

d.     Failing to keep the Peterbilt under control and striking the Allmonds' vehicle;

18.     As a direct and proximate result of the above-described negligence of defendant Pettibon, M.A.          was killed and plaintiffs have sustained the damages described above.

WHEREFORE, plaintiffs respectfully request that this Court enter judgment against defendant Pettibon on Count I of their Petition for Wrongful Death, that the Court award plaintiffs a fair and reasonable amount to adequately compensate them for all their damages, including prejudgment interest, interest on the judgment, costs of this action and such other and further relief as this Court deems just and proper.

**COUNT II**
**STRICT LIABILITY**
**DEFENDANT DOREL**

19.     Plaintiffs incorporate herein by reference each and every allegation set forth in paragraphs 1 through 18 as if fully set forth herein.

20.     Defendant Dorel is engaged in the business of designing, testing, manufacturing, assembling, marketing, and/or selling car seats, including such car seats as the subject car seat.

Electronically Filed - Vernon - February 14, 2019 - 02:20 PM

21.     The subject car seat was designed, manufactured, assembled, inspected, tested, distributed, marketed, and/or sold by defendant Dorel in the ordinary course of its business.

22.     The subject car seat was manufactured in November 2011 as indicated by the date wheel stamped on the back of the subject car as depicted below:



23.     At the time of the subject crash, the subject car seat was in substantially the same condition as when it initially left the control of defendant Dorel.

24.     At the time the subject car seat left the control of defendant Dorel and at the time of the subject crash, the subject car seat was unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics.

25.     At the time of the subject crash, the subject car seat was being used in a manner reasonably anticipated and/or intended by defendant Dorel.

26.     Specifically, the subject car seat was unreasonably dangerous to M.A.            and other children in one or more of the following respects:

a.  It lacked any or adequate warnings and/or instructions that it was unsafe for use in a forward facing configuration for children under the age of two;

b.  It lacked any or adequate warnings and/or instructions that children under the age of two were at a much higher risk for back, neck and/or head injuries in a forward facing car seat than they would be in a rear facing car seat;

c.  It was sold with the specific instruction to parents and/or other users to utilize the subject car seat in a forward facing configuration for children under two years old; and/or

d.  Failing to place an appropriate warning on or with the car seat in a location and in a manner such that it would not fade, become illegible, come off or get lost over time.

27.  As a direct and/or proximate result of the defective condition of the subject car seat described above, M.A.            was killed and plaintiffs have suffered and incurred, and will continue to suffer and incur, the damages described in detail above.

28.  Defendant Dorel knew of the defective condition of, the defects in, the danger and injury risk of and the lack of warning regarding the subject car seat and thereby showed complete indifference to or conscious disregard for the safety of M.A.            , thereby entitling plaintiffs to punitive damages and/or damages for aggravating circumstances.

WHEREFORE, plaintiffs respectfully request that this Court enter judgment against defendant Dorel on Count II of their Petition for Wrongful Death, that the Court award plaintiffs a fair and reasonable amount to adequately compensate them for all their damages, including punitive damages and/or damages for aggravating circumstances, prejudgment interest, interest on the judgment, costs of this action, and such other and further relief as this Court deems just and proper.

## COUNT III
## NEGLIGENCE
## DEFENDANT DOREL

29.     Plaintiffs incorporate herein by reference each and every allegation set forth in paragraph 1 through 28 as if fully set forth herein.

30.     Defendant Dorel had and owed a duty of ordinary care in designing, manufacturing, testing, warning, marketing, distributing and/or selling the subject car seat.

31.     Defendant Dorel failed to use ordinary care and was thereby negligent with respect to the subject car seat in one or more of the following respects:

a.      Failing to warn or instruct that the subject car seat was unsafe for use in a forward facing configuration for children under the age of two;

b.      Failing to warn or instruct that children under the age of two were at a much higher risk for back, neck and/or head injuries in a forward facing car seat than they would be in a rear facing car seat;

c.      Failing to warn or instruct that children under the age of two should not use the subject car seat;

d.      Actually instructing parents and/or other users to utilize the subject car seat in a forward facing configuration for children under two years old; and/or

e.      Failing to warn or instruct that defendant Dorel and its executives knew and believed internally that children under the age of two were far safer (over 5 times safer) in a rear facing car seat;

f.      Failing to place an appropriate warning on or with the car seat in a location and in a manner such that it would not fade, become illegible, come off or get lost over time.

9

g.      Failing to change the warnings associated with the subject car seat model because it was an older seat design and defendant Dorel did not want to spend the money to update them;

h.      Continuing to sell the subject car seat model as a forward facing seat to maximize corporate profits when defendant Dorel and its executives knew and believed internally that children under the age of two were far safer (over 5 times safer) in a rear facing car seat;

i.      Making important safety or safety related decisions regarding the design, testing, manufacture, distribution, marketing and/or sale of subject car seat and subject car seat model based on cutting cost and/or increasing profit instead of safety; and/or

j.      In other respects revealed through the discovery process in this case.

32.      As a direct and/or proximate result of the above-described negligence of defendant Dorel, M.A.          was killed and plaintiffs have suffered and incurred, and will continue to suffer and incur, the injuries and damages described in detail above.

33.      Defendant Dorel knew, or had information which it in the exercise of ordinary care should have known, that its conduct created a high degree of probability of injury and thereby showed complete indifference to or conscious disregard for the safety of M.A.          and others, thereby entitling plaintiffs to punitive damages and/or damages for aggravating circumstances.

WHEREFORE, plaintiffs respectfully request that this Court enter judgment against defendant Dorel on Count III of their Petition for Wrongful Death, that the Court award plaintiffs a fair and reasonable amount to adequately compensate them for all their damages, including punitive damages and/or damages for aggravating circumstances, prejudgment interest, interest on the judgment, costs of this action, and such other and further relief as this Court deems just and proper.

Respectfully submitted,

By:   /s/ *Chad C. Lucas*
    Chad C. Lucas      # 50822
    Nick A. Brand      # 63380
    Kuhlman & Lucas, LLC
    1100 Main Street, Suite 2550
    Kansas City, Missouri 64105
    Telephone: (816) 799-0330
    Facsimile: (816) 799-0336
    chad@kuhlmanlucas.com
    nick@kuhlmanlucas.com

    and

    Joseph R. Hillebrand  # 43344
    Brown & Crouppen, P.C.
    211 N. Broadway, Suite 1600
    St. Louis, Missouri 63102
    Telephone: (314) 222-2222
    Facsimile: (314) 421-0359
    joeh@getbc.com
    **Attorneys for Plaintiffs**



# IN THE 28TH JUDICIAL CIRCUIT, VERNON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>DAVID R. MUNTON | **Case Number: 19VE-CV00084** |
| Plaintiff/Petitioner:<br>LANE T. ALLMOND<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>CHAD CAMERON LUCAS<br>STE 2550<br>1100 MAIN STREET<br>KANSAS CITY, MO 64105 |
| Defendant/Respondent:<br>DOREL JUVENILE GROUP, INC. | Court Address:<br>VERNON COUNTY COURTHOUSE<br>100 WEST CHERRY, SUITE 15<br>NEVADA, MO 64772 |
| Nature of Suit:<br>CC Wrongful Death | |

*FILED*
*Vernon County*
*Circuit Court*
*2/15/2019 12:15 PM*

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to: TREVOR LANE PETTIBON
Alias:

15945 SOUTH 1070 ROAD
NEVADA, MO 64772

*COURT SEAL OF*

*VERNON COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

02/15/2019 _____
Date

_____*/s/ Debra Hughes, Deputy Clerk*_____
Clerk

Further Information:

## Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
Date

_____
Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only*: **Document Id # 19-SMCC-52**          1  of  1          Civil Procedure Form No. 1; Rules 54.01 – 54.05,
04/18, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 3:19-cv-05058-RK   Document 1-2   Filed 08/07/19   Page 16 of 177



# IN THE 28TH JUDICIAL CIRCUIT, VERNON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>DAVID R. MUNTON | Case Number: 19VE-CV00084 |
| Plaintiff/Petitioner:<br>LANE T. ALLMOND | Plaintiff's/Petitioner's Attorney/Address:<br>CHAD CAMERON LUCAS<br>STE 2550<br>1100 MAIN STREET<br>KANSAS CITY, MO 64105 |
| vs. | |
| Defendant/Respondent:<br>DOREL JUVENILE GROUP, INC. | Court Address:<br>VERNON COUNTY COURTHOUSE<br>100 WEST CHERRY, SUITE 15<br>NEVADA, MO 64772 |
| Nature of Suit:<br>CC Wrongful Death | |

***FILED***
***Vernon County***
***Circuit Court***
***2/15/2019  12:22 PM***

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   DOREL JUVENILE GROUP, INC.
                            **Alias:**

**SERVE: CORPORATION SERVICE CO**
**84 STATE STREET**
**BOSTON, MA 02109**

*COURT SEAL OF*

*VERNON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

_____02/15/2019_____          ___*/s/ Debra Hughes, Deputy Clerk*___
              Date                                      Clerk
Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)
    ☐  delivering a copy of the summons and a copy of the petition to the defendant/respondent.
    ☐  leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
    ☐  (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐  other: _____.

Served at _____ (address)
in _____County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server
        **Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).
        I am: (check one) ☐ the clerk of the court of which affiant is an officer.
                          ☐ the judge of the court of which affiant is an officer.
                          ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
*(Seal)*                  ☐ authorized to administer oaths.  (use for court-appointed server)

_____
                                          Signature and Title

| Service Fees | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $_____ per mile) |
| **Total** | $_____ | |

**See the following page for directions to officer making return on service of summons.**

OSCA (07-18) SM60 (SMOS) *For Court Use Only:* **Document ID# 19-SMOS-5**   1 of 2   **(19VE-CV00084)**   Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

Case 3:19-cv-05058-RK   Document 1-2   Filed 08/07/19   Page 17 of 177

# Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

OSCA (07-18) SM60 (SMOS) *For Court Use Only* **Document ID# 19-SMOS-5**     2  of  2  **(19VF-CV00084)**                    Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

Case 3:19-cv-05058-RK   Document 1-2   Filed 08/07/19   Page 18 of 177

IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

LANE ALLMOND, et al.,    )
           )
     **Plaintiffs,** )
           )
**vs.**          )   **Case No. 19VE-CV00084**
           )
**DOREL JUVENILE GROUP, INC.,** )
**et al.,**         )
           )
     **Defendants.** )

## PLAINTIFFS' FIRST INTERROGATORIES TO
## DEFENDANT DOREL JUVENILE GROUP, INC.

Plaintiffs Lane and Misty Allmond, pursuant to Missouri Supreme Court Rule 57.01, submit the following interrogatories to defendant Dorel Juvenile Group, Inc. to be fully answered within forty-five (45) days after service thereof:

### Definitions

As used herein, "you," "your" or "Dorel" means and includes to Dorel Juvenile Group, Inc. and any employee, agent or representative of Dorel Juvenile Group, Inc.

As used herein, the phrase "subject car seat" means and refers to the Safety 1st Summit forward facing car seat described and depicted in Plaintiffs' Petition for Wrongful Death.

As used herein, "crash" means and refers to the June 8, 2018 crash described in Plaintiffs' Petition for Wrongful Death.

### INTERROGATORIES

1. State what Dorel believes the purpose of the subject car seat is.

**ANSWER:**

2. State Dorel's age, height and weight requirements (if any) for a child to use the subject car seat.

**ANSWER:**

1

3. Please identify the location and state the content of any warning Dorel provided with the subject car seat.

**ANSWER:**

4. Did Dorel provide a warning with the subject car seat that stated it should not be used by children under two years old?

Yes ( )          No ( )

If Dorel's answer is yes, identify the location and content of the warning you provided. If Dorel's answer is no, please state all reasons why Dorel did not provide such a warning.

**ANSWER:**

5. Did Dorel intend the subject car seat to be used by children between 1 and 2 years old, weighing more than 22 pounds and being more than 34 inches in height?

Yes ( )          No ( )

**ANSWER:**

6. At the time it made the subject car seat, did Dorel believe children under the age of two would be safer in a crash in a rear facing car seat than they would be in a crash in a forward facing car seat?

Yes ( )          No ( )

**ANSWER:**

7. Does Dorel believe M.A. was safer in the subject crash in the subject forward facing car seat than she would have been in a rear facing car seat that was appropriate for her size?

Yes ( )          No ( ).

**ANSWER:**

8. Identify each retained expert witness you expect to call at trial to provide expert witness opinion testimony by providing the expert's name, address and field of expertise. State also any opinions the expert will testify to at trial.

**ANSWER:**

2

9.    Identify each non-retained expert witness, including a party, who you expect to call at trial who may provide expert witness opinion testimony by providing the expert's name, address and field of expertise. State also any opinions the expert will testify to at trial.

**ANSWER:**

10.    Identify all persons who you believe possesses any knowledge or information relating to the death of M.A.        , the crash, plaintiffs' damages or any other matter relevant to the claims asserted in the Petition for Wrongful Death and provide a brief summary of the knowledge or information you believe each such person possesses. In addition, for each person identified in response to this interrogatory, please state whether you have obtained any type of written or recorded statement.

**ANSWER:**

11.    Do you contend the death of M.A.        was caused, in whole or in part, by any person or entity other than you? If so, please state:

a.    The full identity of each person or entity, including names, occupation, title, address and professional relationship to you, if any;

b.    How and in what manner such other persons or entities caused or contributed to cause Marli Allmond's death; and

c.    Identify any documents which you contend support your contentions.

**ANSWER:**

12.    Do you intend to assert at trial that M.A.        was at fault for her death? If so, please:

a.    State exactly how you contend M.A.        was at fault for her death;

b.    Identify all individuals which you claim have knowledge relevant to that assertion; and

c.    Identify all documents with information relevant to that assertion.

**ANSWER:**

13.    Do you have any insurance agreements which will indemnify you, in whole or in part, for any judgment plaintiffs may obtain against you in this lawsuit? If so, please state for each such agreement:

a.    The name and address of the insurer issuing the agreement;

b.    The policy number;

c.    The effective dates of the agreement;

d.    The limits of liability; and

e.    Attach a copy of the declaration page or certificate of coverage of each such insurance agreement to these interrogatories.

3

**ANSWER:**

14. Are you self-insured, in whole or in part, for any judgment plaintiffs may obtain against you in this lawsuit? If so, please provide the following:

    a.    The effective dates of the self-insurance; and

    b.    The amount/limit of self-insurance.

**ANSWER:**

15. Identify by case name, number and venue every lawsuit filed against you alleging personal injury or wrongful death which contains an allegation that a car seat made or sold by you was defective or unreasonably dangerous because it was designed, marketed and/or sold for forward facing use.

**ANSWER:**

16. Identify by case name, number and venue every lawsuit filed against you alleging personal injury or wrongful death which contains an allegation that you were somehow negligent in designing, marketing, selling and/or failing to warn with respect to a car seat you intended for forward facing use.

**ANSWER:**

17. Identify the brand (i.e., Safety 1st, Cosco, Maxi-Cosi, Tiny Love, Bebe Confort, Infanti, Quinny, etc.) and model of each car seat designed, made or sold by you which was the same as or substantially similar to the subject car seat.

**ANSWER:**

18. For the person signing these interrogatories on Dorel's behalf, please state his/her current position, describe his/her job responsibilities and state how long he/she has been employed by Dorel.

**ANSWER:**

4

**Defendant's Sworn Signature**

STATE OF _____ )
                                  ) ss.
COUNTY OF _____ )

I, _____, being duly sworn on my oath, state that I have read the foregoing Interrogatories and my answers to those Interrogatories are true.

_____
Dorel Juvenile Group, Inc.

The foregoing answers to interrogatories were subscribed and sworn to before me this _____ day of _____, 2019.

_____
Notary Public

My Commission Expires:

5

IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

LANE ALLMOND, et al.,     )
                            )
              Plaintiffs,  )
                            )
vs.                        )    Case No. 19VE-CV00084
                            )
DOREL JUVENILE GROUP, INC.,  )
et al.,                        )
                            )
             Defendants.  )

### PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
### TO DEFENDANT DOREL JUVENILE GROUP, INC.

Plaintiffs Lane and Misty Allmond, pursuant to Missouri Supreme Court Rule 58.01,
request that defendant Dorel Juvenile Group, Inc. produce the following documents and materials
at the offices of the signed within forty-five (45) days after service hereof:

### Definitions

As used in these requests, "you," "your" or "Dorel" means and includes to Dorel Juvenile
Group, Inc. and any employee, agent or representative of Dorel Juvenile Group, Inc.

As used in these requests, the phrase "subject car seat" means and refers to the Safety 1st
Summit forward facing car seat described and depicted in Plaintiffs' Petition for Wrongful Death.

As used in these requests, "crash" means and refers to the June 8, 2018 crash described in
Plaintiffs' Petition for Wrongful Death.

### REQUESTS

1.     All documents and other materials produced to the plaintiffs in discovery in the
case of *Hinson v. Dorel Juvenile Group, Inc.*, Cause No. 2:15-CV-713, United States District
Court, Eastern District of Texas.
**RESPONSE:**

2.     All exhibits used or admitted by the plaintiffs in the trial of the case of *Hinson v.
Dorel Juvenile Group, Inc.*, Cause No. 2:15-CV-713, United States District Court, Eastern District
of Texas.

1

**RESPONSE:**

3. All exhibits used or admitted by Dorel in the trial of the case of *Hinson v. Dorel Juvenile Group, Inc.*, Cause No..2:15-CV-713, United States District Court, Eastern District of Texas.

**RESPONSE:**

4. The depositions transcripts and exhibits from the deposition of any corporate representative of Dorel taken in the case of *Hinson v. Dorel Juvenile Group, Inc.*, Cause No. 2:15-CV-713, United States District Court, Eastern District of Texas.

**RESPONSE:**

5. The deposition transcripts and exhibits from the depositions of any current or former Dorel employee taken in the case of *Hinson v. Dorel Juvenile Group, Inc.*, Cause No. 2:15-CV-713, United States District Court, Eastern District of Texas.

**RESPONSE:**

6. All warnings and instructions Dorel provided with the subject car seat, whether on the seat, on a placard, on the box, in the manual or anywhere else.

**RESPONSE:**

7. All written or recorded statements of Lane Allmond, M.A.      , B.A.

or anyone claiming to act on their behalf.

**RESPONSE:**

8. All medical records, bills, reports or other medical information concerning M.A.

**RESPONSE:**

9. All reports made by anyone to any law enforcement, public official or regulatory agency or any reports or materials made or generated by such officials concerning the incident.

**RESPONSE:**

10. All photographs, videos or other visual reproductions of the crash, the scene of the crash, the subject car seat, plaintiffs, B.A.      or M.A.

**RESPONSE:**

11. All written or recorded statements from any person who has or who you believe has knowledge or information regarding the crash or the injuries to M.A.

**RESPONSE:**

12. ' All documents or other materials provided to or generated by any expert witness you expect to call at the trial of this case.

**RESPONSE:**

2

13.     All documents identified, referred to or relied upon in answering Plaintiffs' First Set of Interrogatories.
**RESPONSE:**

14.     All documents and correspondence (including emails) related to the design, development, testing, marketing, distribution and/or sale of the subject car seat.
**RESPONSE:**

15.     All correspondence (including emails) that discuss or mention the American Academy of Pediatrics (AAP) recommendations about the use of rear facing car seats.
**RESPONSE:**

16.     All documents related to the sale or purchase of the subject car seat by you or any other person or entity.
**RESPONSE:**

17.     Any documents which support your claim that any person or entity other than you is at fault or responsible for the negligence, injuries, death and/or damages alleged in the Petition.
**RESPONSE:**

18.     Any and all exhibits you intend to use at the trial of this case, whether as evidence or for demonstrative purposes.
**RESPONSE:**

19.     Complete, certified copies of the insurance policies or agreements, including any excess or umbrella policies, which may provide any coverage for any judgment entered against you in this case.
**RESPONSE:**

20.     The design standards, design drawings, design specifications, material specifications and performance specifications for the subject car seat.
**RESPONSE:**

21.     The design standards, design drawings, design specifications, material specifications and performance specifications for each component of the subject car seat.
**RESPONSE:**

22.     The documentation of any design, development or performance verification testing of the subject car seat or subject car seat model.
**RESPONSE:**

23.     The documentation of any design, development or performance verification testing of the car seats that are the same as or substantially similar to the subject car seat.
**RESPONSE:**

3

24. The documents reflecting and communications (including emails) discussing any change in or revision to any aspect of the design or content of the instructions or warnings for the subject car seat model during its development before the manufacture of the subject car seat.
**RESPONSE:**

25. The documents reflecting and communications (including emails) discussing any change in or revision to any aspect of the design or content of the instructions or warnings for the subject car seat model after the subject car seat was manufactured.
**RESPONSE:**

26. The documents reflecting and communications (including emails) discussing any analysis or evaluation of whether the subject car seat or subject car seat model should be sold as a forward-facing seat.
**RESPONSE:**

27. The failure mode and effects analysis for the subject model car seat, including but not limited to any regarding or including frontal impacts.
**RESPONSE:**

28. Any documents or correspondence (including emails) discussing or regarding minimum age requirements for forward facing car seats.
**RESPONSE:**

29. Any documents or correspondence (including emails) discussing or regarding minimum weight or height requirements for forward facing car seats.
**RESPONSE:**

30. Financial documents regarding the subject model car seat, including any documents that show the number produced each year, the cost of manufacture, sale price, revenue, profits and profit margin, whether per car seat or in total.
**RESPONSE:**

31. Any documents you claim support an argument that M.A. was safer in the subject car seat than she would have been in a rear facing car seat in the subject crash.
**RESPONSE:**

32. The emails and written correspondence between you and anyone at Wal-Mart regarding forward facing car seats.
**RESPONSE:**

33. The documentation of any type of frontal testing (sled, crash or any other type) for or applicable to the design and development of the subject model car seat, including, but not limited to reports, incident reports, photographs and video.
**RESPONSE:**

4

34. The documentation of any FMVSS 213 certification or related testing for the subject model car seat and any substantially similar car seat, including, but not limited to reports, incident reports, photographs and video.

**RESPONSE:**

35. The petition, complaint or other type of initiating document from any complaint, claim or lawsuit of personal injury or death alleging that a subject model car seat was defective or that you were somehow negligent with respect to the design, manufacture, sale or warning of a subject model car seat.

**RESPONSE:**

Respectfully submitted,

By:    /s/ *Chad C. Lucas*

Chad C. Lucas        # 50822
Nick A. Brand        # 63380
Kuhlman & Lucas, LLC
1100 Main Street, Suite 2550
Kansas City, Missouri 64105
Telephone: (816) 799-0330
Facsimile: (816) 799-0336
chad@kuhlmanlucas.com
nick@kuhlmanlucas.com

and

Joseph R. Hillebrand   # 43344
Brown & Crouppen, P.C.
211 N. Broadway, Suite 1600
St. Louis, Missouri 63102
Telephone: (314) 222-2222
Facsimile: (314) 421-0359
joeh@getbc.com
**Attorneys for Plaintiffs**

5

Electronically Filed - Vernon - March 01, 2019 - 04:26 PM

**IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI**

LANE ALLMOND and MISTY
ALLMOND                                )
                                       )
           **Plaintiffs,**          )
                                       )
**v.**                                 )     **Case No.: 19VE-CV00084**
                                       )
DOREL JUVENILE GROUP and               )
TREVOR PETTIBON                        )
                                       )
          **Defendants.**          )

## MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER

Plaintiffs, pursuant to Rule 54.14 of the Missouri Supreme Court, hereby move for the appointment of Peter Vitale of Atlantic Legal Support Services, LLC as private process server in the above-captioned matter.

In support of said Motion, Plaintiffs state that Mr. Vitale meets all of the criteria set forth in Rule 54.14 and has executed an Affidavit regarding the same. The Affidavit of Mr. Vitale is attached as Exhibit A to the present Motion.

WHEREFORE, Plaintiffs respectfully move this Court for its Order appointing Peter Vitale of Atlantic Legal Support Services, LLC as a private process server in this matter and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

By:  /s/ Chad C. Lucas
     Chad C. Lucas        #50822
     Nick A. Brand        #63380
     Kuhlman & Lucas, LLC
     1100 Main Street, Suite 2550
     Kansas City, Missouri 64105
     Telephone: (816) 799-0330
     Facsimile: (816) 799-0336
     chad@kuhlmanlucas.com
     nick@kuhlmanlucas.com

     and

     Joseph R. Hillebrand    #43344
     Brown & Crouppen, P.C.
     211 N. Broadway, Suite 160
     St. Louis, Missouri 63102
     Telephone: (314) 222-2222
     Facsimile: (314) 421-0359
     joeh@getbc.com
     **Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2019, the foregoing was filed electronically using the Missouri Courts eFiling System, which sent notice of the filing to all counsel of record.

/s/ Chad C. Lucas
**Attorney for Plaintiffs**

Electronically Filed - Vernon - March 01, 2019 - 04:26 PM

## IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

| | |
|---|---|
| **LANE ALLMOND and MISTY ALLMOND** | ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) **Case No.: 19VE-CV00084** |
| **DOREL JUVENILE GROUP and TREVOR PETTIBON** | ) ) ) ) |
| **Defendants.** | ) |

## AFFIDAVIT OF PETER VITALE

PETER VITALE, being of sound mind and first duly sworn upon his oath, states and

alleges as follows:

1. I am over the age of eighteen (18).

2. I am a citizen of the United States.

3. I have a high school diploma or equivalent thereof.

4. I have never plead guilty to or been convicted of a felony or misdemeanor involving moral turpitude.

5. I am not a fugitive from justice or currently charged with a felony or a misdemeanor involving moral turpitude.

6. I am not related to or employed by any part in the present action.

7. I am of good moral character.

8. I have not been disqualified to act as a process server within the preceding twelve (12) months.

9. Service for this matter will be within the State of Massachusetts.

10. I meet all requirements to be appointed as private process server in accordance with the Missouri Supreme Court Rule 54.14.

FURTHER AFFIANT SAYETH NAUGHT.

STATE OF *Mass* )

) SS.

COUNTY OF *Middlesex*

_____

**Peter Vitale**

Subscribed and sworn to before me, a notary public, on this 28th day of

_February_____, 2019.

_____

Notary Public    JANICE SACHARCZYK
                 Notary Public
                 COMMONWEALTH OF MASSACHUSETTS
                 My Commission Expires On
                 November 12, 2021

My Commission Expires:

# IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

| | | |
|---|---|---|
| **LANE ALLMOND and MISTY ALLMOND** | ) | |
| | ) | |
| | ) | **FILED** |
| **Plaintiffs,** | ) | **Vernon County** |
| | ) | **Circuit Court** |
| | ) | **3/4/2019 08:53 AM** |
| **v.** | ) | **Case No.: 19VE-CV00084** |
| | ) | |
| **DOREL JUVENILE GROUP and TREVOR PETTIBON** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER

It is hereby ordered that Plaintiffs' Motion for Appointment of Private Process Server is sustained and Peter Vitale of Atlantic Legal Support Services, LLC is hereby appointed to serve process in the above-captioned matter.

DATED: March 4, 2019

*/s/ Debra Hughes, Deputy Clerk*

Deputy Clerk of the Circuit Court

Electronically Filed - Vernon - March 04, 2019 - 01:53 PM

## IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

| | |
|---|---|
| **LANE ALLMOND, et al.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 19VE-CV00084** |
| ) | |
| **DOREL JUVENILE GROUP, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

### ENTRY OF APPEARANCE

COMES NOW, Nick A. Brand of Kuhlman & Lucas, LLC and enters his appearance in this matter on behalf of Plaintiffs.

Respectfully submitted,

By:   */s/ Nick A. Brand*
Chad C. Lucas    #50822
Nick A. Brand    #63380
Kuhlman & Lucas, LLC
1100 Main Street, Suite 2550
Kansas City, Missouri 64105
Telephone: (816) 799-0330
Facsimile: (816) 799-0336
chad@kuhlmanlucas.com
nick@kuhlmanlucas.com

**Attorneys for Plaintiff**

Electronically Filed - Vernon - March 04, 2019 - 01:53 PM

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on this 4th day of March, 2019, the foregoing was filed electronically using the Missouri Courts eFiling System, which sent notice of the filing to all counsel of record.


            */s/ Nick A. Brand*_____
            **Attorney for Plaintiffs**



# RETURN

## IN THE 28TH JUDICIAL CIRCUIT, VERNON COUNTY, MISSOURI

| Judge or Division:<br>DAVID R. MUNTON | Case Number: 19VE-CV00084 | |
|---|---|---|
| Plaintiff/Petitioner:<br>LANE T. ALLMOND<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>CHAD CAMERON LUCAS<br>STE 2550<br>1100 MAIN STREET<br>KANSAS CITY, MO 64105 | **FILED**<br>**Vernon County**<br>**Circuit Court**<br>**2/15/2019 12:15 PM** |
| Defendant/Respondent:<br>DOREL JUVENILE GROUP, INC.<br>Nature of Suit:<br>CC Wrongful Death | Court Address:<br>VERNON COUNTY COURTHOUSE<br>100 WEST CHERRY, SUITE 15<br>NEVADA, MO 64772 | RECEIVED<br><br>(date File Stamp) 19 |

### Summons in Civil Case

The State of Missouri to: **TREVOR LANE PETTIBON**
Alias:

**15945 SOUTH 1070 ROAD**
**NEVADA, MO 64772**

VERNON COUNTY SHERIFF'S DEPT.

**COURT SEAL OF**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

02/15/2019

_____     */s/ Debra Hughes, Deputy Clerk*
Date     Clerk

**VERNON COUNTY**

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☒ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).

☐ other: _____

Served at 15945 S 1070 RD Nevada MO (address)

in Vernon (County/City of St. Louis), MO, on 3-7-19 (date) at 1645 (time).

_____ Bronson
Printed Name of Sheriff or Server     Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).     MAR 0 8 2019

*(Seal)*

My commission expires: _____
Date     Notary Public

Vernon County
Circuit Court
RECEIVED

MAR 0 5 2019

DEPUTY VERNON COUNTY SHERIFF'S DEPT

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $ 20.00 |
| Non Est | $ |
| Sheriff's Deputy Salary Supplemental Surcharge | $ 10.00 |
| Mileage | $ 7.99 ( 14.8 miles @ $ .54 per mile) |
| Total | $ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only:* **Document Id # 19-SMCC-52**     1 of 1     Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13 and 54.20; 506.120 - 506.140, and 506.150 RSMo

Case 3:19-cv-05058-RK   Document 1-2   Filed 08/07/19   Page 36 of 177

# RETURN



## IN THE 28TH JUDICIAL CIRCUIT, VERNON COUNTY, MISSOURI

| Judge or Division:<br>DAVID R. MUNTON | Case Number: 19VE-CV00084 | |
|---|---|---|
| Plaintiff/Petitioner:<br>LANE T. ALLMOND<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>CHAD CAMERON LUCAS<br>STE 2550<br>1100 MAIN STREET<br>KANSAS CITY, MO 64105 | *FILED*<br>*Vernon County*<br>*Circuit Court*<br>*2/15/2019 12:15 PM* |
| Defendant/Respondent:<br>DOREL JUVENILE GROUP, INC.<br>Nature of Suit:<br>CC Wrongful Death | Court Address:<br>VERNON COUNTY COURTHOUSE<br>100 WEST CHERRY, SUITE 15<br>NEVADA, MO 64772 | RECEIVED<br><br>(Date File Stamp)19 |

## Summons in Civil Case

The State of Missouri to: **TREVOR LANE PETTIBON**
VERNON COUNTY SHERIFF'S DEPT.

**Alias:**

**15945 SOUTH 1070 ROAD**
**NEVADA, MO 64772**

**COURT SEAL OF**

**VERNON COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

02/15/2019

_____
Date

*/s/ Debra Hughes, Deputy Clerk*
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☒ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____

Served at  15945 S 1070 RD Nevada MO (address)

in  Vernon  (County/City of St. Louis), MO, on  3-7-19  (date) at  1645  (time).

Bronson

Printed Name of Sheriff or Server  Signature of Sheriff or Server  **FILED**

Must be sworn before a notary public if not served by an authorized officer:

Subscribed and sworn to before me on _____ (date).  **MAR 0 8 2019**

*(Seal)*

My commission expires: _____
Date

Notary Public  **Vernon County Circuit Court**

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $ 20.00 |
| Non Est | $ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $ 7.99  ( 148 miles @ $ .54 per mile) |
| **Total** | $ |

RECEIVED

MAR 0 5 2019

DEPUTY VERNON COUNTY SHERIFF'S DEPT.

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only:* Document Id # **19-SMCC-52**   1 of 1   Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120, 506.140, and 506.150 RSMo

Case 3:19-cv-05058-RK   Document 1-2   Filed 08/07/19   Page 37 of 177

**IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI**

| | |
|---|---|
| LANE ALLMOND, et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    **Case No. 19VE-CV00084** |
| | ) |
| DOREL JUVENILE GROUP, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**PROOF OF SERVICE**

The undersigned hereby certifies that on the 8th day of March, 2019, defendant Dorel Juvenile Group, Inc. was served through its registered agent Corporation Service Company, 84 State Street, Boston, Massachusetts 02109 with the following:

- Summons;

- Petition for Wrongful Death;

- Plaintiffs' First Interrogatories to Defendant Dorel Juvenile Group, Inc; and

- Plaintiffs' First Request for Production to Defendant Dorel Juvenile Group, Inc.

via private process server Peter Vitale of Atlantic Legal Support Services, LLC. A copy of the executed Summons is attached as **Exhibit A**.

Respectfully submitted,

By:   /s/ Nick A. Brand
      Chad C. Lucas        #50822
      Nick A. Brand        #63380
      Kuhlman & Lucas, LLC
      1100 Main Street, Suite 2550
      Kansas City, Missouri 64105
      Telephone: (816) 799-0330
      Facsimile: (816) 799-0336
      chad@kuhlmanlucas.com
      nick@kuhlmanlucas.com

      *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March, 2019, the foregoing was filed electronically using the Missouri Courts eFiling System, which sent notice of the filing to all counsel of record.

      /s/ Nick A. Brand
      **Attorney for Plaintiffs**

2

Electronically Filed - Vernon - March 13, 2019 - 09:56 AM

| EXHIBIT |
| A |

## IN THE 28TH JUDICIAL CIRCUIT, VERNON COUNTY, MISSOURI

| Judge or Division:<br>DAVID R. MUNTON | Case Number: 19VE-CV00084 | |
|---|---|---|
| Plaintiff/Petitioner:<br>LANE T. ALLMOND<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>CHAD CAMERON LUCAS<br>STE 2550<br>1100 MAIN STREET<br>KANSAS CITY, MO 64105 | *FILED*<br>*Vernon County*<br>*Circuit Court* |
| Defendant/Respondent:<br>DOREL JUVENILE GROUP, INC. | Court Address:<br>VERNON COUNTY COURTHOUSE<br>100 WEST CHERRY, SUITE 15<br>NEVADA, MO 64772 | 2/15/2019 12:22 PM |
| Nature of Suit:<br>CC Wrongful Death | | (Date File Stamp) |

### Summons for Personal Service Outside the State of Missouri
#### (Except Attachment Action)

The State of Missouri to:   DOREL JUVENILE GROUP, INC.
                            Alias:
**SERVE: CORPORATION SERVICE CO**
**84 STATE STREET**
**BOSTON, MA 02109**

COURT SEAL OF

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

VERNON COUNTY

02/15/2019
—————————————
Date

Further Information:

_/s/ Debra Hughes, Deputy Clerk_
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County. _____ (state).
3.  I have served the above summons by: (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the
        defendant/respondent with _____, a person of the defendant's/respondent's family
        over the age of 15 years who permanently resides with the defendant/respondent.
    ☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
        _C.S.C. Corporation_ (name) _ADAM JAMES_ (title).
    ☐ other: _____

Served at _____ (address)

in _Suffolk_ County, _MASS_ (state), on _3/8/19_ (date) at _11:05 pm_ (time).

_Peter Vitale_
Printed Name of Sheriff or Server

_[signature]_
Signature of Sheriff or Server

Subscribed and sworn to before me this _19th_ (day) _March_ (month) _2019_ (year).
I am: (check one)   ☐ the clerk of the court of which affiant is an officer.
                    ☐ the judge of the court of which affiant is an officer.
                    ☑ authorized to administer oaths in the state in which the affiant served the above
                        summons. (use for out-of-state officer)
                    ☐ authorized to administer oaths. (use for court-appointed server)

(Seal)

_[signature]_
Signature and Title

| Service Fees | | |
|---|---|---|
| Summons | $ | |
| Non Est | $ | |
| Mileage | $ | ( _____ miles @ $ _____ per mile) |
| Total | $ 73.— | |

JANICE SACHARCZYK
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires On
November 12, 2021

See the following page for directions to officer making return on service of summons

Electronically Filed - Vernon - March 13, 2019 - 09:56 AM

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

Electronically Filed - Vernon - March 13, 2019 - 09:56 AM

# IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

| | |
|---|---|
| **LANE ALLMOND, et al.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )     **Case No. 19VE-CV00084** |
| | ) |
| **DOREL JUVENILE GROUP, INC., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## PROOF OF SERVICE

The undersigned hereby certifies that on the 8th day of March, 2019, defendant Dorel Juvenile Group, Inc. was served through its registered agent Corporation Service Company, 84 State Street, Boston, Massachusetts 02109 with the following:

- Summons;

- Petition for Wrongful Death;

- Plaintiffs' First Interrogatories to Defendant Dorel Juvenile Group, Inc; and

- Plaintiffs' First Request for Production to Defendant Dorel Juvenile Group, Inc.

via private process server Peter Vitale of Atlantic Legal Support Services, LLC. A copy of the executed Summons is attached as **Exhibit A**.

Respectfully submitted,

By:  */s/ Nick A. Brand*
     Chad C. Lucas          #50822
     Nick A. Brand          #63380
     Kuhlman & Lucas, LLC
     1100 Main Street, Suite 2550
     Kansas City, Missouri 64105
     Telephone: (816) 799-0330
     Facsimile: (816) 799-0336
     chad@kuhlmanlucas.com
     nick@kuhlmanlucas.com

     ***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March, 2019, the foregoing was filed electronically using the Missouri Courts eFiling System, which sent notice of the filing to all counsel of record.

*/s/ Nick A. Brand*
**Attorney for Plaintiffs**

2

Electronically Filed - Vernon - March 13, 2019 - 09:56 AM



## IN THE 28TH JUDICIAL CIRCUIT, VERNON COUNTY, MISSOURI

**EXHIBIT**
**A**

| Judge or Division:<br>DAVID R. MUNTON | Case Number: 19VE-CV00084 | |
|---|---|---|
| Plaintiff/Petitioner:<br>LANE T. ALLMOND | Plaintiff's/Petitioner's Attorney/Address:<br>CHAD CAMERON LUCAS<br>STE 2550<br>1100 MAIN STREET | **FILED**<br>**Vernon County**<br>**Circuit Court** |
| vs. | KANSAS CITY, MO 64105 | 2/15/2019  12:22 PM |
| Defendant/Respondent:<br>DOREL JUVENILE GROUP, INC. | Court Address:<br>VERNON COUNTY COURTHOUSE<br>100 WEST CHERRY, SUITE 15 | |
| Nature of Suit:<br>CC Wrongful Death | NEVADA, MO 64772 | (Date File Stamp) |

### Summons for Personal Service Outside the State of Missouri
(Except Attachment Action)

The State of Missouri to:  DOREL JUVENILE GROUP, INC.
              Alias:
**SERVE: CORPORATION SERVICE CO**
**84 STATE STREET**
**BOSTON, MA 02109**

**COURT SEAL OF**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

**VERNON COUNTY**

        02/15/2019
_____        /s/ Debra Hughes, Deputy Clerk
        Date                    Clerk
Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by: (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
    ☒ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
      _CSC Corporation_ (name) _ADAM JAMES_ (title).
    ☐ other: _____

Served at _____ (address)
in _Suffolk_ County, _MASS_ (state), on _3/8/19_ (date) at _11.05 pm_ (time).

_Peter Vitale_                    _[signature]_
Printed Name of Sheriff or Server        Signature of Sheriff or Server
            Subscribed and sworn to before me this _19th_ (day) _March_ (month) _2019_ (year).
            I am: (check one) ☐ the clerk of the court of which affiant is an officer.
                             ☐ the judge of the court of which affiant is an officer.
(Seal)                       ☒ authorized to administer oaths in the state in which the affiant served the above
                               summons. (use for out-of-state officer)
                             ☐ authorized to administer oaths. (use for court-appointed server)
                               _Janice Sacharczyk_
                               Signature and Title

| Service Fees | | |
|---|---|---|
| Summons | $ | |
| Non Est | $ | |
| Mileage | $ | ( _____ miles @ $ _____ per mile) |
| Total | $ 75.— | |

See the following page for directions to officer making return on service of summons.

JANICE SACHARCZYK
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires On
November 12, 2021

Electronically Filed - Vernon - March 13, 2019 - 09:56 AM

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

OSCA (07-18) SM60 (SMOS) *For Court Use Only:* Document ID# 19-SMOS-5        2 of 2  (19VE-CV00084)        Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

Case 3:19-cv-05058-RK   Document 1-2   Filed 08/07/19   Page 45 of 177

## IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

LANE ALLMOND and             )
MISTY ALLMOND,             )
                                     )
             Plaintiffs,       )
                                     )
        vs.                  )     Case No.: 19VE-CV00084
                                     )
DOREL JUVENILE GROUP, INC., et al.,   )
                                     )
           Defendants.     )

## ANSWER OF DOREL JUVENILE GROUP, INC. TO PLAINTIFFS' PETITION

Defendant Dorel Juvenile Group, Inc. ("DJG" or "Defendant") propounds its Answer to Plaintiffs' Petition:

## PARTIES, VENUE AND JURISDICTION

1.     Plaintiff Lane Allmond is a citizen and resident of the State of Missouri, residing at 10897 South 300 Road, Richards, Missouri 64778. Lane Allmond is the surviving father of decedent M.A.    .

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 1.

2.     Plaintiff Misty Allmond is a citizen and resident of the State of Missouri, residing at 10897 South 300 Road, Richards, Missouri 64778. Misty Allmond is the surviving mother of decedent M.A.    .

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 2.

3.     As the surviving natural parents of their minor daughter M.A.   , plaintiffs

are the proper parties to bring this action for her wrongful death under R.S.Mo § 537.080 for the class of persons identified therein.

**ANSWER:**    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 3.

4.    Defendant Dorel Juvenile Group, Inc. ("Dorel") is corporation organized and existing under the laws of Massachusetts and does business, for profit, in the state of Missouri. It can be served through its registered agent the Corporation Service Company, 84 State Street, Boston, Massachusetts 02109.

**ANSWER:**    Defendant admits it is a Massachusetts corporation and that it may be served with process through Corporation Service Company at the specified address. DJG denies the remaining allegations in Paragraph 4.

5.    Defendant Dorel maintains systematic, continuous and substantial connections with the State of Missouri and, as such, is subject to the jurisdiction of this Court. Furthermore, pursuant to R.S.Mo. § 506.500, defendant Dorel is subject to this Court's jurisdiction in that it committed tortious acts and/or omissions within this State.

**ANSWER:**    Defendant denies the allegations in Paragraph 5.

6.    At all relevant times, defendant Dorel has conducted business in the State of Missouri. Defendant Dorel is and has been engaged in the business of designing, manufacturing, distributing, marketing and selling car seats in the State of Missouri. Defendant Dorel has committed tortious acts in the State of Missouri in that it designed, manufactured, tested, distributed, marketed, advertised and sold the subject car seat identified as the Safety 1st Summit forward facing car seat (hereinafter the "subject car seat") for ultimate distribution, sale and use in the State of Missouri. Here is a photo of the subject car seat:

2



**ANSWER:** Defendant admits that it has designed, manufactured, distributed, and sold child restraints, including "Safety 1st Summit" child restraints, but denies any remaining allegations in Paragraph 6 for lack of knowledge or information sufficient to form a belief as to the truth of the averments except that DJG specifically denies that it committed tortious acts.

7. In addition to consent jurisdiction and general personal jurisdiction over defendant Dorel, this Court has specific personal jurisdiction over defendant Dorel for the following reasons:

    a. Dorel knowingly, intentionally and deliberately advertised and marketed the subject model car seat in all fifty states, including Missouri, and in other countries around the world;

    b. Dorel knows that the market for its car seats, including but not limited to the subject car seat, includes, but it not limited to, all fifty states, including Missouri;

3

c.      Dorel engages in daily activity in Missouri by interacting with retailers, selling car seats like the subject car seat, dealing with warranty claims, fielding consumer questions and complaints and effectuating recall and other remedial programs;

d.      Dorel routinely corresponds directly with Missouri residents with respect to recalls, warranty issues and technical service bulletins;

e.      Dorel maintains highly interactive websites on which Missouri residents can communicate directly with Dorel, locate car seats at Missouri stores, order parts, address warranty issues and/or otherwise interact with Dorel;

f.      Dorel has been a party in numerous cases where it has come into the courts of Missouri, without claiming a lack of personal jurisdiction, to answer claims about the failures of its products in Missouri;

g.      Dorel has a regular plan for the distribution of its products in Missouri with the goal of achieving a commercial benefit from the sale of products in Missouri;

h.      Dorel engages in national marketing of its products that intentionally pervade into the Missouri market;

i.      Dorel targets marketing specific to Missouri;

j.      Dorel has thousands or tens of thousands of customers in Missouri;

k.      Dorel derives millions of dollars a year from sales of products in Missouri;

l.      Dorel spends thousands of dollars annually marketing its products in Missouri;

m.      Dorel holds patents and trademarks which it demands must be honored in

Missouri;

n.     Dorel has purposefully availed itself of the privilege and benefits of conducting business in Missouri; and/or

o.     Dorel's acts and omissions both inside and outside Missouri caused injury within Missouri to Missouri residents as described herein.

**ANSWER:**     Dorel denies the allegations in Paragraph 7, including subparts (a)-(o).

8.     Defendant Trevor Pettibon is a citizen and resident of the State of Missouri, residing at 15945 South 1070 Road, Nevada, Missouri 64722.

**ANSWER:**     Paragraph 8 is not directed to Defendant and Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments.

9.     This Court has personal jurisdiction over defendant Pettibon because he is a Missouri resident.

**ANSWER:**     Paragraph 9 is not directed to Defendant and Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments.

10.     Venue is proper in this Court pursuant to R.S.Mo. § 508.010 because M.A. was killed in Vernon County by the wrongful acts and/or negligent conduct of the defendants described herein.

**ANSWER:**     Defendant admits that venue is proper in the Circuit Court of Vernon County, Missouri, based on the averments of the subject Petition. Defendant denies the remaining averments in Paragraph 10.

11.     This Court has subject matter jurisdiction over this matter pursuant to R.S.Mo. § 478.70 and Mo. Const. Art. V § 14.

**ANSWER:**     Defendant admits that this Court has subject matter jurisdiction over this matter

based on the averments of the subject Petition.

## THE INCIDENT

12.     On June 8, 2018 at approximately 11:08 a.m., Misty Allmond was driving, Lane Allmond was the front seat passenger,  B.A.  was in the rear seat and  M.A.  was in the subject car seat in the rear seat of their 2002 Jeep Liberty southbound on CRD 300· Road when they were struck head on by a Peterbilt driven, by defendant Pettibon.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 12.

13.     Although Misty, Lane and  B.A.  survived the crash,  M.A.  was killed despite being properly belted into the subject car seat.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 13.

14.     As a direct and proximate result of the negligence, acts and/or omissions of the defendants and/or the defects of the subject car seat described herein,  M.A.  was killed and plaintiffs have suffered damages for the pain and suffering  M.A.  endured between the time of her initial injury and the time of her death, pecuniary losses by reason of the death of  M.A. , funeral expenses and the loss of the reasonable value of the services, consortium, companionship, comfort instruction, guidance, counsel, training and support, as well as all other damages allowed under R.S.Mo § 537.090 and/or Missouri law.

**ANSWER:**     Defendant denies the allegations in Paragraph 14.

## COUNT I
## NEGLIGENCE
## DEFENDANT PETTIBON

15.     Plaintiffs incorporate herein by reference each and every allegation set forth in paragraphs 1 through 14 as if fully set forth herein.

6

**ANSWER:** In response to Paragraph 15, Defendant incorporates its responses to Paragraph 1 through 14.

16.     Defendant Pettibon owed plaintiffs,  B.A.        ,  M.A.        and all other vehicle operators he encountered on the road a duty to operate his Peterbilt with the highest degree of care.

**ANSWER:** Paragraph 16 is not directed to Defendant and Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments.

17.     Defendant Pettibon failed to exercise the highest degree of care and was thereby negligent in his operation of the Peterbilt in one or more of the following respects:

    a.     Failing to keep a careful lookout;

    b.     Driving too fast for conditions;

    c.     Failing to stop, swerve or slow after he knew, or by use of the highest degree of care could have known, that there was a reasonable likelihood of a collision; and/or

    d.     Failing to keep the Peterbilt under control and striking the Allmonds' vehicle;

**ANSWER:** Paragraph 16, parts (a)-(d) is not directed to Defendant and Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments.

18.     As a direct and proximate result of the above-described negligence of defendant Pettibon,  M.A.        was killed and plaintiffs have sustained the damages described above.

**ANSWER:** Paragraph 18 is not directed to Defendant and Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments.

**COUNT II**
**<u>STRICT LIABILITY</u>**

## DEFENDANT DOREL

19.     Plaintiffs incorporate herein by reference each and every allegation set forth in paragraphs 1 through 18 as if fully set forth herein.

**ANSWER:**     In response to Paragraph 19, Defendant incorporates its responses to Paragraphs 1 through 18.

20.     Defendant Dorel is engaged in the business of designing, testing, manufacturing, assembling, marketing, and/or selling car seats, including such car seats as the subject car seat.

**ANSWER:**     Defendant admits that it designs, tests, manufactures, and sells child restraints. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph 20.

21.     The subject car seat was designed, manufactured, assembled, inspected, tested, distributed, marketed, and/or sold by defendant Dorel in the ordinary course of its business.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 21.

22.     The subject car seat was manufactured in November 2011 as indicated by the date wheel stamped on the back of the subject car as depicted below:

8



**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 23.

23.    At the time of the subject crash, the subject car seat was in substantially the same condition as when it initially left the control of defendant Dorel.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 23.

24.    At the time the subject car seat left the control of defendant Dorel and at the time of the subject crash, the subject car seat was unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics.

**ANSWER:**    Defendant denies the averments in Paragraph 24.

25.    At the time of the subject crash, the subject car seat was being used in a manner reasonably anticipated and/or intended by defendant Dorel.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief as to the

9

truth of the averments in Paragraph 25.

      26.     Specifically, the subject car seat was unreasonably dangerous to  M.A.    and other children in one or more of the following respects:

        a.    It lacked any or adequate warnings and/or instructions that it was unsafe for use in a forward facing configuration for children under the age of two;

        b.    It lacked any or adequate warnings and/or instructions that children under the age of two were at a much higher risk for back, neck and/or head injuries in a forward facing car seat than they would be in a rear facing car seat;

        c.    It was sold with the specific instruction to parents and/or other users to utilize the subject car seat in a forward facing configuration for children under two years old; and/or

        d.    Failing to place an appropriate warning on or with the car seat in a location and in a manner such that it would not fade, become illegible, come off or get lost over time.

**ANSWER:**    Defendant denies the averments in Paragraph 26, including subparts (a)-(d).

      27.     As a direct and/or proximate result of the defective condition of the subject car seat described above,  M.A.    was killed and plaintiffs have suffered and incurred, and will continue to suffer and incur, the damages described in detail above.

**ANSWER:**    Defendant denies the averments in Paragraph 27.

      28.     Defendant Dorel knew of the defective condition of, the defects in, the danger and injury risk of and the lack of warning regarding the subject car seat and thereby showed complete indifference to or conscious disregard for the safety of  M.A.    , thereby entitling plaintiffs to punitive damage and/or damages for aggravating circumstances.

**ANSWER:**     Defendant denies the averments in Paragraph 28.

**COUNT III**
**NEGLIGENCE**
**DEFENDANT DOREL**

29.     Plaintiffs incorporate herein by reference each and every allegation set forth in paragraph 1 through 28 as if fully set forth herein.

**ANSWER:**     In response to Paragraph 29, Defendant incorporates its responses to Paragraph 1 through 28.

30.     Defendant Dorel had and owed a duty of ordinary care in designing, manufacturing, testing, warning, marketing, distributing and/or selling the subject car seat.

**ANSWER:**     Defendant admits that it owes certain legal duties, but denies that Plaintiffs have correctly stated those duties.

31.     Defendant Dorel failed to use ordinary care and was thereby negligent with respect to the subject cat seat in one or more of the following respects:

    a.     Failing to warn or instruct that the subject car seat was unsafe for use in a forward facing configuration for children under the age of two;

    b.     Failing to warn or instruct that children under the age of two were at a much higher risk for back, neck and/or head injuries in a forward facing car seat than they would be in a rear facing car seat;

    c.     Failing to warn or instruct that children under the age of two should not use the subject car seat;

    d.     Actually instructing parents and/or other users to utilize the subject car seat in a forward facing configuration for children under two years old;  and/or

    e.     Failing to warn or instruct that defendant Dorel and its executives knew and believed internally that children under the age of two were far safer (over 5

11

times safer) in a rear facing car seat;

f.    Failing to place an appropriate warning on or with the car seat in a location and in a manner such that it would not fade, become illegible, come off or get lost over time.

g.    Failing to change the warnings associated with the subject car seat model because it was an older seat design and defendant Dorel did not want to spend the money to update them;

h.    Continuing to sell the subject car seat model as a forward facing seat to maximize corporate profits when defendant Dorel and its executives knew and believed internally that children under the age of two were far safer (over 5 times safer) in a rear facing car seat;

i.    Making important safety or safety related decisions. regarding the design, testing, manufacture, distribution, marketing and/or sale of subject car seat and subject car seat model based on cutting cost and/or increasing profit instead of safety; and/or

j.    In other respects revealed through the discovery process in this case.

**ANSWER:**    Defendant denies the averments in Paragraph 33, including subparts (a)-(j).

32.    As a direct and/or proximate result of the above-described negligence of defendant Dorel, M.A. was killed and plaintiffs have suffered and incurred, and will continue to suffer and incur, the injuries and damages described in detail above.

**ANSWER:**    Defendant denies the averments in Paragraph 32.

33.    Defendant Dorel knew, or had information which it in the exercise of ordinary care should have known, that its conduct created a high degree of probability of injury and thereby

showed complete indifference to or conscious disregard for the safety of   M.A.   and others, thereby entitling plaintiffs to punitive damages and/or damages for aggravating circumstances.

**ANSWER:**    Defendant denies the averments in Paragraph 33.

<u>**DEFENSES**</u>

DJG was just recently served with plaintiffs' lawsuit papers. Defendant has not had an opportunity to conduct an inspection of the child restraints or vehicles allegedly involved in the accident or to conduct necessary investigation and discovery into the accident or its causes. Defendant requests that plaintiffs preserve the child restraint identified in their Petition, the vehicle in which plaintiffs were riding at the time of the accident along with all of its contents, and all evidence relating to the servicing, use, and maintenance of the child restraint and vehicle.

Because Defendant has not had an opportunity to investigate the accident or plaintiffs' allegations, Defendant is basing its defenses on its knowledge that its child restraints are properly designed, tested and manufactured and are appropriate for their intended use and, on the advice of its counsel, in order to preserve defenses that discovery may prove to be appropriate.

1.      Any damages suffered by plaintiffs were caused solely by acts of others independent of Defendant, including unforeseeable intervening or superseding acts, which bar any recovery against Defendant.

2.      Any damages suffered by plaintiffs resulted from the conduct or fault of other persons or entities for whose conduct Defendant is not legally responsible such that any recovery by plaintiffs may be barred or reduced by the conduct or fault of others.

3.      Plaintiffs' claims are barred or diminished by the defenses set out in RS Mo. § 537.765.

4.      Plaintiffs' claim based upon strict liability for failure to warn is barred because the

13

accident car seat was in conformity with the prevailing state of the art in the industry at the time the product was sold as set forth in RS Mo. § 537.764.

5.    Any recovery by plaintiffs may be barred or reduced by the abnormal use or alteration of the accident car seat or by the acts and/or omissions of other persons over whom Defendant had no control.

6.    Any recovery by plaintiffs may be barred or reduced because Defendant complied with all applicable statutes and regulations prescribing standards for the design, inspection, testing, manufacturing, and labeling of the tire, as existing at the time of the manufacture of the accident car seat.

7.    Plaintiffs' claims are barred or limited by their failure to assert a safer design for the car seat they have identified.

8.    If plaintiffs have received any compensation from a source in accordance with RS Mo. § 537.060, Defendant is entitled to a settlement credit or set-off. At the time of this Answer, Defendant does not have information as to whether plaintiffs have reached any settlement that relates to the accident and plaintiffs' alleged damages, but Defendant requests that plaintiffs provide notice of the fact and amount of any payment under this statute so that Defendant can supplement this defense.

9.    If plaintiffs have been indemnified or otherwise compensated by a collateral source, plaintiffs' recovery (if any) should be reduced by such amount, including but not limited to a reduction for amounts received by healthcare providers in accordance with RS Mo. § 490.715.5.

10.    In accordance with RS Mo. § 537.067, if Defendant is found to be less than 51% at fault, then Defendant should be responsible only for the percentage of the judgment for which Defendant is determined by the trier of fact and shall not be jointly and severally liable.

11.     Defendant committed no act or omission that was malicious, oppressive, willful, wanton, reckless, or grossly negligent and, thus, any award of punitive damages is barred. Further, any award of punitive damages by a jury under Missouri law cannot be sustained because that jury is not provided with constitutionally adequate standards of sufficient clarity for determining the appropriate imposition and size of any punitive damage award, and is not expressly prohibited from awarding punitive damages or determining the amount of damages on the basis of invidiously discriminatory characteristics such as the residence, wealth, and corporate status of Defendant, and because Missouri law regarding the standard for determining liability for punitive damages failed to give Defendant prior notice of the conduct for which those damages may be imposed. For these reasons, an award of punitive damages would violate Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by Article I and Sections 1 and 10 of the Missouri Constitution, and would be improper under the common law and public policies of the State of Missouri.

12.     With respect to the claim for punitive damages, plaintiffs cannot recover such damages because they have failed to state in their Petition the amount of punitive damages sought to be recovered against Defendant, as RS Mo. § 509.200 requires.

13.     Defendant incorporates by reference any affirmative defenses raised by any other defendant in its Answer to plaintiffs' Petition to the extent they are not factually or legally inconsistent with the positions of Defendant DJG.

Defendant reserves the right to supplement or amend its defenses and to add or delete defenses and claims as appropriate following investigation and discovery into the accident and the plaintiffs' allegations.  Specifically, DJG provides notice that if through investigation and discovery its identifies evidence that plaintiff Lane Allmond and/or Misty Allmond caused or

contributed to cause the accident and damages alleged in the Petition then, in accordance with Missouri Rule of Civil Procedure 55.32(d), DJG will seek permission of the Court to assert a counterclaim for contribution.

WHEREFORE, having fully answered each Count of plaintiffs' Petition, Defendant prays that it be dismissed and Defendant be awarded all other relief that the Court deems proper.

**Jury trial demanded.**

Dated: March 22, 2019            Respectfully submitted,

                         **BERKOWITZ OLIVER LLP**

                         By: */s/ Thomas P. Schult*
                             Thomas P. Schult, MO Bar #29986
                             Jennifer B. Wieland, MO Bar #57271
                             2600 Grand Boulevard, Suite 1200
                             Kansas City, Missouri 64108
                             Telephone: (816) 561-7007
                             Facsimile: (816) 561-1888
                             tschult@berkowitzoliver.com
                             jwieland@berkowitzoliver.com

                             **Attorneys for Defendant Dorel Juvenile Group, Inc.**

**CERTIFICATE OF ORIGINAL SIGNATURE AND SERVICE**

I certify that a copy of the Answer of Dorel Juvenile Group, Inc. was electronically filed with the Court this 22nd day of March 2019, which will effectuate service on all attorneys of record. In addition, the undersigned certifies that he signed the original Answer and will maintain it in compliance with Rule 55.03.

                             */s/ Thomas P. Schult*
                             **Attorneys for Defendant Dorel Juvenile Group, Inc.**

16

**IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI**

| | | |
|---|---|---|
| LANE ALLMOND and | ) | |
| MISTY ALLMOND, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 19VE-CV00084 |
| | ) | |
| DOREL JUVENILE GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

**CERTIFICATE OF SERVICE**

---

The undersigned counsel for Defendant Dorel Juvenile Group, Inc. hereby certifies that on

March 22, 2019, a true and complete copy of:

- **Defendant Dorel Juvenile Group's First Set of Interrogatories to Plaintiffs; and**

- **Defendant Dorel Juvenile Group's First Requests for Production of Documents and Things to Plaintiffs**

were served via electronic mail to the following counsel of record for Plaintiff:

Chad C. Lucas and Nick A. Brand
Kuhlman & Lucas, LLC
1100 Main Street, Suite 2550
Kansas City, Missouri 64105
chad@kuhlmanlucas.com
nick@kuhlmanlucas.com

Joseph R. Hillebrand
Brown & Crouppen, P.C.
211 N. Broadway, Suite 1600
St. Louis, Missouri 63102
joeh@getbc.com

**Attorneys for Plaintiff**

Dated: March 22, 2019  Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By:  */s/ Thomas P. Schult*
    Thomas P. Schult, MO Bar #29986
    Jennifer B. Wieland, MO Bar #57271
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone:  (816) 561-7007
    Facsimile:  (816) 561-1888
    tschult@berkowitzoliver.com
    jwieland@berkowitzoliver.com

**Attorneys for Defendant Dorel Juvenile Group, Inc.**

## CERTIFICATE OF ORIGINAL SIGNATURE AND SERVICE

      I certify that a copy of the Certificate of Service was electronically filed with the Court this 22nd day of March 2019, which will effectuate service on all attorneys of record.  In addition, the undersigned certifies that he signed the original and will maintain it in compliance with Rule 55.03.

        */s/ Thomas P. Schult*
        **Attorneys for Defendant Dorel Juvenile Group, Inc.**

## IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

| | | |
|---|---|---|
| LANE ALLMOND and | ) | |
| MISTY ALLMOND, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 19VE-CV00084 |
| | ) | |
| DOREL JUVENILE GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY OF APPEARANCE

In accordance with Missouri Rule of Civil Procedure 55.03(b)(3), Jennifer B. Wieland of

Berkowitz Oliver LLP enters her appearance as counsel on behalf of Defendant Dorel Juvenile

Group, Inc.

Dated: March 22, 2019            Respectfully submitted,

                                 **BERKOWITZ OLIVER LLP**


                                 By:  */s/ Jennifer B. Wieland*
                                     Thomas P. Schult, MO Bar #29986
                                     Jennifer B. Wieland, MO Bar #57271
                                     2600 Grand Boulevard, Suite 1200
                                     Kansas City, Missouri 64108
                                     Telephone:  (816) 561-7007
                                     Facsimile:   (816) 561-1888
                                     tschult@berkowitzoliver.com
                                     jwieland@berkowitzoliver.com

                                 **Attorneys for Defendant Dorel Juvenile
                                 Group, Inc.**

## CERTIFICATE OF ORIGINAL SIGNATURE AND SERVICE

I certify that a copy of the Entry of Appearance was electronically filed with the Court this 22nd day of March 2019, which will effectuate service on all attorneys of record. In addition, the undersigned certifies that she signed the original Entry of Appearance and will maintain it in compliance with Rule 55.03.

      */s/ Jennifer B. Wieland*
**Attorney for Defendant Dorel Juvenile Group, Inc.**

IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

| | | |
|---|---|---|
| LANE ALLMOND and | ) | |
| MISTY ALLMOND, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 19VE-CV00084 |
| | ) | |
| DOREL JUVENILE GROUP, INC. | ) | |
| and TREVOR PETTIBON, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY OF APPEARANCE

John E. Franke, of the law firm of Franke Schultz & Mullen, P.C., hereby enters his appearance on behalf of Defendant Trevor Pettibon.

Respectfully submitted,

**FRANKE SCHULTZ & MULLEN, P.C.**

*/s/ John E. Franke*
JOHN E. FRANKE        MO #34908
8900 Ward Parkway
Kansas City, Missouri 64114
(816) 421-7100
(816) 421-7915 (Fax)
jfranke@fsmlawfirm.com
**Attorneys for Defendant Trevor Pettibon**

## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the above and foregoing was sent electronically via e-mail this 16th day of April, 2019, to:

F:\WPDOCS\107\107.046\Pleadings\EOA - Franke.docx

Chad C. Lucas # 50822
Nick A. Brand # 63380
Kuhlman & Lucas, LLC
1100 Main Street, Suite 2550
Kansas City, Missouri 64105
P: (816) 799-0330
F: (816) 799-0336
chad@kuhlmanlucas.com
nick@kuhlmanlucas.com

and

Joseph R. Hillebrand # 43344
Brown & Crouppen, P.C.
211 N. Broadway, Suite 1600
St. Louis, Missouri 63102
P: (314) 222-2222
F: (314) 421-0359
joeh@getbc.com
**Attorneys for Plaintiffs**


Thomas P. Schult
Jennifer B. Wieland
Berkowitz Oliver, LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
P: (816) 561-7007
F: (816) 561-1888
tschult@berkowitzoliver.com
jwieland@berkowitzoliver.com
**Attorneys for Defendant Dorel Juvenile**
**Group, Inc.**


 _/s/ John E. Franke_
**Attorney for Defendant Trevor Pettibon**

## IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

LANE ALLMOND and MISTY
ALLMOND                                        )
                                               )
                    Plaintiffs,               )
                                               )
v.                                             )          Case No.: 19VE-CV00084
                                               )
DOREL JUVENILE GROUP and                       )
TREVOR PETTIBON                                )
                                               )
                    Defendants.               )

### PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

COME NOW Plaintiffs, by and through their attorneys of record, and for their Motion for Protective Order state as follows:

This is a personal injury action brought against the driver of a truck which struck the vehicle in which M.A    was a passenger and Dorel Juvenile Group due to the failure to warn plaintiffs regarding the dangerous condition of the subject car seat.  In counsel's experience in products liability actions such as this, defendants are highly protective of their claimed confidential and proprietary materials without the entry of a protective order.  As such, plaintiffs hereby move this Court for its entry of the attached Protective Order in order to ensure the expedient proceeding of discovery in this case. Plaintiffs seek entry by this Court of the Protective Order, attached hereto as Exhibit "A".

WHEREFORE plaintiffs hereby move this Court for the entry of plaintiffs' Proposed Protective Order, attached hereto as Exhibit A.

Respectfully submitted,

By: */s/ Nick A. Brand*

Chad C. Lucas        #50822
Nick A. Brand        #63380
Kuhlman & Lucas, LLC
1100 Main Street, Suite 2550
Kansas City, Missouri 64105
Telephone: (816) 799-0330
Facsimile: (816) 799-0336
chad@kuhlmanlucas.com
nick@kuhlmanlucas.com

and

Joseph R. Hillebrand        #43344
Brown & Crouppen, P.C.
211 N. Broadway, Suite 160
St. Louis, Missouri 63102
Telephone: (314) 222-2222
Facsimile: (314) 421-0359
joeh@getbc.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of April, 2019, the foregoing document was filed with the Clerk of the Court using the Missouri eFiling System, which sent notice of such filing to all counsel of record.

*/s/ Nick A. Brand*
**Attorney for Plaintiffs**

EXHIBIT

A

## IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

| | | |
|---|---|---|
| **LANE ALLMOND and MISTY ALLMOND** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 19VE-CV00084** |
| | ) | |
| **DOREL JUVENILE GROUP and TREVOR PETTIBON** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>PROTECTIVE ORDER</u>

AND NOW, this _____ day of _____, 2019, IT IS HEREBY ORDERED AND DECREED THAT:

1.    Certain documentary information in defendant's possession, custody and control will be produced to plaintiffs' counsel subject to the stipulated provisions of this Order. The documentary information to be produced shall be defined by the parties in a separate agreement or by Order of the Court. It is agreed that this production will, at the least, include the following:

a.    All design drawings and installation drawings pertinent to the car seat and its components at issue in this case.

b.    All developmental, prototype, mechanical and production (certification) sled and crash test reports, photographs and films pertinent to the car seat at issue in this case.

c.    All internal minutes of meetings, memoranda of engineers and budgetary information pertinent to the consideration of the warnings related to the car seat at issue in this case, alternative warnings considered but not chosen, and information regarding the risks and benefits of the chosen and alternative warnings.

d.    Failure Mode and Effect Analysis for the car seat and its componentry at issue in this case.

e.    Communications received and sent regarding any claimed injuries or deaths

purportedly stemming from the performance of the car seat and its componentry at issue in this case.

2.      Information obtained from defendants in discovery which does not constitute trade secret or other confidential research development, or commercial information is not the subject of this Order.

3.      It is ordered that:

a.      The party producing the discovery shall bear the expense of copying the information;

b.      The information shall be produced in a legible format or in electronic format at the option of the requesting party;

c.      The information shall be produced along with a production log indicating to which Discovery response the data is responsive;

d.      The information shall be produced with a case designation and bates number placed on the data in a location that does not cover or mark over any textual material;

e.      The information produced shall be stored in a secure fashion to assure compliance with this order. The requesting party may designate a competent person or entity to serve as his or her agent to organize said data and to limit distribution in accordance with this Order;

f.      No party to this action shall seek or request an Order to obtain counsel's core work product unless said party has a good faith basis to believe that the information in dispute does not constitute core work product; and

g.      All data produced under the terms of this Order shall be deemed to be the authentic business records of the producing party.

5.      The following is granted as to all materials that are the subject of this Order:

a.      All such materials furnished shall be available to counsel for the requesting

party to use in any other similar litigation after first notifying the producing party of the intent to use said data;

        b.      Such material shall not be produced to any commercial competitor product manufacturer of the party producing the data;

        c.      Any such materials may be disclosed to any governmental agency, which has oversight authority to study public safety issues pertinent to the product at issue. However, at least 10 days before such data is furnished to the relevant governmental agency, the party making such disclosure shall give notice to the party that produced the materials in discovery to allow that party the opportunity to ask the governmental agency to maintain the materials as confidential;

        d.      Such materials may be disclosed to counsel representing any party alleged to have been injured in an accident involving a Dorel Safety 1st car seat and/or any of the components of the car seat which is the subject of this litigation. Such disclosure may be made only after the counsel receiving the materials agrees in writing to be bound by the provisions of this Order;

        e.      Such materials may be provided to the court in connection with consideration of any motion but shall be filed with a request that it be placed under seal; and

        f.      The data produced hereto may not otherwise be sold, offered, advertised or publicized to any media representative.

        6.      Prior to marking any documents confidential, the producing party shall make a bona fide, good-faith determination that the documents are actually entitled to confidentiality pursuant to the Missouri Rules of Civil Procedure and Missouri law.

        7.      Should a requesting party dispute that materials produced constitute trade secret or other confidential research, development, or commercial information, said party shall notify the producing party which may, within 20 days, move for a determination that the materials are entitled to confidentiality. Under such circumstances, the producing party bears the burden of proving the

propriety of designating an item as confidential. If no motion is brought within 20 days, the materials shall not be considered confidential and shall not be subject to this Order. If a motion is brought, the materials shall be handled in accordance with this order until the motion is ruled upon, and thereafter shall be subject to this order if the court determines that the material is confidential research, development, or commercial information.

8.      Confidential materials may be disclosed to attorneys or other office personnel, experts, contractors, and consultants, working with counsel for the requesting party in the prosecution of the case. In the event that anyone outside the confines of the office of counsel is to receive information covered by this Order, they must agree in writing to the terms of this Order.

9.      Counsel for the requesting party shall assure that anyone working in his/her office or as his agent will be familiarized with the terms of this Order and be instructed that they are bound by the Order.

10.     At the completion of this litigation, all copies of documents which have been designated as confidential may, at the option of the requesting party, be kept or returned to the producing party. If kept, then this Order shall remain in force.

11.     This Order does not apply to and shall have no effect upon evidence offered at trial or in consideration of any proceeding in this case.

Dated: _____

_____
Hon. David R. Munton

# IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

LANE ALLMOND and )
MISTY ALLMOND, )
                )
         **Plaintiffs,** )
                )
      **vs.** )      **Case No.: 19VE-CV00084**
                )
**DOREL JUVENILE GROUP, INC., et al.,** )
                )
        **Defendants.** )

## PLAINTIFFS' ANSWERS TO DEFENDANT DOREL JUVENILE GROUP'S FIRST SET OF INTERROGATORIES

Plaintiffs, for their answers to Defendant Dorel Juvenile Group's First Set of Interrogatories, state as follows:

## INTERROGATORIES

1.    Describe when, how and Identify from whom You or M.A.    's other family member(s) initially acquired the Child Restraint System, and specify the person who purchased it and the means of payment used (e.g., cash or credit card).

    **ANSWER:**    **Plaintiffs obtained the car seat from Lane Allmond's sister, Jessica Colopy, in 2015. Plaintiffs believe the car seat was originally purchased from Wal-Mart in Fort Scott, Kansas.**

2.    Identify all children who used the Child Restraint System, identify their natural and birth parents, and provide the best information You have as to the dates each such child did so, and the height and weight at which they stopped using the Child Restraint System.

    **ANSWER:**   G.T.    **– Jessica Colopy and Seth Tena, plaintiffs are unsure when he used it;** B.A.   **, plaintiffs, 2015-2016;** M.A.   **, plaintiffs, three or four months until the date of her passing.**

3.    Provide the brand name, model number (format: XX-YYY), seat type (harness, combination seat, convertible seat, infant seat), weight ranges, manufacturing date, and any other identifying or functional description information for the Child Restraint System.

    **ANSWER:**    **Safety 1ˢᵗ Summit forward facing car seat**

1

4.    Describe all vehicles in which the Child Restraint System was used and provide the best information You have as to the dates the Child Restraint System was used and who was responsible for its installation in each such vehicle.

**ANSWER:    2011 or 2012 Dodge Avenger, installed by Jessica Colopy and/or Nathaniel Colopy; 2002 Jeep Liberty, installed by either Lane Allmond or Misty Allmond.**

5.    Identify each occupant of the Vehicle at the time of the Accident, the seating position of that occupant in the Vehicle, and provide the best information You have concerning their date of birth, weight, height and restraint use at the time of the Accident.

**ANSWER:    Misty Allmond, driver.  Lane Allmond, front seat passenger.** B.A. **, rear seat behind the driver's seat.** M.A. **, rear seat behind the front passenger seat.  Plaintiff refers defendant to** M.A. **medical records and autopsy.**

6.    Identify each custodian of the Vehicle and the Child Restraint System following the Accident, state the dates each custodian had possession of either the Vehicle or the Child Restraint System, and describe all changes to the condition of the Vehicle and Child Restraint System since the Accident.

**ANSWER:    Plaintiffs believe the vehicle was towed from the scene by Garwood's Towing in Nevada, Missouri and was at some point later transported to Insurance Auto Auction (2663 South 88th Street Kansas City, KS 66111).  The vehicle was then transported to Hardesty Self Storage (5401 Independence Avenue, Kansas City, MO 64123) where it has remained to this date.**

**Plaintiffs believe the car seat was removed by first responders at the scene and then placed in the back of the vehicle before the vehicle was towed from the scene.  The car seat was laying loose in the back of the vehicle when the vehicle arrived at Insurance Auto Auction.  The car seat was taken out of the back of the vehicle at Insurance Auto Auction and transported to Brown & Crouppen's Kansas City office for storage.  The car seat was then taken to Kuhlman & Lucas, LLC where it was shipped to Gary Whitman at ARCCA. Gary Whitman then shipped the car seat back to Kuhlman & Lucas, LLC and the car seat was taken to Hardesty Self Storage for storage with the vehicle where it remains to date.**

7.    Identify any *other* child restraint system You have used, with M.A. or any other child, by brand name, model number (format: XX-YYY), seat type (harness, combination seat, convertible seat, infant seat), weight ranges, manufacturing date, and any other identifying or functional description information.

**ANSWER:    Graco Snugride Classic Connect 30.** B.A. **was using a booster seat at the time of the crash.**

2

8.     Describe in detail any defect in the Child Restraint System which You contend caused, contributed to, aggravated, or enhanced any injuries M.A. sustained in the Accident, and, for each such defect, (1) specify the type of defect (i.e. design, manufacture, etc.); (2) specify the injuries You attribute to that defect; and (3) set forth Your contention as to how the Child Restraint System could have been made in a safer, more appropriate manner.  If You claim the Child Restraint System's warnings were defective, set forth the precise language of any warning You contend Dorel failed to give and which would have reduced or prevented M.A. 's injuries.

**ANSWER:     Plaintiffs refer defendant to their Petition for more specific information on plaintiffs' claims.  Generally speaking, Dorel should not have sold or marketed the subject forward facing car seat for children under the age of 2 and the warnings on the seat should have stated that.   Plaintiff anticipates much of the information requested in this interrogatory will be the subject of testimony by experts who will be disclosed in accordance with any scheduling order entered by the court or agreement of the parties.**

9.     If You ever claimed that any person, entity or product other than DJG caused or contributed to the injuries suffered by M.A. in the Accident, then Identify the person, entity or product, and describe the act, omission, or defect allegedly causing or contributing to such injuries.

**ANSWER:     See Plaintiffs' Petition.**

10.     Describe any impairment, disability, injury or other condition which affected the physical or mental health of M.A. , or either of her parents, prior to the date of the Accident, specifying the nature and cause of same.

**ANSWER:     Nothing.**

11.     Describe each date, facility, or doctor, and reason sought for each medical or psychological evaluation or treatment of M.A. , for the two years prior to the Accident and at all times after the Accident.

**ANSWER:     M.A. was born and treated at Nevada Medical Center.**

12.     Identify any social services agency, other governmental agency, child care provider, or educational provider that has provided services to M.A. or her family during her lifetime, and specify the reasons for the service, the actual services provided, and the dates of service.

**ANSWER:     None.**

3

13.     Describe each injury suffered by each occupant of the Vehicle in relation to the Accident and as to each injury specify the part of the body that was injured, the nature of the injury, and as to any injuries You contend are permanent, the effects You contend are permanent.

**ANSWER:** M.A. **died.  Misty broke her ribs, collapsed her lung, had a grade 4 liver laceration, had her spleen removed, broke her left arm, crushed her pelvis, broke her right femur, broke her right knee cap, suffered injury to her right side with foot drop, suffered torn ligaments in her left knee, broke her left fibula and tibia, suffered injuries to her head, and suffered C2, T3 and T4 vertebra injuries.** B.A. **suffered a sprained thumb. Lane suffered a broken right ankle, injury to his right knee ligaments requiring surgery and a spleen laceration.**

14.     Has any physician, psychologist, or other professional provider for injuries sustained by M.A. expressed the opinion that such injuries (a) were caused by; (b) were aggravated by; or (c) were not caused by the Child Restraint System?  If so, identify that professional, describe the substance of that opinion, and Identify all documents and things that reflect that opinion.

**ANSWER:     Plaintiffs anticipate the information requested in this interrogatory will be the subject of testimony by experts who will be disclosed in accordance with any scheduling order entered by the court or agreement of the parties.**

15.     Itemize the damages You seek in this action, by category, respective defendant, and respective amount, by stating each element of damages and the sum of money attributable to each element.  For medical expenses, identify separately the amounts billed and the amounts paid.  This interrogatory includes non-economic damages.  Include an explanation of how You arrived at or calculated each amount of damages.

**ANSWER:     Plaintiffs will supplement their answer to this interrogatory once economic damages have been determined and totaled.  Plaintiffs will ask the jury to fully compensate them for their non-economic damages based on the evidence presented to the jury at trial.**

16.     If You have entered into, or are aware of, any settlement agreement, release, covenant not to sue, covenant not to enforce or execute judgment, indemnification agreement, hold harmless agreement, or any other type of agreement or covenant, with any other person or entity (including any insurance company) concerning the Accident or any injuries sustained by anyone in the Accident, Identify all parties to such agreement or covenant, and state its date and terms.

**ANSWER:     See documents produced from State Farm settlement.  Pettibon's employer has interplead its policy limits to the court and that settlement was verbally approved by the Court on April 29, 2019.**

4

17.     Identify every employer of each parent and/or legal guardian of M.A.          for the five years before, and at all times after the Accident, and list the dates of employment, job title(s) and responsibility, the amount or rate of compensation, and the reasons any employment ended.

        **ANSWER:   Misty stopped working when M.A. was born but prior to that she worked at US Bank as a loan processor at approximately $9.00 per hour.**

        **Lane worked Gator Demolition as an operator from 2013 to 2015 making approximately $15.00 per hour.  From approximately 2015 to 2016, Lane worked at Alignment Service in Fort Scott, Kansas as a mechanic making approximately $11.00 per hour.  In 2016, Lane worked as a ranch hand at Kelly's Ranch making approximately $16.00 per hour. Lane works with his dad, Robert Allmond, building fence, raising cattle and harvesting wood and believes he made approximately $50,000 in 2017.**

18.     Has either parent of M.A.          , or any legal guardian of M.A.          , ever been a party to any other lawsuit, bankruptcy proceeding, criminal proceeding, or submitted a claim for disability or workers compensation, including but not limited to any citations or proceeding arising out of the Accident?  If so, identify each such suit or proceeding (name and location of court, names of all parties, docket number, and date filed) and provide a brief description of the nature of the suit or claim and its disposition.

        **ANSWER:   Yes.   The settlement with State Farm was court approved. Furthermore, Berkshire Hathaway has filed an interpleader action (18VE-CV00762).  Lane also believes he was subject to a conservatorship due to a minor settlement when he was approximately 15.**

19.     Identify all witnesses or potential witnesses of whom You are aware who may have knowledge concerning Your allegations in Your pleadings, and state the subject matter of their knowledge, including those concerning the Accident, the injuries sustained by M.A.          or her family members, damages, and any suspected defects in the design of the Child Restraint System or the Vehicle.

        **ANSWER:   Please see the individuals identified in the reports prepared by the emergency responders, as well as the individuals identified in the medical records.**

20.     If You contend that there are any other accidents or incidents that are substantially similar to the Accident made the basis of this lawsuit, Identify all witnesses to that incident, state the date and location of the incident, identify the make and model of child restraint system involved, and provide a detailed description of what happened in the incident.

        **ANSWER:   Plaintiffs refer defendant to the *Hinson v. Dorel* case which was tried to verdict which Dorel and its counsel are familiar with.   Plaintiffs will supplement this interrogatory with other similar accidents or incidents identified during discovery.**

5

Respectfully submitted,

By:     */s/ Nick A. Brand*
        Chad C. Lucas        #50822
        Nick A. Brand        #63380
        Kuhlman & Lucas, LLC
        1100 Main Street, Suite 2550
        Kansas City, Missouri 64105
        Telephone: (816) 799-0330
        Facsimile: (816) 799-0336
        chad@kuhlmanlucas.com
        nick@kuhlmanlucas.com

        and

        Joseph R. Hillebrand
        Brown & Crouppen, P.C.
        211 N. Broadway, Suite 1600
        St. Louis, MO 63102
        Telephone: (314) 222-2222
        Facsimile: (314) 421-0359
        joeh@getbc.com

        **Attorneys for Plaintiff**

6

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2019, I caused the foregoing document to be served via e-mail upon the following counsel of record:

| | |
|---|---|
| John E. Franke | Thomas P. Schult |
| Franke Schultz & Mullen, P.C. | Jennifer B. Wieland |
| 8900 Ward Parkway | Berkowitz Oliver LLP |
| Kansas City, MO 64114 | 2600 Grand Blvd., Suite 1200 |
| jfranke@fsmlawfirm.com | Kansas City, MO 64108 |
| **Attorney for Defendant** | tschult@berkowitzoliver.com |
| **Trevor Pettibon** | jwieland@berkowitzoliver.com |
| | **Attorneys for Defendant Dorel** |
| | **Juvenile Group, Inc.** |

/s/ Nick A. Brand
**Attorney for Plaintiffs**

7

| | |
|---|---|
| LANE ALLMOND and | ) |
| MISTY ALLMOND, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )    Case No.: 19VE-CV00084 |
| | ) |
| DOREL JUVENILE GROUP, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFFS' RESPONSES TO DEFENDANT DOREL JUVENILE GROUP'S FIRST REQUEST FOR PRODUCTION

Plaintiffs, for their responses to Defendant Dorel Juvenile Group, Inc.'s First Request for

Production, state as follows:

### Court Documents

1.    All pleadings, discovery, motions, orders, and judgments filed or served in any other lawsuit or legal proceeding arising out of or relating to the Accident.

**RESPONSE: These records can be located on Missouri's Case.Net in cases 18VE-CV000762 and 18VE-CV000742.**

### Documents Relating to the Accident

2.    All documents, photographs, and videos describing, depicting, or referring to the Accident or the scene of the Accident.  This Request is intended to include all documents created or produced by any person, entity, public regulatory or law enforcement agency concerning the Accident, including any photographs, recordings, police or Accident reports, investigative reports, witness statements, memoranda, or other attachments thereto, as well as all copies of newspaper articles, interviews, investigative reports, investigative stories, or media broadcasts or stories concerning the Accident, the Child Restraint System, the Vehicle, or subsequent events related to the Accident.

**RESPONSE: See materials generated by the emergency responders and M.A. 's medical records.**

### Documents Relating to the Child Restraint System

3.    All documents, photographs, or videos that show or otherwise principally or materially refer or relate to the Child Restraint System.

**RESPONSE: OBJECTION. Plaintiffs object to this request to the extent it seeks work product. Subject to and without waiving that objection, plaintiff refers defendant to the materials generated by the emergency responders.**

4.  All documents concerning the transaction whereby You or M.A.         's other family member(s) initially acquired the Child Restraint System. This includes previous or subsequent owners.

**RESPONSE: Plaintiffs have no such documents.**

5.  Any document, manual, instruction book, or other literature that accompanied the Child Restraint System at the time You acquired possession of it.

**RESPONSE: Plaintiffs have no such materials.**

6.  Any other manual or instruction book referring to the Child Restraint System that You acquired at any time.

**RESPONSE: Plaintiffs have no such materials.**

7.  All documents referring or relating to any repairs to, malfunction of, or alterations or modifications made to the Child Restraint System.

**RESPONSE: Plaintiffs have no such materials.**

8.  All documents that refer or relate to any inspection, examination, investigation, or analysis of the Child Restraint System.

**RESPONSE: OBJECTION. Plaintiffs object to this request to the extent it seeks work product.**

9.  All literature, tests, studies, reports or other documents which principally or materially support Your allegation that the Child Restraint System was defective in any manner.

**RESPONSE: OBJECTION. Plaintiffs object to this request to the extent is vague and ambiguous as to what is meant by "principally or materially" supporting allegations. Furthermore, this request is pre-mature given the fact that discovery is in its infancy. Subject to and without waiving these objections, plaintiffs believes such materials will likely be identified during depositions and by experts (who will be disclosed pursuant to any scheduling order entered by the Court or agreement of the parties). In addition, plaintiffs would refer defendant to the trial exhibits utilized in the trial of _Hinson v. Dorel_.**

10. All drawings, graphics, specifications, standards, tests, or other documents which describe or depict any alternate design You contend should have been utilized on the Child Restraint System.

2

**RESPONSE: OBJECTION. Plaintiffs object to this request because it is pre-mature given the fact that discovery is in its infancy. Subject to and without waiving these objections, plaintiffs believes such materials may be identified during depositions and by experts (who will be disclosed pursuant to any scheduling order entered by the Court or agreement of the parties). In addition, plaintiffs would refer defendant to the trial exhibits utilized in the trial of *Hinson v. Dorel*.**

11. All documents that principally or materially support Your contention that the Child Restraint System was defectively marketed or sold.

**RESPONSE: OBJECTION. Plaintiffs object to this request to the extent is vague and ambiguous as to what is meant by "principally or materially" supporting contentions. Furthermore, this request is pre-mature given the fact that discovery is in its infancy. Subject to and without waiving these objections, plaintiffs believes such materials will likely be identified during depositions and by experts (who will be disclosed pursuant to any scheduling order entered by the Court or agreement of the parties). In addition, plaintiffs would refer defendant to the trial exhibits utilized in the trial of *Hinson v. Dorel*.**

12. A copy of any warning or instruction You contend should have been utilized with the Child Restraint System, along with any tests, studies, literature or other documents which principally or materially support Your allegation that any such warning or instruction would have reduced or eliminated any injuries suffered in the Accident.

**RESPONSE: OBJECTION. Plaintiffs object to this request because it is pre-mature given the fact that discovery is in its infancy. Subject to and without waiving these objections, plaintiffs believes such materials may be identified during depositions and by experts (who will be disclosed pursuant to any scheduling order entered by the Court or agreement of the parties).**

13. All documents that principally or materially support Your contention that DJG was negligent in any way.

**RESPONSE: OBJECTION. Plaintiffs object to this request to the extent is vague and ambiguous as to what is meant by "principally or materially" supporting contentions. Furthermore, this request is pre-mature given the fact that discovery is in its infancy. Subject to and without waiving these objections, plaintiffs believes such materials will likely be identified during depositions and by experts (who will be disclosed pursuant to any scheduling order entered by the Court or agreement of the parties). In addition, plaintiffs would refer defendant to the trial exhibits utilized in the trial of *Hinson v. Dorel*.**

14. The Child Restraint System and all of its component parts and original packaging at a mutually convenient time and place.

**RESPONSE: The car seat is available for defendant to inspect.**

3

15.     Exemplars of all child car seats or child car seat instructions, regardless of design, that both (a) were being sold in the United States at the time the Child Restraint System was manufactured, and (b) You contend would have prevented or reduced M.A.          's injuries in the Accident.  This Request is intended to include copies of all instruction books or labels used by manufacturers of other child restraint systems which contain warnings You contend DJG failed to give.

**RESPONSE:  Plaintiffs do not have exemplars available for defendant to inspect at this time.  Plaintiffs will supplement this response in the future if necessary.**

**<u>Documents Relating to the Vehicle</u>**

16.     All photographs and videos of the Vehicle.

**RESPONSE:  See photographs produced.**

17.     All documents concerning the transaction whereby You or anyone else acquired the Vehicle.

**RESPONSE:  Plaintiffs will produce such documents if located.**

18.     Registration, proof of insurance, and any other documents related to insurance for the Vehicle.

**RESPONSE:  Plaintiffs have no such documents.**

19.     Any document, manual, instruction book, or other literature that accompanied the Vehicle at the time You acquired possession of it.

**RESPONSE:  Plaintiffs have no such documents.**

20.     Any manual or instruction book referring to the Vehicle that You acquired at any time.

**RESPONSE:  Plaintiffs have no such documents.**

21.     All documents referring or relating to any repairs to, malfunction of, or alterations or modifications made to the Vehicle.

**RESPONSE:  Plaintiffs have no such documents.**

22.     All documents relating to the ownership, towing, storage, possession, location or repair of the Vehicle after the Accident.

**RESPONSE:  Plaintiffs will produce such documents if located.**

23.     All documents that refer or relate to any inspection, examination, investigation, or analysis of the Vehicle.

4

**RESPONSE: OBJECTION. Plaintiffs object to this request to the extent it seeks work product. Subject to and without waiving this objection, plaintiffs refer defendants to the materials generated by the emergency responders.**

24. The Vehicle, all of its component parts, and all items that were inside the vehicle at the time of the Accident, at a mutually convenient time and place.

**RESPONSE: The vehicle is available for defendant to inspect.**

25. Any other vehicle involved in the accident, along with its component parts and items inside that vehicle, at a mutually convenient time and place.

**RESPONSE: Plaintiffs do not have possession or control of the truck driven by defendant Pettibon.**

<u>**Witness Statements or Admissions**</u>

26. All statements or admissions of agents or employees of DJG concerning this action or its subject matter. This includes prior testimony.

**RESPONSE: OBJECTION. Plaintiffs object to this request because it is an improper request for documents and information gathered by counsel under the guise of a request submitted to plaintiffs, and thereby improperly seeks the work product and mental impressions of counsel. Furthermore, defendant already has its own documents and statements (and tried the _Hinson v. Dorel_ case on the same issue), so the only possible reason for this request is that defendant wants to know what plaintiffs' counsel has or is aware of so defendant can improperly withhold damaging and prejudicial testimony, documents and materials without getting caught. Obviously, this is improper and flies in the face of Missouri law (or any law really) regarding discovery. Finally, plaintiffs further object to this request as it fails to state with particularity the documents sought pursuant to Missouri Rule 58.01and is merely a catch-all discovery request which is overly broad and improper.**

27. All statements that You, M.A.              , other relatives and/or legal guardians, or any other witnesses have made, given, or signed with respect to the Accident or causes of action alleged in Your Complaint, and all documents evidencing each such statement, exclusive of statements to Your attorneys. This includes prior testimony.

**RESPONSE: See the reports of the emergency responders.**

<u>**Documents Relating to Damages**</u>

28. All agreements or covenants by and between You and any other party or entity with respect to the Accident or the alleged damages or losses for which You seek recovery in this action.

**RESPONSE: See documents produced from the State Farm settlement.**

5

29.    All documents reflecting or evidencing a settlement or resolution with any other person or entity (including any insurance company) that relates in any way to the Accident or the claims and damages alleged in the Petition.

**RESPONSE:  See documents produced from State Farm settlement.**

30.    All federal income tax returns filed by or on behalf of M.A.            's parents or legal guardians for the years 2012-2017.

**RESPONSE:  Plaintiffs produced such materials when they are obtained.**

31.    All photographs or videos which depict M.A.            's physical condition in the year before the Accident and at any time following the Accident.

**RESPONSE:  Plaintiffs will produce photographs and videos of M.A. .**

32.    All documents that principally or materially support Your contention that You have suffered injuries or are otherwise entitled to damages in this action.

**RESPONSE:  See documents produced. M.A. died.**

33.    All medical, psychological, educational, social services, and child care records for M.A.            , including but not limited to birth and well-care records.

**RESPONSE:  See the medical records and autopsy produced.**

34.    All prescriptions given to M.A.            or her parents and/or legal guardians in the two (2) years before or at any time after the Accident.

**RESPONSE:  Plaintiffs have no such materials.**

35.    All health care insurance plans applicable to M.A.            or her parents and/or legal guardians for the five (5) years prior to the Accident and at any time after the Accident.

**RESPONSE:  M.A. had Missouri Medicaid.**

36.    Any and all reports, records, bills and other documents supporting any claim for pecuniary loss or any claim for emotional distress.

**RESPONSE:  See materials produced.**

**<u>Miscellaneous</u>**

37.    All documents relating to claims of liability made by You against any person or entity other than DJG with respect to this action and/or the injuries, damages, and losses claimed by Plaintiffs.

6

**RESPONSE: See Plaintiffs' Petition for Wrongful Death.**

38.     The driver's license for Misty Allmond at the time of the Accident.

**RESPONSE: Misty no longer possesses the license she had on the date of the accident, which has been replaced.**

39.     All documents identified, referenced, or relied upon by You in response to any interrogatory submitted to You by any Defendant.

**RESPONSE: See materials produced.**

40.     The complete file of any expert witness retained on Your behalf.

**RESPONSE: Plaintiffs will produce expert files in accordance with any scheduling order entered by the court or agreement of the parties.**

41.     All documents to be used as exhibits at trial, along with any remaining documents that principally and materially support the contentions of Your Complaint not previously produced.

**RESPONSE: OBJECTION. This request is overly broad, unduly burdensome and vague as to what is meant by "principally and materially." Subject to and without waiving these objections, plaintiffs state they will identify trial exhibits in accordance with any scheduling order entered by the court or agreement of the parties.**

42.     The entire insurance file for Misty Allmond and/or the Vehicle relating to the Accident.

**RESPONSE: Plaintiffs have no such materials.**

43.     Cell phone records for Misty Allmond and Lane Allmond showing all calls and text messages sent or received on the date of the Accident and the three days before and after the Accident.

**RESPONSE: OBJECTION. This request is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and invades plaintiffs' privacy in that it seeks 7 days of plaintiffs' phone records.**

44.     All documents received from any third party (including a government agency) relating to the Child Restraint System, the Accident, or otherwise relating to the subject matter of the lawsuit.

**RESPONSE: See materials produced.**

45.     All notices that You are legally required to send to the provider of any collateral source of claimant's intent to claim damages from the tortfeasor.

7

**RESPONSE: OBJECTION. Plaintiffs object to this request because they do not know what defendant is requesting. If defendant will clarify what it is seeking, plaintiffs will consider responding.**

46. Any correspondence received from the provider of any collateral sources, including but not limited to, any correspondence which indicates that the collateral source provider intends to maintain their right of subrogation or reimbursement or waive their right of subrogation or reimbursement.

**RESPONSE: Plaintiffs have no such materials at this time but will supplement if and when received.**

47. All documents related to other incidents You contend are similar to the subject incident in any way.

**RESPONSE: Plaintiffs will supplement their response to this request when such materials are obtained. Plaintiffs believe the materials they requested from defendant relating to the *Hinson v. Dorel* case will be responsive to this request.**

48. All documents filed with the Social Security Administration in relation to injuries sustained in the Accident.

**RESPONSE: OBJECTION. Plaintiffs object to this request to the extent that it seeks materials from others other than** M.A. **as such materials are not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, plaintiffs have no such materials related to** M.A. **.**

49. Executed copies of the attached authorization for any person or entity who treated or examined M.A. before or in connection with the Accident.

**RESPONSE: OBJECTION. Plaintiffs object to this request as the authorization defendant provided does not specifically prohibit *ex parte* communications with** M.A. **'s medical providers and is therefore overly broad. Plaintiffs will be happy to execute a proper authorization provided by defendants.**

8

Respectfully submitted,

By:   */s/ Nick A. Brand*
    Chad C. Lucas      #50822
    Nick A. Brand      #63380
    Kuhlman & Lucas, LLC
    1100 Main Street, Suite 2550
    Kansas City, Missouri 64105
    Telephone: (816) 799-0330
    Facsimile: (816) 799-0336
    chad@kuhlmanlucas.com
    nick@kuhlmanlucas.com

    and

    Joseph R. Hillebrand
    Brown & Crouppen, P.C.
    211 N. Broadway, Suite 1600
    St. Louis, MO 63102
    Telephone: (314) 222-2222
    Facsimile: (314) 421-0359
    joeh@getbc.com

    **Attorneys for Plaintiff**

9

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2019, I caused the foregoing document to be served via e-mail upon the following counsel of record:

| | |
|---|---|
| John E. Franke | Thomas P. Schult |
| Franke Schultz & Mullen, P.C. | Jennifer B. Wieland |
| 8900 Ward Parkway | Berkowitz Oliver LLP |
| Kansas City, MO 64114 | 2600 Grand Blvd., Suite 1200 |
| jfranke@fsmlawfirm.com | Kansas City, MO 64108 |
| **Attorney for Defendant** | tschult@berkowitzoliver.com |
| **Trevor Pettibon** | jwieland@berkowitzoliver.com |
| | **Attorneys for Defendant Dorel** |
| | **Juvenile Group, Inc.** |

*/s/ Nick A. Brand*
**Attorney for Plaintiffs**

10

# IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

| | |
|---|---|
| LANE ALLMOND and MISTY ALLMOND | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )     **Case No.: 19VE-CV00084** |
| | ) |
| DOREL JUVENILE GROUP and TREVOR PETTIBON | ) |
| | ) |
| **Defendants.** | ) |

## CERTIFICATE OF SERVICE

I hereby certify that, on this 30th day of April, 2019, a true and correct copy of *Plaintiffs'*

*Answers to Defendant Dorel Juvenile Group's First Set of Interrogatories* and *Plaintiffs'*

*Responses to Defendant Dorel Juvenile Group's First Request for Production* were served via

U.S. Mail and email to the following counsel of record:

| | |
|---|---|
| John E. Franke | Thomas P. Schult |
| Franke Schultz & Mullen, P.C. | Jennifer B. Wieland |
| 8900 Ward Parkway | Berkowitz Oliver LLP |
| Kansas City, MO 64114 | 2600 Grand Blvd., Suite 1200 |
| jfranke@fsmlawfirm.com | Kansas City, MO 64108 |
| **Attorney for Defendant** | tschult@berkowitzoliver.com |
| **Trevor Pettibon** | jwieland@berkowitzoliver.com |
| | **Attorneys for Defendant Dorel** |
| | **Juvenile Group, Inc.** |

1

Respectfully submitted,

By:     */s/ Nick A. Brand*
        Chad C. Lucas          #50822
        Nick A. Brand          #63380
        Kuhlman & Lucas, LLC
        1100 Main Street, Suite 2550
        Kansas City, Missouri 64105
        Telephone: (816) 799-0330
        Facsimile: (816) 799-0336
        chad@kuhlmanlucas.com
        nick@kuhlmanlucas.com

        and

        Joseph R. Hillebrand    #43344
        Brown & Crouppen, P.C.
        211 N. Broadway, Suite 160
        St. Louis, Missouri 63102
        Telephone: (314) 222-2222
        Facsimile: (314) 421-0359
        joeh@getbc.com

        **Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2019, the foregoing document was filed with the Clerk of the Court using the Missouri eFiling System, which sent notice of such filing to all counsel of record.

                                        */s/ Nick A. Brand*
                                        **Attorney for Plaintiffs**

2

**IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI**

| | |
|---|---|
| LANE ALLMOND, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )  Case No.: 19VE-CV00084 |
| | ) |
| DOREL JUVENILE GROUP, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

The undersigned counsel for Defendant Dorel Juvenile Group, Inc. hereby certifies that on April 30, 2019, true and complete copies of:

- **Defendant Dorel Juvenile Group's, Inc.'s Answers to Plaintiffs' First Set of Interrogatories; and**

- **Defendant Dorel Juvenile Group's, Inc.'s Responses to Plaintiffs' First Set of Request for Production**

were served via electronic mail to the following counsel of record:

| | |
|---|---|
| Chad C. Lucas | John E. Franke |
| Nick A. Brand | Franke Shultz & Mullen, P.C. |
| Kuhlman & Lucas, LLC | 8900 Ward Parkway |
| 1100 Main Street, Suite 2550 | Kansas City, Missouri 64114 |
| Kansas City, Missouri 64105 | jfranke@fsmlawfirm.com |
| chad@kuhlmanlucas.com | |
| nick@kuhlmanlucas.com | **Attorneys for Defendant** |
| | **Trevor Pettibon** |
| **Attorneys for Plaintiffs** | |

Joseph R. Hillebrand
Brown & Crouppen, P.C.
211 N. Broadway, Suite 1600
St. Louis, Missouri 63102
joeh@getbc.com

**Attorneys for Plaintiffs**

Dated:  April 30, 2019                    Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By: _ /s/ Thomas P. Schult_____
  Thomas P. Schult, MO Bar #29986
  Jennifer B. Wieland, MO Bar #57271
  2600 Grand Boulevard, Suite 1200
  Kansas City, Missouri 64108
  Telephone:   (816) 561-7007
  Facsimile:    (816) 561-1888
  tschult@berkowitzoliver.com
  jwieland@berkowitzoliver.com

**Attorneys for Defendant Dorel Juvenile
Group, Inc.**

## CERTIFICATE OF ORIGINAL SIGNATURE AND SERVICE

   I certify that a copy of the Certificate of Service was electronically filed with the Court
this 30th day of April 2019, which will effectuate service on all attorneys of record.  In addition,
the undersigned certifies that he signed the original and will maintain it in compliance with Rule
55.03.

       _ /s/ Thomas P. Schult_____
       **Attorneys for Defendant Dorel Juvenile
       Group, Inc.**

2

## IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

LANE ALLMOND, et al.,                    )
                                         )
           Plaintiffs,          )
                                         )
           vs.                  )      Case No.: 19VE-CV00084
                                         )
DOREL JUVENILE GROUP, INC., et al.,      )
                                         )
           Defendants.          )

## SUGGESTIONS IN SUPPORT OF MOTION OF DOREL JUVENILE GROUP, INC. FOR THE ENTRY OF A PROTECTIVE ORDER AND OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF PROTECTIVE ORDER

These Suggestions are filed in support of Dorel Juvenile Group, Inc.'s ("DJG") Motion for Entry of a Protective Order.

## I.    INTRODUCTION

Both parties agree that entry of a protective order is appropriate to protect certain confidential and proprietary information that may be produced by DJG. The parties disagree, however, as to whether the protective order should contain a "sharing provision," allowing Plaintiffs to distribute DJG's documents and information with parties not involved in this litigation.

The broad sharing provision contained in Plaintiffs' proposed order is unacceptable to DJG. The sharing provision is unnecessary to resolve this lawsuit; undercuts future courts' abilities to oversee their own discovery; presents undue burdens for the Court in ensuring the confidentiality of documents; leaves Plaintiffs' counsel in charge of DJG's confidential information; and subjects DJG to a heightened risk that its competitors would obtain confidential and proprietary information. DJG further opposes the entry of Plaintiffs' proposed Protective Order because it improperly attempts to incorporate discovery requests into a Protective Order.

A.    **Background**

1.    **The Accident and the Lawsuit**

Plaintiffs' lawsuit arises from a June 8, 2018 vehicle accident on CRD 300 Road in Vernon County, Missouri.  Plaintiff Misty Allmond was driving a 2002 Jeep Liberty with Plaintiff Lane Allmond riding in the front passenger seat,  B.A.          seated in the rear driver-side position, and decedent   M.A.        seated in a Summit child restraint system in the rear center position. The Allmond vehicle collided with a Peterbilt truck driven by defendant Trevor Pettibon.

Plaintiffs filed this lawsuit against DJG and Trevor Pettibon on March 4, 2019.  Plaintiffs' claims against DJG sound in strict liability and negligence as to the design, manufacture, testing, warning, and sale of the Summit child restraint system.

2.    **Plaintiffs' Proposed Protective Order**

On April 30, 2019, DJG responded to Plaintiffs' written discovery requests and produced non-confidential documents, but objected to producing certain documents that contain confidential information before the Court enters a suitable protective order.  Specifically, DJG is prepared to produce additional documents that contain commercially sensitive, confidential, and trade secret information, with adequate assurance that this highly valuable commercial information will be safeguarded as required by Supreme Court Rule 56.01(c).

II.    **ARGUMENT**

A.    **Standard**

Rule 56.01 provides for the entry of protective orders:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(2) that the discovery may be had only on specified terms and conditions. . . .

2

Electronically Filed - Vernon - June 03, 2019 - 05:11 PM

Rule 56.01(c).[1]  "The trial judge has broad discretion to determine the appropriateness and terms of the protective orders for documents produced during discovery."  *State ex rel. Ford Motor Co. v. Manners,* 239 S.W.3d 583, 586 (Mo. banc 2007) (citing Rule 56.01(c)).

### B.    The Court Should Deny Plaintiffs' Motion for A Protective Order Because Plaintiffs Are Not Entitled to A Sharing Provision and Their Proposed Language Does Not Adequately Protect DJG's Confidential Documents

Plaintiffs' proposed sharing provision is broad, allowing counsel to share DJG's confidential documents with "counsel representing any party to have been injured in an accident involving a Dorel Safety 1st car seat and/or any of the components of the car seat which is the subject of this litigation."

The Court should deny Plaintiff's Motion for a Protective Order because the proposed sharing provision eviscerates the substance and effect of any protective order, compromises the protection to which confidential documents are entitled, inevitably leading to improper disclosures to attorneys who would not be entitled to certain documents under the laws of their own jurisdictions, and drives up litigation costs for the defendants with little corresponding benefit.

### 1.    The Missouri Supreme Court Has Signaled That Broad Sharing Provisions Are Improper

At the outset, the Court should note that there are no Missouri appellate cases approving sharing provisions in protective orders.  Rather, the leading Missouri case on the issue of sharing provisions, *State ex rel. Ford Motor Co. v. Manners,* 239 S.W.3d 583 (Mo. banc 2007), indicates that non-sharing provisions are proper.

---

[1]  Furthermore, Rule 56.01 is modeled after Federal Rule of Civil Procedure 26(c).  Accordingly, federal precedent is strong and persuasive authority regarding Rule 56.01(c) and protective orders. *State ex rel. Blue Cross and Blue Shield of Missouri v. Anderson*, 897 S.W.2d 167, 170 (Mo. App. 1995); *Stortz v. Seier*, 835 S.W.2d 540, 541 (Mo. App. 1992).

In *Ford Motor,* plaintiffs' and defendants' counsel agreed to a non-sharing provision during discovery. *Id.* at 584. After the case settled and was dismissed, the Circuit Court ruled that the non-sharing provision was no longer in effect. *Id.* at 586. But the Supreme Court reversed via writ of prohibition, finding that the defendant was entitled to continue relying on the protective provision. *Id.* at 588. Although the Supreme Court was not squarely presented with the issue here, its discussion of sharing provisions indicates that it would find broad sharing provisions, such as the one suggested by Plaintiffs, to be improper.[2]

Critically, the Court reasoned that discovery in a given case should be tailored to the needs of that case, not other pending or hypothetical cases. *Id.* at 588-89. "The discovery process is primarily designed to facilitate an orderly and efficient resolution of individual lawsuits, *not to provide a national database." Id.* at 589 (emphasis added).

---

[2] A majority of decisions in other jurisdictions also rejects sharing provisions like that sought be Plaintiffs. *See Seattle Times Co.* v. *Rhinehart,* 467 U.S. 20, 32 (1984) ("A litigant has no First Amendment right of access to information made available only for purposes of trying his suit."); *In re Remington Arms Co., Inc.,* 952 F.2d 1029, 1033 (8th Cir. 1991) ("[U]se of the discovered information should be limited to the particular lawsuit in which it has been shown to be both relevant and necessary to the prosecution of the case."); *Massachusetts v. Mylan Laboratories, Inc.,* 246 F.R.D. 87, 91 (D. Mass. 2007) (noting undue risk to defendants created by sharing provisions that otherwise "would do nothing to advance the present litigation"); *Blanchard & Co., Inc. v. Barrick Gold Corp.,* 02-3721, 2004 WL 737485, at *10 (E.D. La. Apr. 5, 2004) (quoting *Asch/Grossbardt, Inc. v. Asher Jewelry Co., Inc.,* 2003 WL 660833, at *2 (S.D. N.Y. February 28, 2003)) ("In summary, 'ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to outside attorneys and experts, particularly when there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party.'"); *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297 (Order clarified, 153 F.R.D. 614 (N.D. Ill. 1993)) (holding confidential information should not be subject to sharing order because sharing provision would raise risk that defendant's competitors could access confidential information, enforcement of protective order would be overly burdensome for defendant, and sharing provision could cause confusion in other cases with non-sharing provisions); *Sasu v. Yoshimura,* 147 F.R.D. 173, 176 (N.D. Ill. 1993) (citing *Seattle Times,* 467 U.S. at 32-34) ("[t]here is . . . no right to use pretrial discovery in one case for the prosecution of another case").

4

Plaintiffs' attempt to transform discovery in this case into a potential database for speculative future cases is contrary to the rationale in *Ford Motor*. Moreover, the Allmonds' interests are not jeopardized without a sharing provision. In fact, the Allmond family will not directly benefit from any sharing provision. They will have access to DJG's confidential documents regardless of whether their counsel can share them with collateral litigants. *Biazari v. DB Industries, LLC*, 2017 WL 1498122 *4 (W.D. Va. 2017) (finding sharing provision inappropriate, in part, where there was no benefit to Plaintiff who would receive documents regardless of existence of sharing provision).

On the other hand, a sharing provision disproportionately burdens and harms DJG's interests. For example, document sharing between parties and non-parties increases the burden on DJG to respond to discovery requests demanding disclosure or authentication of documents concerning products having absolutely no relevance to the product at issue. In fact, the problem has already arisen in this case. Perhaps acting on a "hot tip" from a fellow plaintiff's lawyer, or as a result of having viewed documents produced in another DJG lawsuit, counsel for the plaintiffs demanded all documents stemming from a 2015 case from the Eastern District of Texas. This problem will only get worse if opposing counsel are permitted to distribute DJG's property willy-nilly to anyone who claims an interest in prosecuting a claim concerning any "seat" "alleged" to have originated with DJG.

Second, sharing provisions also make it more difficult for DJG to protect its confidential information. DJG is a leading designer and manufacturer of juvenile products, including child restraint systems, in a highly competitive industry. Having spent considerable sums to develop its own products and to submit them to substantial internal testing, DJG has an important interest in ensuring that any disclosure of its confidential resources, both technical and financial, occurs under

carefully monitored circumstances. DJG protects this interest by insisting upon protective orders in all pending cases and by producing all documents with a bates-label unique to each case. Here, the Court's ability to protect DJG's interests in its property is limited by its geographic reach. Litigants and potential litigants in state courts across the country who are not parties to this action cannot seriously be expected to give the Orders of the Court any deference when it comes to proper usage and protection of DJG's confidential documents.

Accordingly, to the extent DJG properly designates certain documents as confidential, these documents should not be distributed to anyone who is not a party, an attorney for a party, an employee of an attorney for a party, or a representative of any insurance company who represents the interests of a party. Here, the Court should enter a protective order that does not contain a sharing provision. Then, third parties seeking access to documents produced in this case can request intervention and attempt to make an appropriate showing before the Court, rather than to deputize the attorneys for the Allmonds to propose "sharing" to other lawyers in other litigation. *See Massachusetts v. Mylan Laboratories, Inc.*, 246 F.R.D. 87, 91 (D. Mass. 2007) (describing alternative mechanisms for third-parties to seek access to documents and/or information through judicial proceedings); *Biazari v. DB Industries, LLC*, 2017 WL 1498122 *5 (W.D. Va. 2017) (same).

### C. The Court Should Not Allow Plaintiffs to Insert Discovery Requests into a Protective Order

In addition, Plaintiffs should not be allowed to include discovery requests in a Protective Order. *See generally* Missouri Sup. Ct. Rules 57.01, 58.01.

Despite the discovery procedures set out in the Missouri Supreme Court Rules, Paragraph 1, subparts a through e, of Plaintiffs' proposed Protective Order contains a list of documents that Plaintiffs believe DJG should produce. DJG has already answered Plaintiffs' discovery requests

6

and identified documents it believes are responsive to those requests. By including a list of documents that Plaintiffs believe they are entitled to receive, Plaintiffs are circumventing the discovery process and DJG's objections. If Plaintiffs have objections to DJG's discovery responses and/or documentary production, Plaintiffs may avail themselves of the mechanisms provided in Missouri Supreme Court Rule 61.01. Plaintiffs should not be allowed to provide a pre-emptive self-remedy by seeking to have the Court enter a Protective Order that calls for the disclosure of specific documents. Accordingly, the Court should deny Plaintiffs' Motion for a Protective Order on this ground also.

## III.   CONCLUSION

Entering a Protective Order with a sharing provision would increase the risk that DJG's competitors may access confidential information, increase the Court's burden in policing confidentiality designations, and give Plaintiffs' counsel control over DJG's confidential information. At the same time, a sharing provision is unnecessary to resolve this lawsuit and its absence in no way harms the Allmonds' interests. Plaintiff's proposed Protective Order also inappropriately includes discovery requests. For these reasons, DJG moves the Court to deny Plaintiffs' Motion and enter a Protective Order in the form attached as <u>Exhibit A</u>.

Dated:  June 3, 2019                          Respectfully submitted,

                                              **BERKOWITZ OLIVER LLP**

                                              By:  */s/ Thomas P. Schult*
                                                    Thomas P. Schult, MO Bar #29986
                                                    Jennifer B. Wieland, MO Bar #57271
                                                    2600 Grand Boulevard, Suite 1200
                                                    Kansas City, Missouri 64108
                                                    Telephone:   (816) 561-7007
                                                    Facsimile:    (816) 561-1888
                                                    tschult@berkowitzoliver.com
                                                    jwieland@berkowitzoliver.com

                                              **Attorneys for Defendant Dorel Juvenile
                                              Group, Inc.**


**CERTIFICATE OF ORIGINAL SIGNATURE AND SERVICE**

I certify that a copy of the Certificate of Service was electronically filed with the Court this 3rd day of June 2019, which will effectuate service on all attorneys of record.  In addition, the undersigned certifies that he signed the original and will maintain it in compliance with Rule 55.03.

                                                  */s/ Thomas P. Schult*
                                              **Attorney for Defendant Dorel Juvenile
                                              Group, Inc.**

# Exhibit A

Electronically Filed - Vernon - June 03, 2019 - 05:11 PM

Electronically Filed - Vernon - June 03, 2019 - 05:11 PM

**IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI**

| | | |
|---|---|---|
| LANE ALLMOND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 19VE-CV00084 |
| | ) | |
| DOREL JUVENILE GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

**STIPULATED PROTECTIVE ORDER**
**REGARDING CONFIDENTIAL DOCUMENTS**

---

NOW COME the parties, by and through their attorneys, and by agreement enter into the following protective order governing the confidentiality of documents produced by the parties during the above-captioned litigation:

IT IS HEREBY ORDERED:

1.      This Protective Order shall govern all documents, computer disks, information, and tangible materials which the parties shall designate as "confidential";

2.      The parties may specifically designate as "confidential" any documents, information, or materials of a proprietary, financial, or competitively sensitive nature, or which otherwise implicate any recognized privacy interest, by placing in a conspicuous location a stamp bearing the legend "confidential" or the like;

3.      Any party may also designate as confidential any portion of a deposition transcript of its agent or employee that it deems to include confidential information;

4.      No documents, information or materials designated as "confidential" by another party shall be furnished, shown, or otherwise disclosed to any person unaffiliated with the designating party except the following qualified persons: (1) counsel for the parties, their associate attorneys, paralegal assistants, and clerical employees assisting such counsel and employees; (2) essential employees of the parties with whom it is necessary to consult in connection with the prosecution of this cause; and (3) outside consultants and experts retained by the parties to consult and/or assist counsel in the preparation and trial of this action.  All documents, information, and materials that are designated as confidential shall be used solely for the preparation and trial of this action and for no other purpose;

5.      Before any third person who is not a party or counsel of record, including consultant and/or experts, receives or reviews documents, information, or materials designated as "confidential" by another party, he or she shall be provided with a copy of this Protective Order and shall agree in writing to be bound by its terms by executing a copy of the attached "Acknowledgment."  Executors of said Acknowledgment shall be vicariously responsible for any violation of this Protective Order effected by any person who has received or reviewed information from the executor that was designated by another party as "confidential," *and* who has not executed a copy of the attached "Acknowledgment."  Said Acknowledgment for any particular expert or consultant shall initially be held by counsel for the parties receiving confidential information and promptly released to counsel for the designating parties when such expert or consultant is disclosed, receives confidential information if he or she is already disclosed, or at the end of the case, whichever comes first.  Counsel for the respective parties shall also maintain a list of each and every person to whom they have disclosed material subject to this Protective Order, with such list available for production to the Court upon an appropriate

Order. An Acknowledgment shall not be required for counsel of record, counsel's employees, or any party, all of whose conduct is regulated directly by this Order;

6. All copies, reproductions, extracts, and summaries of documents, answers to interrogatories, responses to requests for admission, testimony and other materials and information, as well as briefs and other Court papers that quote or refer to confidential documents, information, or materials shall also be subject to the provisions of this Protective Order;

7. Whenever filed with the Court for any reason, all designated materials disclosed by any party shall be filed with the Court under seal and shall be kept under seal until further order of the Court. However, such designated materials shall continue to be available to the Court and to such persons who are permitted access to the same under this Protective Order. Where possible, only the confidential portions of filings with the Court shall be filed under seal;

8. Nothing contained in this Protective Order shall bar or restrict the parties' attorneys from rendering advice to their respective clients with respect to this litigation. This Protective Order shall not prevent the use of "confidential" documents, information, or materials at a deposition, so long as reasonable advance notice is given to the opposing party that the other party will or may use confidential materials, so that the documents, information, or materials shall be disclosed or displayed only upon the implementation of reasonable safeguards to preserve their confidentiality;

9. The inadvertent or unintentional disclosure of "confidential" information, produced after the effective date of this Protective Order, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality either as to specific information disclosed therein or on the same

or related subject matter, provided that the party asserting the claim of confidentiality informs the opposing party of its claim within a reasonable time after learning of the disclosure;

10.     Materials designated as "confidential" shall not be placed or deposited in any sort of data bank or otherwise be made available to indiscriminate or general circulation to lawyers, litigants, consultants, expert witnesses, or any other persons or entities.  This paragraph and the other provisions of this Protective Order shall not apply to materials which, if challenged by another party, the Court rules are not entitled to protection;

11.     All parties other than DJG, including their counsel, technical consultants, and/or experts shall not otherwise sell, offer, advertise, publicize, or provide under any condition, any information provided and designated as "confidential" by DJG, to any competitor of DJG;

12.     Within thirty (30) days of the conclusion of this case, defined as the latest of the completion of the trial and appeals, if any, in this action, or at the satisfaction of any judgment, or upon conclusion of any settlement, if any, the other parties agree to return all copies of "confidential" documents, information, or materials to the designating party.  Each party in receipt of designated documents shall deliver to the designating party an affidavit within thirty (30) days of the conclusion of this case certifying that all such confidential information and copies thereof, excerpts from and summaries of such information, have been returned to the party who produced such confidential information.  The parties shall further provide, within thirty (30) days of the conclusion of this case, affidavits from each testifying or consulting expert to which they have provided such information, certifying their compliance with this provision;

13.     If any party elects to challenge a designation of "confidential" made by the other party, the challenging party shall provide written notice to the designating party within thirty (30) days of receipt of the document(s) in question.  The notice shall specify the documents,

information, or materials for which the designation is challenged, and the basis for the challenge. Thereafter, the provisions of the agreement shall apply to such materials for a period of sixty (60) days only, and shall expire unless the producing party files a motion for protective order from the court prior to such time. In the event such motion is filed, the terms of this Protective Order shall remain in place as to such documents, information, and materials until the Court rules upon the motion;

14.     All materials designated as confidential shall be treated as such pursuant to the terms of this Protective Order until further order of this Court. Such a designation raises no presumption that the information or documents are entitled under the law to protection;

15.     The determination of how any material designated as "confidential" shall be used at the trial of this case, if any, is not made at this time. Rather, any such determination will be made prior to trial;

16.     The terms of this Protective Order shall become effective when it is mutually executed by the respective attorneys for the parties and shall survive and remain in full force and effect after conclusion of this cause of action.

The following representatives agree to this Protective Order.


By: _____          By: _____
        Attorneys for Plaintiffs                                 Attorneys for Defendants



Dated: _____                           _____
                                                                        Hon.

# IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

LANE ALLMOND, et al.,                    )
                                         )
                  Plaintiffs,            )
                                         )
         vs.                             )          Case No.: 19VE-CV00084
                                         )
DOREL JUVENILE GROUP, INC., et al.,      )
                                         )
                  Defendants.            )

## ACKNOWLEDGMENT

I, _____, hereby acknowledge that I have read the Protective

Order entered on _____, in connection with the above-captioned

complaint, and that I am familiar with its terms.

The undersigned further acknowledges that he or she fully understands the provisions of the

Protective Order, agrees to be bound by those provisions, consents to the jurisdiction of the above-

referenced Court over his or her person, and has been apprised of the penalties attendant upon a

violation of any of said provisions, including the possibility of penalties being imposed as a result

of being held in contempt of court for violating the Protective Order, and any other damages

causally related to said violation.


Dated: _____          _____

**IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI**

| | |
|---|---|
| LANE ALLMOND, et al., )| |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No.: 19VE-CV00084 |
| ) | |
| DOREL JUVENILE GROUP, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MOTION OF DOREL JUVENILE GROUP, INC.
FOR THE ENTRY OF A PROTECTIVE ORDER AND OPPOSITION TO
PLAINTIFFS' MOTION FOR ENTRY OF PROTECTIVE ORDER**

COMES NOW defendant Dorel Juvenile Group, Inc. ("DJG") and, pursuant to Missouri Rule of Civil Procedure 56.01, moves this Court for the entry of a Protective Order.

Plaintiffs' proposed Protective Order is unacceptable to DJG because it contains a document redistribution provision (charitably described as "sharing") that is not necessary for the efficient handling of the case, but does have the potential to damage DJG's competitive interests, and is not favored under Missouri law.

Plaintiffs do not need to share DJG's confidential documents with other parties from other cases in order to prepare their own case for trial. On the other hand, DJG is disproportionately burdened and harmed if such redistribution occurs because DJG has to deal with the expense and confusion of the wrong product's documents showing up in some other case, and because sharing provisions make it more difficult for DJG to protect its confidential information. The Missouri Supreme Court has also signaled that *non-sharing* provisions are proper because discovery should be tailored to the specific case at-issue, and "not to provide a national database" of information and documents. *See State ex rel. Ford Motor Co. v. Manners,* 239 S.W.3d 583, 589 (Mo. banc 2007).

Furthermore, Plaintiffs' Protective Order improperly attempts to incorporate discovery requests into a Protective Order.

For these reasons and those stated at greater length in the Suggestions in Support of Motion filed contemporaneously by DJG, Defendant moves the Court to deny Plaintiffs' Motion and grant Defendant's Motion for Protective Order.

Dated:  June 3, 2019                    Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By:  */s/ Thomas P. Schult*
      Thomas P. Schult, MO Bar #29986
      Jennifer B. Wieland, MO Bar #57271
      2600 Grand Boulevard, Suite 1200
      Kansas City, Missouri 64108
      Telephone:  (816) 561-7007
      Facsimile:   (816) 561-1888
      tschult@berkowitzoliver.com
      jwieland@berkowitzoliver.com

**Attorneys for Defendant Dorel Juvenile Group, Inc.**

## CERTIFICATE OF ORIGINAL SIGNATURE AND SERVICE

I certify that a copy of the Certificate of Service was electronically filed with the Court this 3rd day of June 2019, which will effectuate service on all attorneys of record.  In addition, the undersigned certifies that he signed the original and will maintain it in compliance with Rule 55.03.

      */s/ Thomas P. Schult*
      **Attorney for Defendant Dorel Juvenile Group, Inc.**

2

**IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI**

| | | |
|---|---|---|
| LANE ALLMOND and MISTY ALLMOND | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 19VE-CV00084 |
| | ) | |
| DOREL JUVENILE GROUP and TREVOR PETTIBON | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO MOTION OF DOREL JUVENILE GROUP, INC. FOR THE ENTRY OF A PROTECTIVE ORDER AND OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF A PROTECTIVE ORDER

Come now plaintiffs by and through their attorneys of record, and for their Response to Motion of Dorel Juvenile Group, Inc. for the Entry of a Protective Order and Opposition to Plaintiff's Motion for Entry of a Protective Order states as follows:

### I.    Background and Procedural History

On April 23, 2019, plaintiffs filed their Motion for Protective Order. After discussion with Defendant's counsel, it was determined briefing would be necessary on certain issues. The Court agreed to a briefing schedule on May 23, 2019 permitting Defendant to file its briefing by June 3, 2019 and Plaintiff to file any responsive briefing by July 3, 2019. Defendant filed its *Motion of Dorel Juvenile Group, Inc. for the Entry of a Protective Order and Opposition to Plaintiffs' Motion for Entry of a Protective Order* on June 3, 2019, attaching a proposed protective order. Plaintiffs reviewed this proposed protective order and agree to abandon the initial proposed protective order and to work off Defendant's template. On June 17, 2019, plaintiffs provided their proposed

revisions to this protective order to Defendant with the changes tracked.

## II.     Arguments and Authority

### a.  Disclosure to non-competitor third parties

*Sharing confidential documents with counsel for other similarly situated plaintiffs is necessary for the equitable proceeding of discovery and is done at no risk to Defendant.*

### b.  The conclusion of litigation

*The requesting party must be permitted to retain the documents at the conclusion of litigation as these documents are part of plaintiffs' file, and the work product of plaintiffs' counsel.*

As stated above, plaintiffs have agreed to work off Defendant's protective order template and have provided their tracked revisions to Defendant. The proposed protective order submitted herewith is based upon Defendant's template with certain changes made by plaintiffs. Plaintiffs believe the sharing of documents with attorneys outside this litigation alleging their clients have been injured/killed by the Dorel Safety 1st child seat is necessary to protect the interests of those injured by this product. Further, it appears plaintiffs and Defendant have a dispute as to the handling of documents at the conclusion of litigation. Each will be discussed in turn.

### a.  Disclosures to non-competitor third parties

The first dispute which could not be resolved is the breadth with which dissemination of confidential documents is permitted under the protective order. Defendant would like to limit the dissemination of documents solely to participants in this litigation. Plaintiffs are seeking language permitting dissemination of documents to those attorneys who also represent parties who allege injuries or death due to the Dorel Safety 1st child seat.

The universe of documents in any case regarding allegations of a dangerous product is

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

always going to governed by the manufacturer/designer of said product, in this case, Defendant. Prohibiting sharing between counsel representing similarly situated plaintiffs allows Defendant, and Defendant only, to know the identity of documents in its possession and which documents may be responsive to discovery. This promotes the use of objections and obfuscation in discovery to keep documents secret, and unnecessarily complicates discovery by limiting plaintiffs' ability to identify documents with specificity. It also leads to additional unnecessary discovery disputes and forces similarly situated plaintiffs to litigate completely different cases based upon the documents produced to them without knowledge of what has been provided to other similarly situated plaintiffs. Because Defendant necessarily controls the universe of documents, certain measures are necessary to ensure plaintiffs in substantially similar cases receive a fair shake in discovery. One such measure to protect against this inequity is to permit sharing between counsel for these similarly situated plaintiffs injured by the product. This allows plaintiffs to stand on equal footing with the manufacturer/designer as plaintiffs will have equal knowledge regarding the documents. It is without a doubt that if Defendant hires different counsel in various jurisdictions where they are involved in litigation each is provided access to the documents, and there is no viable explanation as to why those damaged by Defendant's product should not be given the same fair treatment. "Shared discovery is an effective means to insure full and fair disclosure. Parties subject to a number of suits concerning the same subject matter are forced to be consistent in their responses by the knowledge that their opponents can compare responses…In addition to making discovery more truthful, shared discovery makes the system itself more efficient." *Raymond Handling Concepts, Corp. v. Superior Court*, 39 Cal. App. 4th 584, 588 (1995)

[*internal citations omitted*][1].   A sharing provision with counsel representing plaintiffs damaged by the same product not only makes sense, but it is supported by Missouri Courts and the only equitable way to conduct discovery in cases regarding mass manufactured products.

Defendant would have this Court believe there is some substantial risk that these documents will be simply sent out into the world with no protections if this sharing provision is adopted by this Court.  This is a red herring and not a viable concern for a couple of reasons.  First, the concern expressed ignores the plain language of the proposed protective order which specifically limits to whom the documents may be disseminated outside of the current litigation.  Essentially, Defendant is stating its concern plaintiffs' counsel will disregard the plain language of the protective order and send the documents to whomever they please rather than limiting dissemination only to those who are specifically laid out in the protective order.  This simply is without any basis and is not a realistic concern. Further, *if* it were somehow a realistic concern, it is not a concern which would be cured with stricter sharing language, so the proposed solution doesn't even solve the manufactured problem.  Second, the protective order proposed by plaintiffs strictly limits sharing to Officers of the Court who would be subject to the same protective order as entered in the current litigation.  Again, the hypothetical concern of an officer of the Court disseminating documents in violation of a Court Order is highly speculative and not a viable concern.  There is virtually no risk of Defendant's competitors getting Defendant's proprietary and confidential information through a sharing provision permitting sharing with counsel for other

---

[1] Numerous Missouri Courts have entered sharing protective orders.  *See Gilliam et al. v. General Motors Corporation, et al.,* Circuit Court of Johnson County, attached hereto as *Exhibit B; Wilson v. DaimlerChrysler Corporation, et al.,* Circuit Court of Jefferson County, attached hereto as *Exhibit C; McNeely et al. v. Ford Motor Company et al.,* Circuit Court of Greene County, attached hereto as *Exhibit D; Phelps v. Ford Motor Company, et al.,* Circuit Court of Jefferson County, attached hereto as *Exhibit E; Arbuckle v. Ford Motor Company, et al.,* Circuit Court of Jackson County at Independence, attached hereto as *Exhibit F; Hachinsky, et al. v. Ford Motor Company, et al.*, Circuit Court of Jackson County at Independence, attached hereto as *Exhibit G,* and *Nunez v. Johnny Londoff Chevrolet Inc., et al.,* Circuit Court of St. Louis County, attached hereto as *Exhibit H.*

similarly situated plaintiffs. The much bigger risk to Defendant's proprietary and confidential information becoming public is trying cases in a public courtroom, like it did regarding this specific product in *Hinson v. Dorel Juvenile Group, Inc.* Finally, if there is any "heightened risk" as claimed by Defendant, it is far outweighed by the benefits of a sharing provision as laid out more completely above. Because there is no viable concern regarding Defendant's competitors receiving its confidential and proprietary information, the Court should adopt plaintiffs' sharing provision in the protective order.

Another stance taken by Defendant is each plaintiff damaged by Defendant's product should be forced to start at square one of discovery when that process has already taken place in litigation elsewhere. This is inequitable as Defendant is certainly not starting at square one with regards to the documents in its possession. This is an inefficient use of time and resources in forcing plaintiffs all over the country to relitigate discovery issues regarding documents which have already been produced in other cases elsewhere around the nation. Conducting discovery in this fashion permits plaintiff A in Texas get different documents related to the same product than plaintiff B in Missouri. For that matter, it permits plaintiff C in one Missouri Court to receive different documents from plaintiff D in a different Missouri Court. This doesn't make any sense and is an inequitable way to conduct discovery. It is also contrary to Missouri law: "The Court agrees that discovery should be conducted in the most practical and cost efficient way possible." *State ex rel. Ford Motor Co. v. Manners*, 239 S.W.3d 583, 588 (Mo.banc 2007). Plaintiffs who have been damaged by the product at issue should be permitted to share documents with other similarly situated plaintiffs to prevent these types of inequities from occurring in litigation.

Beyond this, there is no law supporting such a restrictive protective order, as that suggested by Defendant. The protective order in this case is sought pursuant to *Missouri Supreme Court*

*Rule 56.01(c)(7)* which permits a protective order over trade secrets and research and development. The purpose of this type of protective order is to protect Defendant's trade secrets from discovery by its business competitors. It is not to protect Defendant from other litigants, to prevent other litigants from learning what responsive documents Defendant possesses, or to allow it protection from disclosing damaging documents in litigation.

Defendant relies heavily on *State ex rel. Ford Motor Co. v. Manners*, in support of its conclusion that a sharing provision should not be permitted; however, this case is not on point, nor is it instructive on this issue.[2] 239 S.W.3d 583 (Mo.banc 2007). In fact, in *Manners*, the Court adopted a sharing protective order which permitted dissemination of documents to other similarly situated plaintiffs, as well as a non-sharing protective order. *Id.* at 584. The entire discussion of *Manners* has nothing to do with the viability of a sharing protective order versus a non-sharing protective order, but instead the vacation of a protective order after documents had been produced subject to the same. In *Manners,* the Court entered a non-sharing protective order and Ford produced documents subject to the protective order. Upon settlement of the case the Court vacated the non-sharing protective order and ordered the documents produced pursuant to the same now subject to the broader sharing protective order. *Id.* at 585. Ultimately the Court held it was an abuse of discretion to vacate a protective order after a party had produced documents in reliance upon said protective order. *Id.* at 588. This holding has no bearing on the issues before the Court with this protective order and should be disregarded. As such, the Defendant should not be permitted to limit the use of these documents to this litigation, only, and the Court should adopt

---

[2] "Although the Supreme Court was not squarely presented with the issue here…" *See Suggestions in Support of Motion of Dorel Juvenile Group, Inc. for the Entry of a Protective Order and Opposition to Plaintiffs' Motion for Entry of a Protective Order* at pp. 4.

the sharing provision contained in plaintiffs' proposed protective order, attached hereto as *Exhibit A*.

Finally, Defendant argues a sharing provision will not benefit plaintiffs in this case in any way; however, this simply is not the case. Plaintiffs' counsel will benefit greatly from cooperative discovery efforts with other similarly situated litigants as this will ensure full and complete discovery from Defendant. Further, a sharing provision such as this permits plaintiffs' counsel to discuss data, diagrams and technical information regarding the product at issue with other attorneys handling similar cases which is invaluable in pursuing plaintiffs' claims in this matter. It is clear plaintiffs will receive significant benefit from having a sharing provision within the protective order, and as such, plaintiffs ask this Court to adopt the proposed sharing language as laid out in plaintiffs' proposed protective order, attached hereto as *Exhibit A*.

As such, and for the reasons set forth above, plaintiffs hereby move this Court to enter its proposed protective order, attached hereto as *Exhibit A*.

**b. The conclusion of litigation**

One other difference between Defendant's proposed protective order and plaintiffs' is the disposition of document at the conclusion of litigation. Defendant insists that at the conclusion of this litigation all confidential material must be returned within 30 days. Plaintiff has proposed language stating explicitly that the conclusion of litigation does not terminate the protective order, and all documents protected prior to the conclusion of litigation would remain protected in the same fashion as during litigation. Again, this is an attempt by Defendant to control the universe of documents for any future litigation related to their dangerous product. Further, many of the documents which the Defendant would demand be returned would be the Plaintiff's work product and are protected from being returned to the Defendant at the conclusion of litigation. Plaintiff's

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

proposed language protects the Defendant's interests in keeping the documents secret from its competitors by providing the protections of the protective order. Return is unnecessary, and unjustifiable.

As such, plaintiffs hereby move this Court to enter its proposed protective order, attached hereto as *Exhibit A*.

---

## III. Conclusion

---

WHEREFORE, plaintiffs hereby move this Court to enter plaintiffs' proposed protective order, attached hereto as *Exhibit A*, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: */s/ Nick A. Brand*
Chad C. Lucas        #50822
Nick A. Brand        #63380
Kuhlman & Lucas, LLC
1100 Main Street, Suite 2550
Kansas City, Missouri 64105
Telephone: (816) 799-0330
Facsimile: (816) 799-0336
chad@kuhlmanlucas.com
nick@kuhlmanlucas.com

and

Joseph R. Hillebrand    #43344
Brown & Crouppen, P.C.
211 N. Broadway, Suite 160
St. Louis, Missouri 63102
Telephone: (314) 222-2222
Facsimile: (314) 421-0359
joeh@getbc.com

**Attorneys for Plaintiffs**

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of June, 2019, the foregoing document was filed with the Clerk of the Court using the Missouri eFiling System, which sent notice of such filing to all counsel of record.

/s/ Nick A. Brand
**Attorney for Plaintiffs**

# EXHIBIT
## A

## IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

| | | |
|---|---|---|
| **LANE ALLMOND and MISTY ALLMOND** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 19VE-CV00084** |
| | ) | |
| **DOREL JUVENILE GROUP and TREVOR PETTIBON** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### STIPULATED PROTECTIVE ORDER
### <u>REGARDING CONFIDENTIAL DOCUMENTS</u>

---

NOW COME the parties, by and through their attorneys, and by agreement enter into the following protective order governing the confidentiality of documents produced by the parties during the above-captioned litigation:

IT IS HEREBY ORDERED:

1.      This Protective Order shall govern all documents, computer disks, information, and tangible materials which the parties shall designate as "confidential";

2.      The parties may specifically designate as "confidential" any documents, information, or materials of a proprietary, financial, or competitively sensitive nature, or which otherwise implicate any recognized privacy interest, by placing in a conspicuous location a stamp bearing the legend "confidential" or the like;

3.      Any party may also designate as confidential any portion of a deposition transcript of its agent or employee that it deems to include confidential information;

4.      No documents, information or materials designated as "confidential" by another party shall be furnished, shown, or otherwise disclosed to any person unaffiliated with the designating party except the following qualified persons: (1) counsel for the parties, their associate attorneys, paralegal assistants, and clerical employees assisting such counsel and employees; (2) essential employees of the parties with whom it is necessary to consult in connection with the prosecution of this cause; (3) outside consultants and experts retained by the parties to consult and/or assist counsel in the preparation and trial of this action; and (4) counsel representing any party alleged to have been injured in an accident involving a Dorel Safety 1st car seat and/or any of the components of the car seat which are the subject of this litigation.  Such disclosure may be made only after the counsel receiving the "confidential" material agrees in writing to be bound by the provisions of this agreement and order.  ;

5.      Before any third person who is not a party or counsel of record, including consultant and/or experts, receives or reviews documents, information, or materials designated as "confidential" by another party, he or she shall be provided with a copy of this Protective Order and shall agree in writing to be bound by its terms by executing a copy of the attached "Acknowledgment."  Executors of said Acknowledgment shall be vicariously responsible for any violation of this Protective Order effected by any person who has received or reviewed information from the executor that was designated by another party as "confidential," *and* who has not executed a copy of the attached "Acknowledgment."   Said Acknowledgment for any particular expert or consultant shall initially be held by counsel for the parties receiving confidential information and promptly released to counsel for the designating parties if requested. Counsel for the respective parties shall also maintain a list of each and every person to whom they have disclosed material subject to this Protective Order, with such list available for

production to the Court upon an appropriate Order. An Acknowledgment shall not be required for counsel of record, counsel's employees, or any party, all of whose conduct is regulated directly by this Order;

6.     All copies, reproductions, extracts, and summaries of documents, answers to interrogatories, responses to requests for admission, testimony and other materials and information, as well as briefs and other Court papers that quote or refer to confidential documents, information, or materials shall also be subject to the provisions of this Protective Order;

7.     Whenever filed with the Court for any reason, all designated materials disclosed by any party shall be filed with the Court under seal and shall be kept under seal until further order of the Court. However, such designated materials shall continue to be available to the Court and to such persons who are permitted access to the same under this Protective Order. Where possible, only the confidential portions of filings with the Court shall be filed under seal;

8.     Nothing contained in this Protective Order shall bar or restrict the parties' attorneys from rendering advice to their respective clients with respect to this litigation. This Protective Order shall not prevent the use of "confidential" documents, information, or materials at a deposition, so long as reasonable advance notice is given to the opposing party that the other party will or may use confidential materials, so that the documents, information, or materials shall be disclosed or displayed only upon the implementation of reasonable safeguards to preserve their confidentiality;

9.     The inadvertent or unintentional disclosure of "confidential" information, produced after the effective date of this Protective Order, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a

party's claim of confidentiality either as to specific information disclosed therein or on the same or related subject matter, provided that the party asserting the claim of confidentiality informs the opposing party of its claim within a reasonable time after learning of the disclosure;

10.     Materials designated as "confidential" shall not be placed or deposited in any sort of data bank or otherwise be made available to indiscriminate or general circulation to lawyers, litigants, consultants, expert witnesses, or any other persons or entities.  This paragraph and the other provisions of this Protective Order shall not apply to materials which, if challenged by another party, the Court rules are not entitled to protection;

11.     All parties other than DJG, including their counsel, technical consultants, and/or experts shall not otherwise sell, offer, advertise, publicize, or provide under any condition, any information provided and designated as "confidential" by DJG, to any competitor of DJG;

12.     The conclusion of this litigation does not terminate this Protective Order, and the documents protected by the same will remain subject to this Protective Order upon the conclusion of this litigation.

13.     If any party elects to challenge a designation of "confidential" made by the other party, the challenging party shall provide written notice to the designating party.  The notice shall specify the documents, information, or materials for which the designation is challenged, and the basis for the challenge.  Thereafter, the provisions of the agreement shall apply to such materials for a period of thirty (30) days only and shall expire unless the producing party files a motion for protective order from the court prior to such time.  In the event such motion is filed, the terms of this Protective Order shall remain in place as to such documents, information, and materials until the Court rules upon the motion;

14.     All materials designated as confidential shall be treated as such pursuant to the terms of this Protective Order until further order of this Court.  Such a designation raises no presumption that the information or documents are entitled under the law to protection;

15.     The determination of how any material designated as "confidential" shall be used at the trial of this case, if any, is not made at this time.  Rather, any such determination will be made prior to trial;

16.     The terms of this Protective Order shall become effective when it is mutually executed by the respective attorneys for the parties and shall survive and remain in full force and effect after conclusion of this cause of action.

The following representatives agree to this Protective Order.


By: _____          By: _____
Attorneys for Plaintiffs                          Attorneys for Defendants



Dated: _____                       _____
                                                              Hon.

**IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI**

| | | |
|---|---|---|
| LANE ALLMOND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 19VE-CV00084 |
| | ) | |
| DOREL JUVENILE GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ACKNOWLEDGMENT**

I, _____, hereby acknowledge that I have read the Protective Order entered on _____, in connection with the above-captioned complaint, and that I am familiar with its terms.

The undersigned further acknowledges that he or she fully understands the provisions of the Protective Order, agrees to be bound by those provisions, consents to the jurisdiction of the above-referenced Court over his or her person, and has been apprised of the penalties attendant upon a violation of any of said provisions, including the possibility of penalties being imposed as a result of being held in contempt of court for violating the Protective Order, and any other damages causally related to said violation.

_____

Dated: _____

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

**EXHIBIT**

B

## IN THE CIRCUIT COURT OF JOHNSON COUNTY, MISSOURI

JEFFREY GILLIAM and CHERYL )
GILLIAM Individually AND MATTILYN )
LEE GILLIAM by and through her Next )
Friend CARRIE ALLEE )

)
Plaintiffs, )

)
v. )

)
GENERAL MOTORS CORPORATION )
ROYAL VENTURE, INC., LAWRENCE )
EDELMAN, Inmate # 1096702 AND )
ROBERT EDELMAN, Inmate # 1081136 )

)
Defendants.

FEB 0 7 2007

STEPHANIE ELKINS
Clerk - Circuit Court
Case No. 05JO-CV00101

DYKEMA GOSSETT• A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243-1668

## PROTECTIVE ORDER OF CONFIDENTIALITY

The Court having considered the oral and written arguments of the parties, and for good

cause shown:

It is hereby ORDERED, ADJUDGED, and DECREED that the documents and other

information, including the substance and content thereof, designated by General Motors

Corporation ("GM") as confidential or proprietary and produced by GM in response to any

formal or informal request for discovery in this litigation shall be subject to the terms of this

Protective Order as set out below:

It is further ORDERED, ADJUDGED, and DECREED:

1.     For the purpose of this Protective Order, "confidential information" means those

documents and written responses provided by GM in response to any formal or informal

discovery requests to Plaintiff that are designated after a good faith determination as confidential

Case 3:19-cv-05058-RK   Document 1-2   Filed 08/07/19   Page 127 of 177

by GM by so indicating on the face of the writing with language reading "PRODUCED PURSUANT TO PROTECTIVE ORDER" or "GM CONFIDENTIAL."

2.    GM shall take reasonable steps to insure that the markings of any document as protected will not obscure or obstruct any information on said documents, preserving the legibility of all such documents to the extent possible.

3.    GM and its attorneys understand that in marking such documents or other tangible evidence that GM is certifying to the Court that the information is proprietary to GM's business interest, or is a trade secret, and is not an attempt to prevent injured persons or their attorneys from obtaining information that may assist them in litigation. In the event Plaintiff challenges the designation of any document by way of a motion with the Court, the burden of proof for a showing of confidentiality shall be made in accordance with Missouri law.

· 4.    Except as set out below, neither Plaintiff nor attorneys for GM shall divulge or otherwise disclose the substance or existence of the documents or other information designated as confidential information or any copies, prints, negatives, or summaries thereof, to any entity or person with the exception of employees of counsel, the experts and consultants employed by Plaintiff and her attorneys in connection with and preparation for the trial of this action, and parties and/or their counsel involved in pending or anticipated claims that are under investigation against General Motors Corporation in which it has been or will be alleged that there is a defect in the fuel storage system in General Motors C/K light duty pickup trucks with their fuel storage systems located outside the frame rail of the vehicle, between the body and the frame. Before any such confidential information, or substance or summary thereof, shall be disclosed to experts and consultants retained by Plaintiff or to employees of Plaintiff's attorneys for the purpose of this lawsuit, Plaintiff's attorneys are hereby ORDERED to tender a copy of this Protective Order

2

to each such person or entity in order that each such person or entity to whom disclosure of confidential information is made shall be on notice and fully informed that the contents and substance of this Protective Order are, and are intended by be, equally binding upon it, him, or her, as well as upon counsel. Each expert and consultant employed by counsel in connection with the preparation and trial of this action to whom confidential information will be disseminated will be required, prior to any such dissemination, to receive and read a copy of this Protective Order and to agree to be bound by the terms of this Protective Order and to be personally subject to the jurisdiction of this Court.

5. All confidential information in any pleading, motion, or other papers filed with the Court disclosing any such confidential information shall be filed under seal and shall be kept under seal until further order of the Court; however, said information shall continue to be available to the Court and to such persons permitted access to such information under this Protective Order. Where possible, only the confidential portions of the filings with the Court shall be filed under seal.

6. Nothing under this Protective Order shall be deemed a waiver of Plaintiff's right (a) to oppose any motion by GM for protective order; or (b) to oppose any objection by GM to the production of information, materials, or documents in response to requests for discovery in this litigation.

7. Nothing in this Protective Order shall be deemed a waiver of GM's right (a) to oppose discovery on grounds other than that the documents and information sought constitute or contain confidential information; or (b) to object on any ground to the admission in evidence, at trial of this action, of any confidential information.

3

8.     Nothing in this Protective Order shall be deemed an admission on the part of GM

as to the relevancy or admissibility of any confidential information.

9.     All materials designated as confidential information shall be treated as

confidential pursuant to the terms of this Protective Order until further order of the Court.

CIRCUIT COURT JUDGE

REVIEWED AND AGREED TO BY:

J. Kent Emison, Esq.
George E. Chronic, II, Esq.
Langdon & Emison
911 Main St.
P.O. Box 220
Lexington, MO  64067

James D. Griffin, Esq.
Stephen J. Torline, Esq.
Blackwell Sanders Peper Martin
4801 Main St., Suite 1000
Kansas City, MO  64112

DET01\529898.2
ID\KRD

4

EXHIBIT

C

## IN THE CIRCUIT COURT OF THE 23RD JUDICIAL CIRCUIT
## OF MISSOURI AT HILLSBORO, JEFFERSON COUNTY, MISSOURI

DINAH WILSON,                                    )
                                                 )
         Plaintiff,                              )
                                                 )    Case No. 06JE-CC0324
v.                                               )    Div. 4
                                                 )
DAIMLERCHRYSLER CORPORATION,                     )
THE BRAUN CORPORATION,                           )
MICHELIN NORTH AMERICA, INC.,                    )
MICHELIN AMERICAS RESEARCH AND                   )
DEVELOPMENT CORPORATION, KING                    )
DODGE, INC., AND CENTRAL STATES                  )
BUS SALES, INC.,                                 )
                                                 )
         Defendants.                             )

### STIPULATED PROTECTIVE ORDER

In order to preserve and maintain the confidentiality of certain

information, documents and tangible things to be identified and produced in this case by

defendant DaimlerChrysler Motor Company ("DaimlerChrysler"), with the agreement of

the parties, the Court enters this Stipulated Protective Order.

1.      Documents and materials to be produced by DaimlerChrysler in this

litigation that DaimlerChrysler contends constitute, contain or depict trade secrets or

other confidential research, development or commercial information as contemplated by

Mo. R. Civ. P. 56.01(c)(7) shall hereafter be designated as "Protected Documents".

DaimlerChrysler shall designate materials as Protected Documents by stamping or

labeling such documents and materials in a manner that does not cover or otherwise

obscure any of the content of such materials (e.g., documents shall be stamped or labeled

at the top or bottom of the page whenever possible, but not over the text). When used in

this Order, the word "documents" means all written material, video tapes and all other

tangible items whether produced as hard copy, computer diskette, CD-ROM or otherwise. Except as otherwise indicated in this Order, documents designated by DaimlerChrysler as Protected Documents shall be given confidential treatment as set forth below. DaimlerChrysler will visibly mark all confidential material "Subject to Protective Order of Confidential Information" or equivalent language.

2.    The burden of proving that a Protected Document contains proprietary, confidential or technical information is on DaimlerChrysler. Prior to designating any material as a Protected Document, DaimlerChrysler must make a bona fide determination that the material is, in fact, a trade secret or other confidential research, development or commercial information as contemplated Mo. R. Civ. P. 56.01(c)(7), the dissemination of which would damage DaimlerChrysler's competitive position. If a party disagrees with the "confidential" designation of any document, the party will notify DaimlerChrysler in writing. Any such challenge must be made no later than thirty (30) days after the party receives the materials in question. Within ten (10) days of any such written notice, the parties shall meet and confer in person or by telephone about the challenge and attempt to informally resolve the challenge, no later than 30 days after the parties meet and confer, DaimlerChrysler shall file a Motion for Protective Order pursuant to Mo. R. Civ. P. 56.01(c)(7) for the purpose of determining whether the challenged documents are entitled to the protection of this Order. Any document designated as a Protected Document shall remain protected by this Order pending Court determination as to its confidential status. If DaimlerChrysler does not file a motion within 30 days after the parties meet and confer, the documents at issue shall be deemed not subject to this Order.

3. Both the Protected Documents and the information contained therein shall be treated as confidential. Except upon the prior written consent of the parties or upon further Order of this Court or the Discovery Commissioner, the Protected Documents or information contained therein may be shown, disseminated or disclosed only to the following persons:

a. Plaintiff and defendants' counsel of record in this case, including other members and employees of counsels' law firm and any other counsel of record associated to assist and who participate in the preparation or trial of this case;

b. Experts and non-attorney consultants retained by the parties for the preparation or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of DaimlerChrysler;

c. The Court (including Discovery Commissioner), the Court's staff, witnesses and the jury in this case; and

d. Unless otherwise ordered by the trial Court or the Discovery Commissioner, attorneys representing plaintiff and the experts and consultants retained by the plaintiff in other cases pending against DaimlerChrysler involving DaimlerChrysler Vans, in which occupant restraints, roof strength, roof crush or stability are at issue, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of DaimlerChrysler.

4. Before giving access to any of the Protected Documents or the information contained therein, each person described in paragraph 3(b) or 3(d) above shall be advised of the terms of this Order, shall be given a copy of this Order, and shall agree in writing, in the form attached hereto as "Exhibit A", to be bound by its terms and to submit to the jurisdiction of this Court. All signed copies of Exhibit A shall be provided to DaimlerChrysler when this case is resolved (except that names and identifying information of undisclosed experts or consultants may be redacted). Prior to resolution of this case, DaimlerChrysler may file a motion based on a good faith belief that this Order

has been violated (or in jeopardy of being violated) seeking a judicial determination whether particular individuals are within the categories of person authorized to receive copies of the Protected Documents and have or have not executed appropriate copies of the "Exhibit A" reflecting the conditions imposed for receiving access to Protected Documents.

5. All persons described in paragraph 3 above shall not under any circumstances sell, offer for sale, advertise, or publicize either the Confidential Information or the fact that such persons have obtained DaimlerChrysler's Confidential Information.

6. The inadvertent production of Confidential Information in the course of discovery in this action of any document or information (whether designated as Confidential or not) shall not be deemed to waive whatever privilege that would otherwise attach to the document or information produced or to other documents or information, as long as the producing party promptly, after discovery of the inadvertent production, notifies the other party or parties of the claim of privilege or other protection or immunity. Upon such notice, to the other party or parties shall return the inadvertent production under seal, which shall not be opened until such time as the parties have the opportunity to meet and confer as to the privileged nature of the production. If the parties are unable to agree as to the claimed privileged nature of the production, then the party claiming privilege shall on demand by Plaintiff's counsel submit the sealed documents or other information to the court for an in camera inspection and ruling on the claim of privilege. If the documents under seal require specialized equipment or software for full in camera review DaimlerChrysler agrees to make the necessary arrangements for complete in camera viewing by the Court. Whether DaimlerChrysler shall be otherwise

4

required to provide special equipment or software for full viewing of Protected Documents shall be determined pursuant to separate motion directed to that subject and not by the provisions of this Order.

8.    After termination of this litigation, the provisions of this Order shall continue to be binding. This Court retains jurisdiction over the parties and recipients of Protected Documents for enforcement of the provisions of this Order.

9.    This Order shall be binding upon the parties hereto, upon their attorneys, and upon the parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

10.    All persons described in paragraph 3 above shall not under any circumstance sell, offer for sale, advertise, or publicize the Confidential Information contained in the Protected Documents.

Dated: _____

_____
Circuit Court Judge

Approved:

_____    Date:_____
Mr. Brian W. Bell,
Swanson, Martin & Bell LLP
One IBM Plaza, Suite 3300
Chicago, IL 60611
Telephone:    (312) 321-9100
Facsimile:    (312) 321-0990
Attorney for DaimlerChrysler

_(signature)_ Date: Feb 13, 2007

Daniel T. DeFeo MO #35161
Angela G. Cahill
MO #52830
THE DEFEO LAW FIRM, P.C.
1100 Main, Suite 1610
Kansas City, Missouri 64108
Telephone: (816) 471-3004
Facsimile: (816) 471-3007
ddefeo@defeolaw.com
acahill@defeolaw.com

KOLKER & GERMEROTH

_____ Date:_____

Scott L. Kolker MO #44161
7730 Carondelet Ave., Suite 310
Clayton, Mo 63105
Telephone: (314) 727-4529
Facsimile: (314) 727-8529

## IN THE CIRCUIT COURT OF THE 23RD JUDICIAL CIRCUIT OF MISSOURI AT HILLSBORO, JEFFERSON COUNTY, MISSOURI

DINAH WILSON,                              )
                                           )
        Plaintiff,                         )
                                           )       Case No. 06JE-CC0324
v.                                         )       Div. 4
                                           )
DAIMLERCHRYSLER CORPORATION,               )
THE BRAUN CORPORATION,                     )
MICHELIN NORTH AMERICA, INC.,              )
MICHELIN AMERICAS RESEARCH AND             )
DEVELOPMENT CORPORATION, KING              )
DODGE, INC., AND CENTRAL STATES            )
BUS SALES, INC.,                           )
                                           )
        Defendants.                        )

### "EXHIBIT A" TO STIPULATED PROTECTIVE ORDER

I, the undersigned, acknowledge that I have read the Stipulated Protective Order

entered in the Circuit Court of Jefferson County, Missouri, Wilson v. DaimlerChrysler

Motor Corporation, Case No. 06JE-CC05324, understand the terms thereof, and agree to

be bound by such terms, and to be subject to the jurisdiction of this Court for

enforcement of all terms of the Protective Order. I will use the materials subject to this

Protective Order solely for purposes of this litigation in accordance with the terms of

such Protective Order and agree to fully cooperate with respect to the protection of such

materials in accordance with the terms of this Protective Order.

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

AGREED this ___13___ day of ___Feb___, 2007.

Printed Name: _DANiel T. DeFeo_

Signature: _Daniel DeFeo_

Address: _Kansas City Missouri_

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

**IN THE CIRCUIT COURT OF GREENE COUNTY, MISSOURI** FILED

BRUCE MCNEELY and EVA MCNEELY )
            Plaintiffs, )
 )                    2009 SEP 29  P 2: 56
 )                    CIRCUIT CLERK
v. )                  Case No.: 0831-CV17522 COUNTY, MO
 )
FORD MOTOR COMPANY, SPRINGFIELD )
LINCOLN-MERCURY SALES, INC., )
GERALD GIRENS and JERRY'S HEATING )
& AIR )
            Defendants. )

## STIPULATED PROTECTIVE ORDER

In order to preserve and maintain the confidentiality of certain confidential, commercial and proprietary documents to be produced by FORD MOTOR COMPANY ("Ford") in this action, it is ordered that:

1.    Documents to be produced by Ford in this litigation which contain confidential information shall hereafter be referred to as "Protected Documents." Any document or any information designated as "Subject to Protective Order" in accordance with the provisions of this Order shall only be used, shown or disclosed as provided in this Order.

2.    As used in this Order, the term "documents" means all written material, videotapes and all other tangible items, whether produced as hard copy, computer diskette, CD-ROM or otherwise.

3.    The burden of proving that a Protected Document contains confidential technical information is on Ford. Prior to designating any material as "Confidential," Ford must make a bona fide determination that the material is, in fact, a trade secret or other confidential technical information, the dissemination of which would damage Ford's competitive position. If a party disagrees with the "confidential" designation of any document, the party will so notify Ford in writing. Ford will timely apply to this Court to set

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

a hearing for the purpose of establishing that said document is confidential. Any document so marked as confidential will continue to be treated as such pending determination by the Court as to its confidential status.

4.    The designation of Protected Documents may be made by marking or placing the notice "Subject to Protective Order" or substantially similar notice, on the document, or, where a copy of the original document is to be produced, on that copy.

5.    Protected Documents and any copies thereof received pursuant to paragraph 6 below shall be maintained confidential by the receiving party, his/her attorney, other representatives, and expert witnesses, and shall be used only for preparation for the trial of this matter, subject to the limitations set forth herein.

6.    Protected Documents shall be disclosed only to "Qualified Persons." Qualified Persons are limited to:

    a.    Counsel of Record for the parties, and the parties;

    b.    Non-technical and clerical staff employed by Counsel of Record and involved in the preparation and trial of this action;

    c.    Experts and non-attorney consultants retained by the parties for the preparation or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford;

    d.    The Court, the Court's staff, witnesses, and the jury in this case; and

    e.    Attorneys representing plaintiffs and the experts and consultants retained by plaintiffs in other cases pending against Ford involving a 2000-2003 Ford Taurus/Mercury Sable and the same allegations

2

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

asserted in this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford.

    f.    The disclosure of such confidential materials to said experts or consultants will be in hard copy form only and will not be in any digitized or other computer readable format (such as a PDF format).

7.    Before receiving access to any Protected Document or the information contained therein, each person described in paragraphs 6(b), 6(c) and 6(e) above shall execute a "Written Assurance" in the form contained in Exhibit A, attached hereto. Counsel for the parties will retain the Written Assurance and will keep a list of all persons who have received Protected Documents for inspection by the Court and, upon order of the Court, counsel for Ford.

8.    To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony dealing with the Protected Documents or information.

9.    All documents that are filed with the Court that contain any portion of any Protected Document or information taken from any Protected Document shall be filed in a sealed envelope or other appropriate sealed container on which shall be endorsed the title of the action to which it pertains, an indication of the nature of the contents of such sealed envelope or other container, the phrase "Subject To Protective Order," and a statement substantially in the following form: "This envelope or container shall not be opened without order of the Court, except by officers of the Court and counsel of record, who, after reviewing the contents, shall return them to the clerk in a sealed envelope or container."

3

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

10.     Any court reporter or transcriber who reports or transcribes testimony in this action shall agree that all "confidential" information designated as such under this Order shall remain "confidential" and shall not be disclosed by them, except pursuant to the terms of this Order, and that any notes or transcriptions of such testimony (and any accompanying exhibits) will be retained by the reporter or delivered to counsel of record.

11.     Counsel for the parties shall not be required to return the Protected Documents to Ford after the conclusion of this case and may retain the documents pursuant to the terms of this Order.

12.     To the extent Ford is requested to produce documents it feels should not be subject to the sharing provisions of this protective order, Ford does not waive its right to subsequently request that the parties enter into a non-sharing protective order prior to the production of any such documents.

13.     Inadvertent or unintentional production of documents or information containing information which should have been designated as "confidential" shall not be deemed a waiver in whole or in part of the party's claims of confidentiality.

14.     This Protective Order may not be waived, modified, abandoned or terminated, in whole or part, except by an instrument in writing signed by the parties.  If any provision of this Protective Order shall be held invalid for any reason whatsoever, the remaining provisions shall not be affected thereby.

15.     After termination of this litigation, the provisions of this Order shall continue to be binding.  This Court retains and shall have jurisdiction over the parties and recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this litigation.

4

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

16.     This Protective Order shall be binding upon the parties hereto, upon their

attorneys, and upon the parties' and their attorneys' successors, executors, personal

representatives, administrators, heirs, legal representatives, assigns, subsidiaries,

divisions, employees, agents, independent contractors, or other persons or organizations

over which they have control.

17.     All persons described in paragraph 6 above shall not under any circumstance

sell, offer for sale, advertise, or publicize either the Protected Documents and the

Confidential information contained therein or the fact that such persons have obtained

Ford's Protected Documents and Confidential information.

DATED: ___9 / 28___, 2009

TURNER, REID, DUNCAN, LOOMER
& PATTON, P.C.

By:_____
Rodney E. Loomer, MO Bar #24013
ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

DATED: ___9/29___, 2009

DANIEL POWELL WESLEY & BREWER

By:_____
Gary B. Brewer, MO Bar #33159
ATTORNEYS FOR DEFENDANTS
GERALD GIRENS and
JERRY'S HEATING & AIR

DATED: ___9 - 27___, 2009

THE DEFEO LAW FIRM, P.C.

By:_____
Daniel T. DeFeo, MO Bar #35161
ATTORNEYS FOR PLAINTIFFS

5

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

So Ordered, this _29_ day of _SEPT_, 2009.

Presiding Judge

6

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

**EXHIBIT A**

## IN THE CIRCUIT COURT OF GREENE COUNTY, MISSOURI

BRUCE MCNEELY and EVA MCNEELY )
           Plaintiffs, )
            )
  v. )      Case No.: 0831-CV17522
            )
FORD MOTOR COMPANY, SPRINGFIELD )
LINCOLN-MERCURY SALES, INC., )
GERALD GIRENS and JERRY'S HEATING )
& AIR )
           Defendants. )

AFFIDAVIT OF _____, being duly sworn and personally appearing before the undersigned attesting officer, duly authorized by law to administer oaths, deposes and says that the within statements are true and correct:

    1.    I have read the Stipulated Protective Order attached hereto and I understand its terms and meanings.

    2.    I agree that my signature below submits me to the jurisdiction of the Circuit Court of Greene County, Missouri, in which the above-captioned action is pending, and binds me to the provisions of the Stipulated Protective Order, including to all promises undertaken in the Order, as if originally agreed by me.

    Further Affiant sayeth not. This _____ day of _____, _____.


                                  _____
                                  AFFIANT

SUBSCRIBED AND SWORN to before me this _____ day of _____, _____.

                                  _____
                                  NOTARY PUBLIC
My Commission Expires:

7

EXHIBIT
E



IN THE CIRCUIT COURT OF JEFFERSON COUNTY, MISSOURI

*Howard Wagner*

| | | |
|---|---|---|
| RACHAEL PHELPS, by and through her Next Friend, DEBORAH THERESA PHELPS, Plaintiff, | ) ) ) | |
| vs. | ) | Case No. 10JE-CC00577 |
| FORD MOTOR COMPANY, JEFFERSON COUNTY, and JOHN DOE GLASS MANUFACTURER, Defendants. | ) ) ) ) ) | |

## STIPULATED PROTECTIVE ORDER

In order to preserve and maintain the confidentiality of certain confidential, commercial and proprietary documents to be produced by FORD MOTOR COMPANY ("Ford") in this action, it is ordered that:

1.    Documents to be produced by Ford in this litigation which contain confidential information shall hereafter be referred to as "Protected Documents." Any document or any information designated as "Subject to Protective Order" in accordance with the provisions of this Order shall only be used, shown or disclosed as provided in this Order.

2.    As used in this Order, the term "documents" means all written material, videotapes and all other tangible items, whether produced as hard copy, computer diskette, CD-ROM or otherwise.

3.    The burden of proving that a Protected Document contains confidential technical information is on Ford. Prior to designating any material as "Confidential," Ford must make a bona fide determination that the material is, in fact, a trade secret or other confidential technical information, the dissemination of which would damage Ford's competitive position. If a party disagrees with the "confidential" designation of any document, the party will so notify Ford in

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

writing. Ford will apply to this Court within 30 days to set a hearing for the purpose of establishing that said document is confidential. Any document so marked as confidential will continue to be treated as such pending determination by the Court as to its confidential status.

4.      The designation of Protected Documents may be made by marking or placing the notice "Subject to Protective Order" or substantially similar notice, on the document, or, where a copy of the original document is to be produced, on that copy.

5.      Protected Documents and any copies thereof received pursuant to paragraph 6 below shall be maintained confidential by the receiving party, his/her attorney, other representatives, and expert witnesses, or as otherwise provided in paragraph 6(e), subject to the limitations set forth herein.

6.      Protected Documents shall be disclosed only to "Qualified Persons." Qualified Persons are limited to:

>       a.      Counsel of Record for the parties, and the parties;

>       b.      Non-technical and clerical staff employed by Counsel of Record and involved in the preparation and trial of this action;

>       c.      Experts and non-attorney consultants retained by the parties for the preparation or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford;

>       d.      The Court, the Court's staff, witnesses, and the jury in this case; and

>       e.      Attorneys representing plaintiffs and the experts and consultants retained by plaintiffs in other cases pending against Ford, regarding allegations relating to the front airbag supplemental restraint system in Ford F-150 vehicles or allegations relating to the side impact airbags, side curtain

2

airbag, or safety canopy in Ford F-150 vehicles or allegations relating to glazing in the 2006 F-150 Crew Cab pickup, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford.

7.      Before receiving access to any Protected Document or the information contained therein, each person described in paragraphs 6(b), 6(c) and 6(e) above shall execute a "Written Assurance" in the form contained in Exhibit A, attached hereto. Counsel for the parties will retain the Written Assurance and will keep a list of all persons who have received Protected Documents for inspection by the Court and, upon order of the Court, counsel for Ford.

8.      To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony dealing with the Protected Documents or information.

9.      All documents that are filed with the Court that contain any portion of any Protected Document or information taken from any Protected Document shall be filed in a sealed envelope or other appropriate sealed container on which shall be endorsed the title of the action to which it pertains, an indication of the nature of the contents of such sealed envelope or other container, the phrase "Subject To Protective Order," and a statement substantially in the following form: "This envelope or container shall not be opened without order of the Court, except by officers of the Court and counsel of record, who, after reviewing the contents, shall return them to the clerk in a sealed envelope or container."

10.     Any court reporter or transcriber who reports or transcribes deposition testimony in this action shall agree that all "confidential" information designated as such under this Order

3

shall remain "confidential" and shall not be disclosed by them, except pursuant to the terms of this Order, and that any notes or transcriptions of such testimony (and any accompanying exhibits) will be retained by the reporter or delivered to counsel of record.

11.     Counsel for the parties shall not be required to return the Protected Documents to Ford after the conclusion of this case and may retain the documents pursuant to the terms of this Order.

12.     To the extent Ford is requested to produce documents it has determined should not be subject to the sharing provision of this protective order in paragraph 6(e), Ford will designate such documents as "Non-Sharing." Documents designated as "Non-Sharing" shall not be shared under paragraph 6(e). The burden of proving that a "Non-Sharing" document contains confidential technical information is on Ford. Prior to designating any material as "non-Sharing" Ford must make a bona fide determination that the material is, in fact, information that requires protections beyond those afforded to "Protected Documents" that are subject to the "Sharing" provisions of this Protective Order. If a party disagrees with the "Non-Sharing" designation of any document, the party will so notify Ford in writing. Ford will file a motion within 21 days of this written notification for the purpose of establishing that good cause exists to treat the documents as "Non-Sharing" pursuant to this Protective Order. Any document so marked as "Non-Sharing" will continue to be treated as such pending determination by the Court as to its confidential status.

13.     With respect to Protected Documents designated as "Non-Sharing," within one hundred and twenty (120) days after the conclusion of this case, counsel for the parties who received Protected Documents, including any documents that any such party disclosed to any person described in paragraphs 6(b) and 6(c) above, shall either (a) return to Ford the Protected

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

Documents; or (b) securely destroy the Protected Documents and certify such destruction to Ford within one hundred and fifty (150) days after the conclusion of this case.

14.     Inadvertent or unintentional production of documents or information containing information which should have been designated as "confidential" shall not be deemed a waiver in whole or in part of the party's claims of confidentiality.

15.     This Protective Order may not be waived, modified, abandoned or terminated, in whole or part, except by an instrument in writing signed by the parties. If any provision of this Protective Order shall be held invalid for any reason whatsoever, the remaining provisions shall not be affected thereby.

16.     After termination of this litigation, the provisions of this Order shall continue to be binding. This Court retains and shall have jurisdiction over the parties and recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this litigation.

17.     This Protective Order shall be binding upon the parties hereto, upon their attorneys, and upon the parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

18.     All persons described in paragraph 6 above shall not under any circumstance sell, offer for sale, advertise, or publicize either the Protected Documents and the Confidential information contained therein or the fact that such persons have obtained Ford's Protected Documents and Confidential information.

DATED: __10/19__, 2011

Turner, Reid, Duncan, Loomer
    & Patton, P.C.

By: _____

Attorneys for Defendant
Ford Motor Company

DATED: __10/17__, 2011

Sullivan, Morgan & Chronic, LLC

By: _____

Attorneys for Plaintiff

DATED: __10/19__, 2011

King, Krehbiel, Hellmich
    & Borbonus

By: _____

Attorneys for Jefferson County

So Ordered, this 24th day of October, 2011.

_____
Presiding Judge

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM



FILED
OCT 2 1 2011
Howard Wagner

**EXHIBIT A**

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, MISSOURI

| | | |
|---|---|---|
| RACHAEL PHELPS, by and through her | ) | |
| Next Friend, DEBORAH THERESA PHELPS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10JE-CC00577 |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| JEFFERSON COUNTY, and | ) | |
| JOHN DOE GLASS MANUFACTURER, | ) | |
| Defendants. | ) | |

AFFIDAVIT OF _____, being duly sworn and personally appearing before the undersigned attesting officer, duly authorized by law to administer oaths, deposes and says that the within statements are true and correct:

1. I have read the Stipulated Protective Order attached hereto and I understand its terms and meanings.

2. I agree that my signature below submits me to the jurisdiction of the Circuit Court of Jefferson County, Missouri, in which the action of *Phelps v. Ford Motor Company, et al*, Case No. 10JE-CC00577, is pending, and binds me to the provisions of the Stipulated Protective Order, including to all promises undertaken in the Order, as if originally agreed by me.

Further Affiant sayeth not.

This ___ day of _____, 2011.

_____
AFFIANT

SUBSCRIBED AND SWORN to before me
this ___ day of _____, 2011.

_____
NOTARY PUBLIC

My Commission Expires:

7

**EXHIBIT**
**F**


Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

AMY ARBUCKLE, surviving daughter of )
RUTH N. LAWSON, deceased )
)
      Plaintiff, )
)
v. )    **Case No. 0716-CV02866**
)    **Division 5**
FORD MOTOR COMPANY and )
STEVE HOLLAND d/b/a )
HOLLAND'S AUTO SALES )
)
      Defendants. )

### STIPULATED PROTECTIVE ORDER

       In order to preserve and maintain the confidentiality of certain documents to be produced by Ford Motor Company ("Ford") in this action, it is mutually agreed that:

       1.    Documents to be produced by Ford in this litigation, which contain confidential information of Ford, shall hereafter be referred to as "Protected Documents." When used in this Order, the word "documents" means all written material, videotapes and all other tangible items, whether produced as hard copy, computer diskette, CD-ROM or otherwise. Except as otherwise indicated below, documents designated by Ford as "Subject to Protective Order" or a similar designation, which are produced or delivered by Ford to any party and/or each party's respective attorneys, consultants, agents, or experts in this action shall be Protected Documents and given confidential treatment as described below. Ford will visibly mark all confidential material "Subject to Protective Order."

       2.    The burden of proving that a Protected Document contains Confidential Information is on Ford. Prior to designating any material as "Confidential," Ford must make a

bona fide determination that the material is, in fact, a trade secret or other confidential technical information, the dissemination of which would significantly damage Ford's competitive position. If a party disagrees with the "Confidential" designation of any document, the party will so notify Ford in writing. Ford will timely apply to this Court to set a hearing for the purpose of establishing that said document is confidential. Any document so marked as confidential will continue to be treated as such pending determination by the Court as to its confidential status.

      3.     Both the Protected Documents and the information contained therein shall be treated as confidential. Except upon the prior written consent of Ford or upon order of this Court, the Protected Documents or information contained therein may be shown, disseminated, or disclosed only to the following persons (hereinafter referred to as "Qualified Persons"):

      a.  Counsel of record for the parties in this case, including other members of counsel's law firm and any other counsel associated to assist in the preparation or trial of this case;

      b.  Employees of counsel for each party in this case or of associated counsel, who assist in the preparation or trial of this case;

      c.  Experts and non-attorney consultants retained by the parties for the preparation or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford;

      d.  The Court, the Court's staff, witnesses, and the jury in this case; and

      e.  Attorneys representing plaintiffs and the experts and consultants retained by plaintiffs in other cases under investigation or pending against Ford involving allegations of injury or death due to defects in the roof and supporting

–2–

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

structures and/or defects in the stability and handling in a Ford vehicle,

provided that no disclosure shall knowingly be made to any expert or

consultant who is employed by a competitor of Ford.

4.     Before receiving access to any of the Protected Documents or the information

contained therein, each person described in Paragraphs 4(b), 4(c) and 4(e) above shall be advised

of the terms of this Order, shall be given a copy of this Protective Order, and shall agree in

writing, in the form attached hereto as "Exhibit A," to be bound by its terms and to submit to the

jurisdiction of this Court. Counsel shall maintain a list of all Qualified Persons to whom any

Protected Document or material contained therein is provided, and that list shall be available for

inspection by the Court. Upon Ford's request, and a Court finding that a reasonable belief exists

that the terms and provisions of this Order have been or are in jeopardy of being violated,

Counsel shall provide within three (3) business days a copy of such list, together with copies of

written agreements executed by the Qualified Persons.

5.     Counsel for the parties shall not be required to return the Protected Documents to

Ford after the conclusion of this case and may retain the documents pursuant to the terms of this

Order. However, Counsel shall keep records of all copies of each Protected Document

distributed, in whole or in part, to Qualified Persons. Any copy so distributed shall be returned

to the respective counsel for each party receiving Protected Documents immediately upon the

completion of the Qualified Person's consultation or representation in his or her case.

6.     To the extent that Protected Documents or information contained therein are used

in the taking of depositions, such documents or information shall remain subject to the

provisions of this Protective Order, along with the transcript pages of the deposition testimony.

–3–

7.     All Confidential Information and any pleading, motion or other paper filed with the Court disclosing any such Protected Documents or Confidential Information shall be filed under seal and shall be kept under seal until further order of the Court.  However, said information shall continue to be available to the Court and to such persons permitted access to such information under this Order.  Where possible, only the confidential portions of filings with the Court shall be filed under seal.

8.     This Protective Order shall not apply to the disclosure of Protected Documents or the information contained therein at the time of trial, through the receipt of Protected Documents into evidence or through the testimony of witnesses.  The closure of trial proceedings and sealing of the record of a trial involve considerations not presently before the Court.  These issues may be taken up as a separate matter upon the motion of any of the parties at the threshold of the trial.

9.     This Protective Order may not be waived, modified, abandoned or terminated, in whole or in part, except by an instrument in writing signed by the parties.  If any provision of this Protective Order shall be held invalid for any reason whatsoever, the remaining provisions shall not be affected thereby.

10.     This Protective Order shall be binding upon the parties hereto, upon their attorneys, and upon the parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

–4–

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

11.     All persons described in Paragraph 4 above shall not under any circumstance sell, offer for sale, advertise, or publicize either the Confidential Information or the fact that such persons have obtained Ford's Confidential Information.

**AGREED AND APPROVED:**

**Attorneys for Plaintiff**

Attorneys for Ford Motor Company

**Attorneys for Steve Holland d/b/a Holland's Auto Sales**

**AND NOW**, this ___4___ day of ___August___, 2008, it is **SO ORDERED**.

_____
Judge

–5–

## EXHIBIT "A"
## WRITTEN ASSURANCE

STATE OF _____ )
               ) ss
COUNTY OF _____ )

I, _____, hereby attest to my understanding that information or documents designated confidential are provided to me pursuant to the terms and conditions and restrictions of the Protective Order, dated _____, 20__, in *Arbuckle v. Ford Motor Company, et al.,* that I have been given a copy of and have read the Protective Order and understand its terms. I further agree that I shall not disclose to others, except in accordance with that Protective Order, such information or documents including notes or other memorandum or writings regarding information contained in them, and that such information or documents shall be used only for the purposes of the legal proceeding in which they are produced. I further agree and attest to my understanding that my obligation to honor the confidentiality of such information or documents will continue even after the termination of the legal proceeding. I further agree and attest to my understanding that, in the event that I fail to abide by the terms of the Protective Order, I may be subject to sanctions, including sanctions by way of contempt of court, imposed by the Court for such a failure. Further, I agree to subject myself to the jurisdiction of Jackson County, Missouri, in and for any contempt proceeding or other appropriate sanctions as the Court may deem proper for a violation of the Court's Protective Order.

_____

Subscribed and sworn to before me this _____ day of _____, 20__.

_____
NOTARY PUBLIC

–6–

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

SHAUN MARUICE HACHINSKY ) Case No.: 0516-CV20751
KAREN DENISE HACHINSKY ) Division 2
 )
Plaintiffs )
 )
and )
 )
FORD MOTOR COMPANY, INC. , et al. )
 )
Defendants. )

**ORDER OF THE DISCOVERY COMMISSIONER (NO. 1)
PROTECTIVE ORDER**

In order to preserve and maintain the confidentiality of certain information,

documents and tangible things to be identified and produced in this case by defendant Ford

Motor Company ("Ford"), the Discovery Commissioner enters this Protective Order.

1. Documents and materials to be produced by Ford Motor in this litigation that it

contends constitute, contain or depict trade secrets or other confidential research, development or

commercial information as contemplated by Mo. R. Civ. P. 56.01(c)(7) (and expressly including

Volvo documents and depositions produced in the Texas case of *Morales v. Ford Motor*

*Company*) shall be designated as "Protected Documents" by stamping or labeling such

documents and materials in a manner that does not cover or otherwise obscure any of the content

of such materials (e.g., documents shall be stamped or labeled at the top or bottom of the page

whenever possible, but not over the text). When used in this Order, the word "documents"

means all written material, video tapes and all other tangible items whether produced as hard

copy, computer diskette, CD-ROM or otherwise. Except as otherwise indicated in this Order,

documents designated by Ford as Protected Documents shall be given confidential treatment as

set forth below. Ford will visibly mark all confidential material "Subject to Protective Order of Confidential Information" or equivalent language..

2. The burden of proving that a Protected Document contains proprietary, confidential or technical information is on Ford. Prior to designating any material as a Protected Document, Ford must make a bona fide determination that the material is, in fact, a trade secret or other confidential research, development or commercial information as contemplated Mo. R. Civ. P. 56.01(c)(7), the dissemination of which would damage Ford's competitive position. If a party disagrees with the "confidential" designation of any document, the party will notify Ford in writing. Any such challenge must be made no later than thirty (30) days after the party receives the materials in question. Within ten (10) days of any such written notice, the parties shall meet and confer in person or by telephone about the challenge and attempt to informally resolve the challenge. If not informally resolved, no later than 30 days after the parties meet and confer Ford shall file a Motion for Protective Order pursuant to Mo. R. Civ. P. 56.01(c)(7) for the purpose of determining whether the challenged documents are entitled to the protection of this Order. Any document designated as a Protected Document shall remain protected by this Order pending Court determination as to its confidential status. If Ford does not file a motion within 30 days after the parties meet and confer concerning the disputed status, the documents at issue shall be deemed not subject to this Order.

3. Both the Protected Documents and the information contained therein shall be treated as confidential. Except upon the prior written consent of the parties or upon further Order of this Court or the Discovery Commissioner, the Protected Documents or information contained therein may be shown, disseminated or disclosed only to the following persons:

a. Plaintiff and defendants' counsel of record in this case, including other members and employees of counsels' law firm and any other counsel associated to assist and who participate in the preparation or trial of this case;

b. Experts and non-attorney consultants retained by the parties for the preparation or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford;

c. The Court (including the Discovery Commissioner), the Court's staff, witnesses and the jury in this case; and

d. Unless otherwise ordered by the Trial Court or Discovery Commissioner (following a motion raising issues of exceptional sensitivity due to current undisclosed propriety information affecting Ford's competitive position) attorneys representing Plaintiffs and the experts and consultants retained by the plaintiff in other cases pending against Ford involving Ford Explorers (including Mercury Mountaineers) in which occupant restraints, roof strength, roof crush or stability are at issue, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford.

4. Before giving access to any of the Protected Documents or the information contained therein, each person described in paragraph 3(b) or 3(d) above shall be advised of the terms of this Order, shall be given a copy of this Order, and shall agree in writing, in the form attached hereto as "Exhibit A", to be bound by its terms and to submit to the jurisdiction of this Court. All signed copies of Exhibit A shall be provided to Ford when this case is resolved (except that names and identifying information of undisclosed experts or consultants may be redacted). Prior to resolution of this case, Ford may file a motion based on a good faith belief that this Order has been violated (or is in jeopardy of being violated) seeking a judicial determination whether particular individuals are within the categories of persons authorized to receive copies of Protected Documents and have or have not executed appropriate copies of the "Exhibit A" reflecting the conditions imposed for receiving access to Protected Documents.

5.    All persons described in paragraph 3 above shall not under any circumstances sell, offer for sale, advertise, or publicize either the Confidential Information or the fact that such persons have obtained Ford's Confidential Information.

6.    The inadvertent production of Confidential Information in the course of discovery in this action of any document or information (whether designated as Confidential or not) shall not be deemed to waive whatever privilege that would otherwise attach to the document or information produced or to other documents or information, as long as the producing party, promptly after discovery of the inadvertent production, notifies the other party or parties of the claim of privilege or other protection or immunity. Upon such notice, the other party or parties shall return the inadvertent production under seal, which shall not be opened until such time as the parties have the opportunity to meet and confer as to the privileged nature of the production. If the parties are unable to agree as to the claimed privileged nature of the production, then the party claiming privilege shall on demand by Plaintiff's counsel submit the sealed documents or other information to the court for an in camera inspection and ruling on the claim of privilege. If the documents under seal require specialized equipment or software for full in camera review Ford agrees to make the necessary arrangements for complete in camera viewing by the Court. Whether Ford shall be otherwise required to provide special equipment or software for full viewing of Protected Documents shall be determined pursuant to separate motion directed to that subject and not by the provisions of this Order.

7.    (A).   Counsel for Plaintiffs in this litigation and other counsel authorized to share Protected Documents with others shall maintain a log identifying all persons to whom such documents are provided. Each such counsel shall, upon conclusion of his or her own litigation, provide a copy of the log to counsel for Ford solely excepting that the identification of any

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM

experts or consultants who were not designated as trial witnesses or otherwise disclosed to Ford may be redacted from the log to be furnished.

(B). Upon conclusion of this litigation (or the litigation involving other attorneys authorized to receive documents), counsel for Plaintiffs in each such case shall retrieve from all experts or consultants all copies of all Protected Documents and either destroy or return the documents to Ford. Such counsel shall additionally obtain from each such consultant or expert a written declaration that all copies of all Protected Documents have been returned and that no copies have been retained. The declarations of disclosed experts or consultants shall be provided to Ford. If Protected Documents have been provided to experts or consultants who have not been disclosed to Ford, counsel for Plaintiffs shall provide their own written declaration to Ford that all such documents have been retrieved and none have been retained by such experts or consultants.

(C). No ruling concerning return or retention of Protected Documents is entered at this time. At any time this litigation is considered to be nearing its conclusion, counsel for Plaintiffs may, at their option, file a motion directed to the Trial Court for determination of the extent to which, if at all, Protected Documents may be retained by them, should be filed under seal, should be retained by Ford, should unconditionally be returned to Ford or should be subject to other appropriate conditions. There is no compelling reason to resolve those issues at this point and a more adequate record of reasons supporting such a decision could be expected at a later time. If no such motion is filed by Plaintiffs, all Protected Documents shall be unconditionally returned to Ford within thirty (30) days of termination of the litigation..

(D.) Questions concerning post-litigation handling of Protected Documents provided to other counsel in other matters should be resolved in the same fashion by motion directed either to this Court or to another Court of competent jurisdiction before whom that litigation is pending.

8. After termination of this litigation, the provisions of this Order shall continue to be binding. This Court retains jurisdiction over the parties and recipients of Protected Documents for enforcement of the provisions of this Order.

9. To the extent that Protected Documents or information contained therein are used in the taking of depositions, such documents or information shall remain subject to the provisions of this Protective Order. Additional portions of a deposition may be designated as Confidential by Ford if, within thirty (30) days after receipt of the written transcript, it designates such additional portions as confidential and notifies counsel for Plaintiffs of such designation. If Ford does not so designate any additional portions of a deposition as contemplated by this paragraph, only the Protected Documents and information from them shall remain subject to this Order.

10. This Protective Order shall not limit the disclosure of Protected Documents or the information contained therein during depositions or at the time of trial, through the receipt of Protected Documents into evidence, or through the testimony of witnesses. The closure of trial proceedings and sealing of the record of a trial involve considerations not presently before the Court or Discovery Commissioner. These issues may be taken up as a separate matter upon the motion of any of the parties at or in advance of trial.

11. Protected Documents attached to pleadings filed with Court shall be filed under seal pending further Order of the Court.

12. This Order shall be binding upon the parties hereto, upon their attorneys, and upon the parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

13. All persons described in paragraph 3 above shall not under any circumstance sell, offer for sale, advertise, or publicize the Confidential Information contained in the Protected Documents.

Dated: 9/21/06

Fred Wilkins, Discovery Commissioner

Copies of this Order were faxed to counsel
for the parties this 21st day of September, 2006.

Fred Wilkins

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

SHAUN MARUICE HACHINSKY ) Case No.: 0516-CV20751
KAREN DENISE HACHINSKY ) Division 2
)
    Plaintiffs )
)
and )
)
FORD MOTOR COMPANY, INC. , et al. )
)
    Defendants. )

## "EXHIBIT A" TO PROTECTIVE ORDER

   I, the undersigned, acknowledge that I have read the Protective Order entered in the

Circuit Court of Jackson County, Missouri, <u>Hachinsky v. Ford Motor Company,</u> Case No.

0516-CV20751, understand the terms thereof, and agree to be bound by such terms, and to be

subject to the jurisdiction of this Court for enforcement of all terms of the Protective Order. I

will use the materials subject to this Protective Order solely for purposes of litigation in

accordance with the terms of such Protective Order and agree to fully cooperate with respect to

the protection of such materials in accordance with the terms of this Protective Order.

    AGREED this _____ day of _____, 200_.

        Printed Name:_____

        Signature:_____

        Address:_____

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

SHAUN MARUICE HACHINSKY ) Case No.: 0516-CV20751
KAREN DENISE HACHINSKY ) Division 2
)
Plaintiffs )
)
and )
)
FORD MOTOR COMPANY, INC. , et al. )
)
Defendants. )

### "EXHIBIT A" TO PROTECTIVE ORDER

I, the undersigned, acknowledge that I have read the Protective Order entered in the

Circuit Court of Jackson County, Missouri, Hachinsky v. Ford Motor Company, Case No.

0516-CV20751, understand the terms thereof, and agree to be bound by such terms, and to be

subject to the jurisdiction of this Court for enforcement of all terms of the Protective Order. I

will use the materials subject to this Protective Order solely for purposes of litigation in

accordance with the terms of such Protective Order and agree to fully cooperate with respect to

the protection of such materials in accordance with the terms of this Protective Order.

AGREED this _21st_ day of _Sept_ , 200_6_

Printed Name: _Daniel T. Diefco_

Signature: _Daniel Dico_

Address: _Kansas City, MO_

┌─────────────┐
│   **EXHIBIT**   │
│      H      │
└─────────────┘

Electronically Filed - Vernon - June 19, 2019 - 04:04 PM3:35 PM

## IN THE CIRCUIT COURT OF MISSOURI
## TWENTY-FIRST JUDICIAL CIRCUIT
## (ST. LOUIS COUNTY)

| | | |
|---|---|---|
| **KYLA NUNEZ, by and through** | ) | |
| **her Next Friend, JULIE COFFMAN** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14SL-CC01787** |
| | ) | |
| | ) | **Division: 1** |
| **JOHNNY LONDOFF CHEVROLET,** | ) | |
| **INC., et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AGREED PROTECTIVE ORDER

Before the court is the parties' Motion to Enter Agreed Protective Order, filed May ___, 2015. The court determines that the motion should be, and is hereby, **granted**. Accordingly, it is hereby stipulated and agreed by and between Kyla Nunez, by and through her Next Friend, Julie Coffman ("Plaintiffs") and Defendant General Motors LLC ("General Motors" or "GM"), through their attorneys of record, as follows:

1. General Motors may designate as "Confidential" or "Produced Pursuant to Protective Order" documents it produces to Plaintiffs in response to discovery. Since such materials so designated are confidential, proprietary, and/or contain trade secrets, the discovery and inspection will be conducted pursuant to the following terms, restrictions, and conditions. Plaintiffs and Plaintiffs' counsel shall not provide copies of such documents, information or materials to any person or entity except as otherwise provided below.

2. Except as provided, information contained therein shall be disclosed only to counsel of record in this action or only to individuals certified by such counsel as employed by or assisting counsel in preparation for, or at the trial of, this action, or to other counsel of record in cases

against General Motors involving an allegation of failure to restrain regarding the safety belt system for the second row seating positions for a 2001 Chevrolet Suburban or vehicles with a substantially similar safety belt systems, including the 2000-2006 Chevrolet Tahoe; 2000-2006 Chevrolet Suburban; 2000-2006 GMC Yukon and Yukon XL; 2001-2006 GM Denali and Denali XL; 2002-2006 Cadillac Escalade; and 2003-2006 Cadillac Escalade ESV. Provided that, (1) counsel of record in other cases must sign an acknowledgment and agree to be bound by the terms of this Order and be subject to the jurisdiction of this court, and (2) provided that Plaintiffs' counsel in this case shall maintain a list of such other attorneys subject to ¶ 5 below. And, provided, that Plaintiffs' counsel and persons entitled to receive or review such documents, information or materials pursuant to this Order shall not divulge or release such documents, information or materials to competitors of General Motors.

3. Any person or firm to whom such documents or information contained therein is to be disclosed shall first be advised by counsel making that disclosure that, pursuant to this Protective Order, such person or firm may not divulge any such information to any other person and that he further submits to this Court's jurisdiction for contempt or any other appropriate proceeding in the event of any alleged violation of this Protective Order.

4. In the event that any document or the information contained therein is included with, or the contents thereof are in any way disclosed, in any pleading, motion, or other paper filed with the Clerk of this Court, such confidential documents or information shall be kept under seal by the Clerk until further order of the Court. Any use of any such document or of information contained therein and any testimony associated with the confidential information contained therein shall be held in camera unless the Court orders otherwise upon good cause shown.

5. Plaintiffs' counsel shall maintain a list of names of each person, to whom confidential documents and/or materials covered by this Order have been disclosed. This provision does not apply to the names of counsel in this case nor to employees of their offices. This list shall be available for inspection by the Court, upon motion and a showing of good cause by General Motors.

6. All documents, information, and/or materials furnished by General Motors, designated so as to be subject to this Protective Order, shall be so designated by General Motors at the time produced or disclosed. General Motors may only designate as such materials that contain trade secret(s) or other confidential research, development or commercial information within the scope of Supreme Court Rule 56.01(c)(7).

7. The production of such documents or information by General Motors shall not constitute a waiver of any privilege or other claim or right of withholding or confidentially that it may have.

8. If GM designates any materials which Plaintiffs contend do not meet Rule 56.01(c)(7) and contain trade secrets or other confidential research, development or commercial information, Plaintiffs shall identify those materials in a letter to counsel for GM. The parties agree to meet and confer in an effort to resolve any such issues. If the parties are unable to resolve issues concerning the designation of confidential documents, the parties further agree to present any such issue to the Court in the most efficient manner possible. The parties agree that it is inefficient to have multiple motions on confidentiality issues before the Court, and will use their best efforts to consolidate such issues so that one motion on confidentiality may address any issues that arise. Once any such issues have been identified, and upon written notice from plaintiffs' counsel that all such issues as to a particular set of discovery responses have been identified, Counsel for GM shall then request a hearing within 30 days

on the issues of confidentiality of those items in dispute. Failure to request a hearing on these issues will result in the revocation of the confidential status, absent a showing of good cause. This deadline may be extended by agreement of the parties or order of the Court. At the hearing, GM shall have the burden to prove its claim that such items are trade secrets or other confidential research, development or commercial information within the scope of Supreme Court Rule 56.01(c)(7).

9.     Some of the design information produced may be saved in two-dimensional ("2D") drawings and some design information may be saved in three-dimensional ("3D") electronic data format. GM's electronic CAD data constitutes highly confidential, commercially sensitive trade secrets. Plaintiff agrees that this information shall not be shared with other counsel as provided under paragraph 4 without first providing written notice to Office of the General Counsel of General Motors LLC, 400 Renaissance Center, Post Office Box 400, Detroit, Michigan 48265-4000, and GM's counsel of record in this action, of a request for such data covered by paragraph 2 above. The parties agree to meet and confer in an effort to resolve any such issues. If the parties are unable to resolve issues concerning the designation of confidential documents, the parties further agree to present any such issue to the Court in the most efficient manner possible. The parties agree that it is inefficient to have multiple motions on confidentiality issues before the Court, and will use their best efforts to consolidate such issues so that one motion on confidentiality may address any issues that arise. Once any such issues have been identified, and upon written notice from Plaintiffs' counsel that all such issues as to a particular set of discovery responses have been identified, Counsel for GM shall then request a hearing within 30 days on the issues of confidentiality of those items in dispute. Failure to request a hearing on these issues will result in the revocation of the confidential status, absent a showing of good cause. This deadline may be extended by agreement of the parties or order of the Court.

10. To the extent that protected documents or information contained therein, are used in the taking of depositions, the documents or information shall remain subject to the provisions of this Protective Order.

11. Upon conclusion of this action, by settlement or otherwise, counsel for Plaintiff herein shall return to counsel for GM all documents or other materials produced by GM which are subject to this Protective Order and which are in the possession of counsel for Plaintiff, including the return of any and all copies, recordings, prints, discs, negatives, or summaries thereof (including, but not limited to, any such materials in the possession of any employees, experts or consultants), except those comprising any trial or appellate court record. As to any confidential documents and materials that comprise any portion of the trial or appellate record, they shall remain confidential and shall continue to be sealed in accordance with the terms of Paragraph 3 of this Protective Order.

12. This Protective Order and its terms may be modified by any subsequent Protective Order to which Plaintiffs and Defendants have agreed and/or which is entered by this Court.

13. This Protective Order and its terms apply to all parties and entities receiving documents subject to this Protective Order. Any documents to be filed under seal with the Clerk of the court pursuant to this Order, shall be filed in an envelope marked "Seal with the Court."

**It is so ordered** this 14th day of May, 2015.

_____
Judge

Electronically Filed - Vernon - July 12, 2019 - 04:23 PM

## IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI

| | |
|---|---|
| **LANE ALLMOND and MISTY ALLMOND** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )  **Case No.: 19VE-CV00084** |
| | ) |
| **DOREL JUVENILE GROUP and TREVOR PETTIBON** | ) |
| | ) |
| **Defendants.** | ) |

### <u>NOTICE OF HEARING</u>

PLEASE TAKE NOTICE that counsel for Plaintiffs will call up their *Motion for Protective Order* and affiliated filings to be heard on August 13, 2019 at 9:00 a.m. or as soon thereafter as counsel may be heard.

Respectfully submitted,

By:     */s/ Chad C. Lucas*
Chad C. Lucas          #50822
Nick A. Brand          #63380
Kuhlman & Lucas, LLC
1100 Main Street, Suite 2550
Kansas City, Missouri 64105
Telephone: (816) 799-0330
Facsimile: (816) 799-0336
chad@kuhlmanlucas.com
nick@kuhlmanlucas.com

and

Joseph R. Hillebrand     #43344
Brown & Crouppen, P.C.
211 N. Broadway, Suite 160
St. Louis, Missouri 63102
Telephone: (314) 222-2222
Facsimile: (314) 421-0359
joeh@getbc.com

**Attorneys for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 12th day of July, 2019, the foregoing document was filed with the Clerk of the Court using the Missouri eFiling System, which sent notice of such filing to all counsel of record.

*/s/ Chad C. Lucas*
**Attorney for Plaintiffs**

**IN THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI**

| | |
|---|---|
| LANE ALLMOND and MISTY ALLMOND | ) )  ) |
| Plaintiffs, | ) ) |
| v. | )  Case No.: 19VE-CV00084 |
| | ) |
| DOREL JUVENILE GROUP, INC. and TREVOR PETTIBON | ) ) ) |
| Defendants. | ) |

**PLAINTIFFS' NOTICE OF DISMISSAL OF CLAIMS**

Pursuant to Missouri Supreme Court Rule 67.02, plaintiffs Lane Allmond and Misty Allmond, by and through their counsel, Kuhlman & Lucas, LLC, hereby dismiss all claims against defendant Trevor Pettibon with prejudice as follows:

1. Berkshire Hathaway Homestate Insurance Company filed a Petition for Interpleader in the Circuit Court of Vernon County, Missouri, Case NO. 18VE-CV00762, seeking to interplead funds for a policy of insurance that provided insurance coverage to Defendant Trevor Pettibon.

2. Resolution of the interpleader action included a Settlement Agreement dated April 29, 2019 that included a release of all claims against Trevor Pettibon.

3. Each party shall bear its own costs and attorneys' fees.

4. Plaintiffs' claim against defendant Trevor Pettibon are hereby dismissed with prejudice.

5. This dismissal does not apply to plaintiffs' claims against defendant Dorel Juvenile Group, Inc. and all counts and claims against defendant Dorel Juvenile Group, Inc. remain pending.

Electronically Filed - Vernon - July 25, 2019 - 04:09 PM

Respectfully submitted,

By:    */s/ Chad C. Lucas*
           Chad C. Lucas    #50822
           Nick A. Brand    #63380
           Kuhlman & Lucas, LLC
           1100 Main Street, Suite 2550
           Kansas City, Missouri 64105
           Telephone: (816) 799-0330
           Facsimile: (816) 799-0336
           chad@kuhlmanlucas.com
           nick@kuhlmanlucas.com

           and

           Joseph R. Hillebrand    #43344
           Brown & Crouppen, P.C.
           211 N. Broadway, Suite 160
           St. Louis, Missouri 63102
           Telephone: (314) 222-2222
           Facsimile: (314) 421-0359
           joeh@getbc.com

           **Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July, 2019, the foregoing document was filed with the Clerk of the Court using the Missouri eFiling System, which sent notice of such filing to all counsel of record.

           */s/ Chad C. Lucas*
           **Attorney for Plaintiffs**

| | | | | |
|---|---|---|---|---|
| **JUDGE'S DOCKET SHEET** | County<br>VERNON COUNTY | | Case Number<br>19VE-CV00084 | |
| | Date Filed<br>14-FEB-2019 | | Judge Name & Party ID<br>DAVID R. MUNTON - 30446 | |

Style of Case

## LANE ALLMOND ET AL V DOREL JUVENILE GROUP, I ET AL

Case Type Description: CC Wrongful Death

Attorney for Plaintiff/Petitioner & Party ID
CHAD CAMERON LUCAS - 50822

Petitioner/Plaintiff & Party ID  LANE T. ALLMOND - ALLLT8360

Defendant/Respondent & Party ID  DOREL JUVENILE GROUP, INC. - @60215

Attorney for Defendant/Respondent & Party ID
THOMAS PETER SCHULT - 29986

Charge Codes & Descriptions:

Offense Cycle Number (OCN):     Bond Amount:

| DATE | DOCUMENTS FILED/ACTION TAKEN IN CASE |
|---|---|
| 7-29-2019 | Court dismisses all claims with prejudice against Defendant Trevor Pettibon **only**, after reviewing Plaintiffs' Notice of Dismissal of Claims.  DRM |
| | |
| | |
| | |
| | |
| | |
| | . |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |